# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Stanton E. Ross,

     Plaintiff/Counterclaim Defendant,

v.                                    Case No. 13-CV-2101

Adam Rothstein,

     Defendant/Counterclaimant.

## <u>MEMORANDUM & ORDER</u>

Plaintiff Stanton E. Ross is the Chief Executive Officer of and a substantial shareholder in Infinity Energy Resources, Inc. ("Infinity"). Mr. Ross filed a petition in state court against defendant Adam Rothstein asserting claims of fraudulent misrepresentation, violations of the Kansas Consumer Protection Act and defamation arising out of a $210,000 short-term loan made by Mr. Rothstein to Mr. Ross. Mr. Rothstein removed the petition to federal court on the basis of diversity jurisdiction and, thereafter, asserted seven counterclaims against Mr. Ross. Shortly after the filing of his counterclaims, Mr. Rothstein filed a motion for preliminary injunction seeking the delivery and transfer to Mr. Rothstein of an aggregate total of 142,310 shares of Infinity common stock constituting security, interest and consideration with respect to the loan and subsequent agreements between the parties. As a result of that hearing, 65,000 shares of Infinity stock have been transferred to Mr. Rothstein and 77,310 shares of Infinity stock have been issued in Mr. Rothstein's name but deposited into the court until further order of the court.

This matter is presently before the court on Mr. Rothstein's motion for judgment on the pleadings or, alternatively, for summary judgment on each of Mr. Ross's claims for relief and for summary judgment as to three of Mr. Rothstein's counterclaims against Mr. Ross (doc. 25). A motion for sanctions filed by Mr. Rothstein (doc. 23) is also ripe for resolution. As will be explained, summary judgment in favor of Mr. Rothstein is granted on Mr. Ross's fraud and KCPA claims and is granted in part and denied in part on Mr. Ross's defamation claim. Mr. Rothstein is also entitled to summary judgment on his counterclaims for breach of the secured promissory note; breach of the forbearance agreement; and breach of the superseding pledge agreement and foreclosure of security interest. Mr. Rothstein's motion for sanctions is denied.

## I. Pertinent Standard[1]

With respect to his motion for summary judgment on Mr. Ross's claims, Mr. Rothstein must demonstrate that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and makes inferences in the light most favorable to Mr. Ross, the non-movant. *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Id*. (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Although the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party, summary judgment is warranted if the moving party "points

___

[1] The court does not concern itself with the standard for judgment on the pleadings under Rule 12(c) because it has declined to rely on Rule 12(c) in resolving any of the issues raised in Mr. Rothstein's motion.

out a lack of evidence to support an essential element of the claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Systems, Inc.*, ___ F.3d ____, 2013 WL 4046470 (10th Cir. Aug. 12, 2013).

With respect to his motion for summary judgment on his own counterclaims, Mr. Rothstein, who bears the burden of proof at trial, may not obtain summary judgment simply by demonstrating an absence of a genuine issue of material fact. *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). Rather, he must establish "as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

## II.    Facts

Stanton Ross is a resident of Johnson County, Kansas and is currently the Chairman of the Board, President, Chief Executive Officer and a shareholder of Infinity, a publicly traded company having its principal place of business in Johnson County, Kansas. Prior to the financial collapse of 2008 and the resulting economic recession, Mr. Ross pledged substantial portions of his holdings of Infinity stock to one or more lenders as security for loans, the proceeds of which he used for personal, household and business purposes. When the value of that stock declined precipitously, loans were called and one or more lawsuits were filed against Mr. Ross. In connection with funding the settlements of those lawsuits, Mr. Ross required cash. According to Mr. Ross, a payment of $210,000 was due to be made upon those settlements in the first quarter of 2012. Mr. Ross did not have the required cash.

Adam Rothstein is a Connecticut resident and currently the advisor to several funds concentrating in the technology, media and entertainment sectors.   In March 2012, Mr. Rothstein agreed to and did loan Mr. Ross $210,000 and the terms of the loan were set forth in a Secured Promissory Note and Pledge Agreement executed by the parties.   Pursuant to those terms, the loan was to be repaid in full within 60 days, on or before May 31, 2012 and the interest for the loan was to be paid by the transfer of 15,000 shares of Infinity stock.   Under the terms of the Pledge Agreement, Mr. Ross pledged as security for the loan specifically identified certificates totaling, in the aggregate, 142,310 shares of his Infinity stock.   Mr. Ross failed to repay the loan by May 31, 2012 and did not transfer to Mr. Rothstein the 15,000 "Interest Shares" or any of the shares pledged as security for the loan.

In August 2012, at Mr. Ross's request, the parties executed a written Forbearance Agreement pursuant to which Mr. Ross reaffirmed his obligations under the Secured Promissory Note and acknowledged that he was in default.   The parties further agreed that the loan due date would be extended to January 1, 2013.   In exchange for Mr. Rothstein's forbearance, Mr. Ross agreed to transfer 50,000 shares of Infinity stock (the "Consideration Shares") and the original 15,000 Interest Shares within seven days.   At the time of the Forbearance Agreement, the parties also executed a Superseding Pledge Agreement whereby Mr. Ross pledged as security the remaining 77,310 Infinity shares that he owned.   The Forbearance Agreement provides for default interest "to accrue and compound monthly at the rate of eighteen percent (18%) per annum" upon Mr. Ross's failure to satisfy his obligations under the agreement.

Mr. Rothstein did not receive from Mr. Ross certificates representing the Pledged Shares or Interest Shares within the seven-day window provided for in the Forbearance Agreement and

the Superseding Pledge Agreement.  Moreover, Mr. Ross did not repay the loan on or before January 1, 2013.  Shortly thereafter, the parties ended up in this court.  As a result of preliminary injunction proceedings initiated by Mr. Rothstein, Mr. Ross has since transferred to Mr. Ross 65,000 shares of Infinity stock and 77,310 shares of Infinity stock have been issued in Mr. Rothstein's name but deposited into the court until further order of the court.  To this date, Mr. Ross has not repaid the loan.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.


**III.    Mr. Ross's Claims Against Mr. Rothstein**

In his petition, Mr. Ross asserts three claims against Mr. Rothstein—fraudulent misrepresentation; a violation of the Kansas Consumer Protection Act (KCPA); and defamation. The parties agree that Kansas law applies to each of Mr. Ross's claims against Mr. Rothstein. Mr. Rothstein moves for judgment on the pleadings or, alternatively, for summary judgment on each of these claims.  As explained below, the motion is granted in part and denied in part. Summary judgment in favor of Mr. Rothstein is granted on Mr. Ross's fraud and KCPA claims and is granted in part and denied in part on Mr. Ross's defamation claim.


*A.    Fraudulent Misrepresentation*

In his affidavit filed in response to Mr. Rothstein's motion for summary judgment, Mr. Ross explains the basis for his fraud claim.  According to Mr. Ross, he asked Mr. Rothstein in mid-December 2012 to extend the $210,000 loan further for a period of 90 days beginning

January 1, 2013. Mr. Rothstein informed Mr. Ross that he would negotiate in good faith for the extension of the loan for an additional 90-day period, and would forbear from the exercise of his rights and remedies during such negotiations, if Mr. Ross as a "pre-condition to such negotiations" "caused Infinity or the agent for the transfer of Infinity's publicly-held stock to issue or reissue to Rothstein" the 15,000 shares of Infinity stock (in his own name and without restrictions on transfer) which Mr. Ross had assigned to Mr. Rothstein back in March 2012 and the additional 50,000 shares of stock (in his own name) which Mr. Ross had assigned to Mr. Rothstein in August 2012. Mr. Ross avers that he agreed to those conditions and, in reliance on Mr. Rothstein's promise that good faith negotiations would begin regarding a further extension of the loan, attempted in good faith to have the shares issued and transferred to Mr. Rothstein. Mr. Ross further avers that in reliance on Mr. Rothstein's promise, he did not explore alternative financing opportunities that may have been available to him with respect to the maturity and payment of the loan. According to Mr. Ross, Mr. Rothstein called in the loan on January 1, 2013 despite the fact that Mr. Ross "did what he could" to get the shares issued to Mr. Rothstein. Mr. Ross does not contend that he succeeded at any time prior to January 1, 2013 in having the shares issued to Mr. Rothstein.

Because the fraud alleged by Mr. Ross relates to a promise concerning future events, he must prove not merely a breach of that promise, but a misrepresentation of Mr. Rothstein's present intent to perform at the time of the promise. *See Modern Air Conditioning, Inc. v. Cinderella Homes, Inc*., 226 Kan. 70, 78 (1979). A promise to do something in the future, if the promisor had no intention at the time the promise was made to carry it out, is deceit, and if the

promisor obtained anything of value by reason thereof, there is actionable fraud." *Gerhardt v. Harris*, 261 Kan. 1007, 1014 (1997).

In his motion, Mr. Rothstein first contends that he is entitled to judgment on the pleadings because Mr. Ross has pleaded no facts suggesting that when Mr. Rothstein promised in mid-December 2012 to negotiate a loan extension if Mr. Ross caused the issuance and delivery of 65,000 shares of Infinity stock, he did not intend to fulfill that promise regardless of whether Mr. Ross succeeded in having the shares issued to him. The court agrees that Mr. Ross's petition is devoid of any facts suggesting that Mr. Rothstein, in mid-December 2012, had no intention of negotiating in good faith with Mr. Ross. While the court typically would permit Mr. Ross an opportunity to amend his petition, the court declines to do so here because, in response to Mr. Rothstein's alternative motion for summary judgment, Mr. Ross has failed to come forward with facts suggesting that Mr. Rothstein had no intention of negotiating an extension at the time he promised to do so. In the absence of any evidence that Mr. Rothstein did not intend to perform at the time he made his promise, no reasonable factfinder could find in favor of Mr. Ross on this claim. Moreover, although Mr. Ross's affidavit reflects that he promised to "cause Infinity . . . to issue" 65,000 shares of stock to Mr. Rothstein in exchange for Mr. Rothstein's promise to negotiate an extension, there is simply no evidence that Mr. Ross fulfilled that promise. Indeed, those shares were not issued until after the preliminary injunction hearing in this case. Because it is undisputed that Mr. Ross never "caused Infinity . . . to issue" the shares of stock, Mr. Rothstein, as reflected in Mr. Ross's own affidavit, was not obligated to perform his promise to negotiate a loan extension. While Mr. Ross makes much of the fact that he "did everything he could" to get the shares transferred to Mr. Rothstein, his affidavit makes

clear that he promised to effectuate the transfer, not simply to do his best. In such circumstances, Mr. Ross cannot prove Mr. Rothstein's failure to perform. For these reasons, the court grants summary judgment on Mr. Ross's fraud claim. *See Gerhardt*, 261 Kan. at 1014.


B.     *Kansas Consumer Protection Act*

Mr. Ross also asserts a claim against Mr. Rothstein under the Kansas Consumer Protection Act (KCPA), K.S.A. § 50-623 et seq. The KCPA protects consumers from deception or unconscionable acts or practices committed by suppliers in connection with consumer transactions. *Id.* § 50-626(a). A "supplier" is defined as a "manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer." *Id.* § 50-624(*l*). Mr. Rothstein moves for summary judgment on this claim on the grounds that he is not a "supplier" as defined by the KCPA. Specifically, Mr. Rothstein asserts that he is not a personal money lender and he does not, in the ordinary course of his business, loan money to individuals or enforce loan rights or seek lending opportunities. He avers to this fact and further avers that he has loaned money on only one other occasion, approximately ten years ago, and that particular transaction commenced as an investment in a business venture but was converted to debt after the venture failed. As noted earlier, Mr. Rothstein's regular business involves serving as an advisor to several funds concentrating in the technology, media and entertainment sectors.

In his response, Mr. Ross comes forward with no facts controverting the substance of Mr. Rothstein's affidavit. He focuses instead on the fact that Mr. Rothstein approached him and

offered to make the loan. Mr. Ross, however, does not challenge the "solicits" prong of the definition of "supplier," but the "ordinary course of business" prong of that definition. For purposes of Mr. Rothstein's motion, then, the court presumes that Mr. Rothstein approached Mr. Ross and offered to make the loan. Nonetheless, the record reflects that Mr. Rothstein made a loan on one prior occasion ten years ago under circumstances unlike those presented here. The court has uncovered no Kansas case suggesting that those facts might arguably qualify Mr. Rothstein as a "supplier" for purposes of the KCPA. In the sole case relied upon by Mr. Ross, *York v. Intrust Bank, N.A.*, 265 Kan. 271, 288 (1998), the Kansas Supreme Court determined that the defendant Bank was a "supplier" for purposes of the KCPA because even though the Bank had not previously sold real estate, the Bank, in the ordinary course of its banking business, seized collateral on loans it had made such that the selling of real property obtained through the taking of collateral was deemed to be in the ordinary course of the Bank's business. The Kansas Supreme Court also emphasized that the Bank intended to sell numerous lots over an extended period of time. *Id*. at 289; *accord Osterhaus v. Toth,* 291 Kan. 759, 789-90 (2011) (fact question existed as to whether defendant who bought and sold 3 homes in less than 3 years and lived in each home qualified as a "supplier"; jury could determine that defendant's ordinary business was solicitation of real estate sales); *Heller v. Martin*, 14 Kan. App. 2d 48 (1989) (licensed real estate salesperson was "supplier" even in the context of selling her own home where she solicited customers to enter into real estate transactions in the ordinary course of her business).

Contrary to Mr. Ross's suggestion, then, *Intrust Bank* does not stand for the proposition that an "isolated" sale or transaction qualifies the seller as a supplier in the absence of other facts

supporting that the sale occurred in the ordinary course of the seller's business.  There is no evidence in the record that Mr. Rothstein lends money in the ordinary course of his business or that he intends to lend money on a regular basis in the future.[2]  In the absence of any evidence from which a jury could conclude that Mr. Rothstein "engages in consumer transactions in the ordinary course of business," summary judgment is warranted on this claim.  *See Osterhaus,* 291 Kan. at 790.[3]  The court denies Mr. Rothstein's request for an award of prevailing party attorneys' fees, which are discretionary in any event.  The plain language of the statute requires that Mr. Rothstein be deemed a "supplier" and a showing that Mr. Ross knew that his KCPA claim was "groundless."  K.S.A. § § 50-634(e)(1).  Mr. Rothstein, obviously, is not a supplier and has not suggested, let alone demonstrated, that Mr. Ross knew his claim was groundless.

C.     *Defamation*

In his petition, Mr. Ross first alleges that Mr. Rothstein disparaged Infinity through a series of communications with Daniel Hutchins, Infinity's Chief Financial Officer, and Riley McCormack, a shareholder of Infinity.  Mr. Rothstein first moves for summary judgment on this claim to the extent Mr. Ross intends to assert a claim of business disparagement or business defamation on behalf of Infinity.  Mr. Ross has not addressed the argument in any respect and the court construes Mr. Ross's silence on the issue as an indication that he does not, in fact,

---

[2] Although Mr. Rothstein's motion comes at the onset of discovery, Mr. Ross has not suggested that discovery would assist him in presenting facts essential to his response to the motion.

[3] The court declines to address Mr. Rothstein's alternative arguments under Rule 12(c) and his additional arguments under Rule 56.

intend to pursue claims on behalf of Infinity. Summary judgment, then, is appropriate on this claim.

Mr. Ross also asserts in his petition that Mr. Rothstein defamed him through communications with Mr. Hutchins as well as Lee Meier and other employees of Computershare (Infinity's stock transfer agent) and Chris Hoffman (Infinity's outside securities counsel). As fleshed out in Mr. Ross's response to Mr. Rothstein's motion, the primary basis for this claim is a January 25, 2013 letter sent by Mr. Rothstein's counsel to Mr. Hutchins with a copy sent to Mssrs. Meier and Hoffman. In that letter, Mr. Rothstein's counsel asserts that Mr. Ross failed to remit to Mr. Rothstein payment due under the promissory note and forbearance agreement and that as a result of the default Mr. Rothstein was executing against the Pledged Shares. In the letter, Mr. Rothstein's counsel suggests that Mr. Ross has deliberately failed to complete the steps necessary to transfer the Pledged Shares (as well as the Interest and Consideration Shares) to Mr. Rothstein. The letter further asserts that Mr. Ross failed to disclose to Infinity's officers the facts and circumstances surrounding the loan agreement and that Mr. Ross was deliberately frustrating Mr. Rothstein's exercise of his rights and remedies under the loan agreement. Ultimately, the letter advises Mr. Hutchins that Mr. Rothstein intended to file a declaratory judgment action against Infinity in federal court to require Infinity to transfer the Shares to Mr. Rothstein. In addition to the January 25, 2013 letter, Mr. Ross contends in his response to Mr. Rothstein's motion that Mr. Rothstein or his counsel told Mr. McCormack, Steven Gans, Mr. Hoffman and Taj Bayless that Mr. Ross was "being sued all over town;" that Mr. Ross was "broke"; that Infinity could not survive under Mr. Ross's management; and that Mr. Rothstein

was going to sue him.  Mr. Gans is a board member of Digital Ally, Inc. and Mr. Bayless is an investor in Digital Ally, Inc.  Mr. Ross is the CEO of Digital Ally.

Mr. Rothstein moves for summary judgment to the extent Mr. Ross's claim is based on the January 25, 2013 letter as demand letters are absolutely privileged and cannot form the basis of a defamation claim.  Mr. Ross does not respond to this argument in any respect.  The court agrees that the January 25, 2013 letter from Mr. Rothstein's attorney to Mr. Hutchins, with a copy to Mr. Meier and Mr. Hoffman, is privileged and cannot support a defamation claim.  *See Gatlin v. Hartley, Nicholson, Hartley & Arnett, P.A.*, 29 Kan. App. 2d 318, 320 (2001) (citing *Restatement (Second) of Torts* § 586 (1976)).  On its face, the letter clearly demonstrates that it is preliminary to a proposed judicial proceeding and the letter directly relates to that proposed proceeding.  Mr. Rothstein's motion is granted in this respect.

Mr. Rothstein next asserts that summary judgment is warranted to the extent Mr. Ross's claim is based on communications to Mr. Hutchins, Mr. Meier and/or Mr. Hoffman that occurred outside the context of a demand letter but concerning the same topics as discussed in the demand letter.  According to Mr. Rothstein, any such communications would be subject to a qualified privilege because they would constitute business communications made in good faith and between individuals with a corresponding interest or duty in the subject matter of the communication.  *See Lloyd v. Quorum Health Resources, L.L.C.*, 31 Kan. App. 2d 943, 952 (2003).  As noted by Mr. Rothstein, where a defamatory statement is made in a situation where there is a qualified privilege, the injured party must prove not only that the statements were false but also that the statements were made with actual malice.  *Id*.  Mr. Rothstein, then, contends

that summary judgment is warranted because Mr. Ross has not pleaded malice or set forth facts suggesting that any communications were made with actual malice.

This is yet another argument that Mr. Rothstein has failed to address in any respect. Nonetheless, the court concludes that summary judgment is premature on this issue. First, it is unclear whether and to what extent Mr. Ross's defamation claim concerning communications to Mr. Hutchins, Mr. Meier and Mr. Hoffman is based on communications outside the context of the demand letter. To the extent such communications exist, the court cannot conclude as a matter of law that such communications are subject to a qualified privilege. There is simply no evidence from which the court can make the requisite findings concerning good faith. *See Hall v. Kansas Farm Bureau*, 274 Kan. 263, 278 (2002) (summary judgment inappropriate on ground that communication was qualifiedly privileged where court made no factual findings relevant to good faith element). While the court is permitted to make this determination as a matter of law where there is no dispute as to material facts, *see Knudsen v. Kansas Gas & Elec. Co*., 248 Kan. 469, 481 (1991), Mr. Rothstein has not come forward in the first instance with facts demonstrating that any such communications were made in good faith. *See Johnson v. Riddle*, 443 F.3d 723, 724 n.1 (10th Cir. 2006) (clarifying summary judgment burden where a defendant is seeking summary judgment on the basis of an affirmative defense). The court appreciates the difficulty of proving good faith without knowing the specific communications at issue, but that difficulty arises because Mr. Rothstein elected to file his motion at the onset of discovery.

Deposition discovery will shed the necessary light on the contours of this claim and the court anticipates a subsequent motion for summary judgment at the close of discovery. [4]

To the extent Mr. Rothstein moves for judgment on the pleadings under Rule 12(c) based on Mr. Ross's failure to plead actual malice, the motion is denied as Mr. Ross is not required to plead malice until Mr. Rothstein establishes his defense of qualified privilege. *See Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan. App. 2d 95, 103 (1993) (malice not required element of defamation claim until factual circumstances demonstrate qualified privilege); *Ciemniecki v. Parker McCay P.A.*, 2010 WL 2326209, at *4, 8 (D.N.J. June 7, 2010) (denying motion to dismiss defamation claim based on failure to allege actual malice where factual issues existed as to application of qualified privilege).

The court turns, then, to Mr. Ross's contention that Mr. Rothstein told Mr. McCormack, Mr. Gans, Mr. Hoffman and Mr. Bayless that Mr. Ross was "broke," was being "sued all over town," that Infinity could not survive under Mr. Ross's management and that Mr. Rothstein was going to sue Mr. Ross. In support of his motion for summary judgment, Mr. Rothstein has not submitted his own affidavit denying that he made such statements. Nonetheless, according to Mr. Rothstein, Mr. Ross cannot prove his claim as to Mr. McCormack because Mr. McCormack has filed an affidavit stating that Mr. Rothstein has never made "disparaging or derogatory remarks, comments or representations" concerning Mr. Ross in any of his communications with Mr. McCormack and Mr. Ross has not refuted the affidavit with admissible evidence. While the

---

[4] The court declines to require Mr. Ross to amend his petition to specify the exact nature of the communications that are allegedly defamatory (*e.g*., verbal or written) because his petition clearly states the subject of the communications and the persons to whom those communications were directed and Mr. Rothstein does not contend that any additional detail is required under *Twombly* or *Iqbal*.

court agrees that Mr. Ross's affidavit on this point constitutes inadmissible hearsay,[5] the court does not agree that Mr. Rothstein is entitled to summary judgment on this issue because Mr. McCormack's affidavit is not sufficient to show the absence of material facts. In his affidavit, Mr. McCormack does not deny that Mr. Rothstein made the specific statements that he is alleged to have made about Mr. Ross; he denies only that Mr. Rothstein said anything "disparaging or derogatory" which, in the court's view, is too conclusory to prove the absence of material facts.[6]

Conversely, with respect to Mr. Ross's claim concerning Mr. Rothstein's alleged statements to Mr. Gans and Mr. Bayless, both Mr. Gans and Mr. Bayless aver that they have reviewed the specific allegations in Mr. Ross's affidavit and they specifically deny that Mr. Rothstein ever made those statements to them. In response, Mr. Ross offers only inadmissible hearsay and thus he has failed to come forward with evidence sufficient to show the existence of a material factual dispute. In his affidavit, Mr. Ross avers only that "The people that Rothstein or his lawyers contacted and told these things to include . . . Steven Gans . . . and Taj Bayless

---

[5] In his affidavit, Mr. Ross asserts that "The people that Rothstein or his lawyers contacted and told these things to include . . . Riley McCormack, who told me all of these things in voice mails, all of which I have saved." Mr. Ross does not submit the content of the voice mails allegedly left by Mr. McCormack.

[6] Mr. Rothstein also asserts that, with respect to Mr. McCormack, any such communications are qualifiedly privileged such that Mr. Ross is required to plead and prove malice which he has not done. This argument is rejected for the reasons set forth previously. Mr. Rothstein further suggests that dismissal or summary judgment is appropriate because Mr. McCormack is identified in Mr. Ross's petition only as a recipient of statements made by Mr. Rothstein disparaging Infinity as opposed to disparaging Mr. Ross. In light of the affidavit filed by Mr. Ross in which he states that Mr. Rothstein made disparaging remarks about him to Mr. McCormack, it is not relevant that Mr. Ross's petition does not identify Mr. McCormack accordingly.

(one of Rothstein's best friends) who stopped communicating with me entirely after speaking with Rothstein." He does not state that he heard Mr. Rothstein or his lawyers make the statements to Mr. Gans or Bayless and he does not otherwise indicate how he learned that Mr. Rothstein allegedly made those statements to Mssrs. Gans and Bayless. Summary judgment, then, is appropriate to the extent Mr. Ross claims that Mr. Rothstein made defamatory statements to Mr. Gans and Mr. Bayless.[7] Finally, because Mr. Rothstein has not submitted an affidavit from Mr. Hoffman denying that Mr. Rothstein made the alleged statements to him, Mr. Rothstein has not shown the absence of material facts on that aspect of Mr. Ross's claim.

D.    *Punitive Damages*

In his initial disclosures, Mr. Ross set forth a computation of damages that included punitive damages. Because Mr. Ross has not asserted a claim for punitive damages in his petition, Mr. Rothstein moves for summary judgment on any claim for punitive damages that Mr. Ross intends to assert. Mr. Ross has not addressed this claim in any respect in his response and the court construes Mr. Ross's silence as an indication that he does not intend to pursue a claim for punitive damages. Mr. Rothstein's motion is granted on this claim.

**IV.    Mr. Rothstein's Claims Against Mr. Ross**

---

[7] Mr. Rothstein seems to suggest that Mr. Ross cannot base his defamation claim on statements allegedly made to Mr. Bayless because Mr. Bayless was not identified in Mr. Ross's initial disclosures. The court rejects this argument as Mr. Rothstein's motion was filed just two weeks after Mr. Ross's initial disclosures and there is no prejudice to Mr. Rothstein in permitting Mr. Ross to supplement his disclosures at this time.

Mr. Rothstein has asserted seven counterclaims against Mr. Ross and he moves for summary judgment on three of those counterclaims—breach of the secured promissory note; breach of the forbearance agreement; and breach of the superseding pledge agreement and foreclosure of security interest. According to Mr. Rothstein, the undisputed facts demonstrate the elements of his contract claims, including sufficient consideration; Mr. Rothstein's performance; Mr. Ross's breach; and damages sustained by Mr. Rothstein. *See Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (2013). Mr. Rothstein seeks a judgment in his favor in the amount of the loan principal of $210,000, plus 18% default interest, compounding monthly beginning September 5, 2012; the immediate delivery of the 77,310 Pledge Shares of Infinity, which have been deposited into court; as well as reasonably attorneys' fees and costs pursuant to the terms of the note and the forbearance agreement.

Mr. Ross concedes that the facts here are sufficient to prove the liability elements of Mr. Rothstein's contract claims. He asserts, however, that the contracts (or, at the very least, certain clauses contained therein) are unconscionable and therefore unenforceable under Kansas law. In his reply, Mr. Rothstein contends that Mr. Ross has waived his right to raise the issue of unconscionability because he failed to plead that affirmative defense in his answer to Mr. Rothstein's counterclaims and the deadline for amending the pleadings has passed. But clearly, a finding of waiver at this early juncture of the litigation—more than three months prior to the close of discovery—is unjust as there is no asserted or demonstrable prejudice to Mr. Rothstein. *See Ahmad v. Furlong*, 435 F.3d 1196, 1201–02 (10th Cir. 2006) (defendant may raise an affirmative defense for the first time in a post-answer motion if the defense is raised in sufficient

time that there is no prejudice to the opposing party).  Mr. Ross, then, is permitted to "constructively" amend his answer by means of his summary judgment response.

The burden of establishing unconscionability is on the party attacking the contract and whether a contract is unconscionable is a question of law for the court. *Santana v. Olguin*, 41 Kan. App. 2d 1086, 1090 (2009).  Under Kansas law, "a party who freely enters a contract is bound by it even though it was unwise or disadvantageous to the party, so long as the contract is not unconscionable." *Moler v. Melzer*, 24 Kan. App.2d 76, 77 (1997).  Mere inequality of bargaining power is insufficient to render a contract unconscionable. *Aves ex rel. Aves v. Shah*, 258 Kan. 506, 520 (1995); *Frets v. Capitol Fed. Sav. & Loan Ass'n*, 238 Kan. 614, 623 (1986); *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 759 (1976). For a contract term to be unconscionable, there must be "some type of deceptive practice associated with the term" and it must be "so unfair that it shocks the conscience of the court." *Aves ex rel. Aves*, 258 Kan. at 520.  To establish unconscionability in a manner sufficient to defeat summary judgment, Mr. Ross must present specific facts showing a genuine issue of material fact. *Santana*, 41 Kan. App. 2d at 1091.

In his response, Mr. Ross avers that the terms of the agreements that he executed with Mr. Rothstein required an interest payment equivalent to $22,500 for a 60-day loan; that Mr. Rothstein charged interest at an annualized rate of more than 53%; that Mr. Rothstein "acquired" more than $213,000 worth of collateral from Mr. Ross in exchange a loan of $210,000 for a period of 8 months; that Mr. Rothstein's lawyer drafted all the documents; that Mr. Rothstein's lawyer initially selected Arizona as the governing law for the agreements to alleviate any usury concerns; and that Mr. Ross had "no choice" but to accept the terms because

his settlement payment was coming due and, without the loan, he would lose the house in which he lived with his wife and daughter. In sum, then, Mr. Ross contends that the terms of the agreements were unreasonable and one-sided but that he had no choice but to execute those agreements.

Notably absent from Mr. Ross's affidavit, however, is any suggestion that the agreements he executed with Mr. Rothstein were deceptive in any respect. *See State ex rel. Stovall v. ConfiMed.com, LLC*, 272 Kan. 1313, 1321 (2002) (one "general guideline" in determining unconscionablility is that "there must be some element of deceptive bargaining conduct present"); *Bender v. Kansas Secured Title & Abstract Co.*, 34 Kan. App. 2d 300, 405 (2005) (insurance contract not unconscionable because, among other things, deceptive bargaining conduct not proven). Mr. Ross has not even alleged much less come forward with specific facts suggesting that any deceptive conduct or practice played a part in the agreements he executed. Moreover, it is undisputed that Mr. Ross is a sophisticated businessperson and that he was represented by counsel in connection with the agreements. These facts further cut against any showing of unconscionability. *See Aves ex rel. Aves*, 258 Kan. at 520 (finding no unconscionability in part because doctor challenging insurance contract "should have had some knowledge and experience with malpractice insurance"); *Adams v. John Deere Co*., 13 Kan. App. 2d 489, 495 (1989) (finding no unconscionability in part because appellant was an experienced businessman who routinely entered into contracts); *see also Zhu v. Countrywide Realty Co.*, 66 Fed. Appx. 840, 843 (10th Cir. 2003) (settlement agreement not unconscionable in part because plaintiff was represented by counsel at mediation that resulted in settlement). Finally, while the agreements may have been disadvantageous to Mr. Ross in the end, they were

also fairly high-risk for Mr. Rothstein in that the Infinity shares were vulnerable to market fluctuations as well as Infinity's future performance. In short, there is nothing about any of the agreements—either the substance of those agreements or the manner in which the agreements were executed—that shocks the conscience of the court. In the absence of any facts demonstrating deceptive conduct in connection with the agreements,[8] the court grants Mr. Rothstein's motion for summary judgment on his claims for breach of the secured promissory note; breach of the forbearance agreement; and breach of the superseding pledge agreement and foreclosure of security interest is granted.

Because Mr. Rothstein is entitled to summary judgment on his breach of contract claims, he is entitled to a judgment in his favor in the amount of $210,000, plus 18% default interest compounding monthly beginning September 7, 2013. In his motion, Mr. Rothstein has also shown that, pursuant to the parties' agreement, he is entitled to foreclose on the Pledged Shares that have been deposited with the court. *See* K.S.A. § 84-9-601 (remedies after default are cumulative; secured party may reduce claim to judgment and/or foreclose on the security interest). Mr. Rothstein also seeks leave to file an application for fees and costs pursuant to paragraph 11 of the secured promissory note and paragraphs 2(b) and 8 of the parties' forbearance agreement. Neither Mr. Rothstein nor Mr. Ross has briefed the applicability of those provisions. Thus, while the court grants Mr. Rothstein leave to file an application for fees and costs, the court at this juncture expresses no opinion on Mr. Rothstein's entitlement to fees and costs. Mr. Rothstein is directed to comply with the procedures set forth in Local Rule 54.2,

---

[8] Mr. Ross has not asked for discovery on this issue and he has not asked for leave to file a surreply.

including the provision for consultation between the parties, to facilitate any award of fees to which Mr. Rothstein may be entitled.[9]

## V. Mr. Rothstein's Motion for Sanctions

Mr. Rothstein also moves for sanctions against Mr. Ross, seeking the dismissal of Mr. Ross's claims; default judgment on Mr. Rothstein's counterclaims; the striking of one or more of Mr. Ross's affirmative defenses; an order directing Mr. Ross to deposit the Pledged Shares into court free from any restrictive legend; the payment of attorneys' fee and costs to Mr. Rothstein; and/or the imposition of any "fines" that the court deems "just and proper." The motion is denied.

In support of his motion, Mr. Rothstein sets forth a litany of misconduct and discovery abuses on the part of Mr. Ross, including the following: Mr. Ross filed his witness and exhibit list for the preliminary junction hearing in this case 4 days after the deadline for doing so; instead of filing an "affidavit" for the court to consider in connection with the preliminary injunction hearing, Mr. Ross filed a verified declaration; Mr. Ross failed to appear in person at the preliminary injunction hearing; he delivered the 65,000 Interest and Consideration Shares of Infinity two weeks after the court-ordered deadline for doing so; at the time of the filing of the motion for sanctions, Mr. Ross had not yet deposited with the court the 77,310 Pledged Shares despite the fact that the deadline for doing so had passed 6 weeks earlier; he failed to serve a

---

[9] Although Local Rule 54.2 applies by its terms to statutory attorneys' fees, the court routinely directs parties to its provisions for contractual fee disputes as well.

good faith settlement demand in violation of the Scheduling Order; and he served his initial disclosures 3 days late.

The Tenth Circuit has counseled that, in light of our legal system's strong preference to decide cases on their merits, a dismissal or default sanctions should be predicated on willfulness, bad faith or some "fault," rather than a simple inability to comply. *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1320 (10th Cir. 2011). While the court agrees with Mr. Rothstein that this case undoubtedly got off to a rocky start in terms of Mr. Ross's participation, Mr. Ross's shortcomings early in the case do not warrant the severe sanctions sought by Mr. Rothstein in the absence of any allegation or showing of bad faith, willfulness or repeated failures after notice from the court that such failures will result in dismissal. Moreover, despite late filings early in the case, recent activity indicates that Mr. Ross is complying with established deadlines and he has timely filed responsive pleadings to Mr. Rothstein's dispositive motion, the sanctions motion and a flurry of activity concerning the deposit into court of the 77,310 pledged shares. With respect to Mr. Ross's failure to appear at the preliminary injunction hearing, the court already addressed that issue by ruling at the hearing that the court would not consider any facts presented by Mr. Ross. Mr. Rothstein's concerns about the Pledged Shares have been resolved through separate motion practice. Finally, Mr. Rothstein's concern that Mr. Ross submitted a verified declaration as opposed to an affidavit is meritless, as a verified declaration under 28 U.S.C. § 1746 has the force and effect of an affidavit.

For the foregoing reasons, Mr. Rothstein's motion for sanctions is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant/counter claimant Adam Rothstein's motion for sanctions (doc. 23) is **denied** and his motion for partial judgment on the pleadings or, alternatively, for partial summary judgment (doc. 25) is **granted in part and denied in part.**

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk of the Court enter judgment in favor of Mr. Rothstein on his claims for breach of the secured promissory note; breach of the forbearance agreement; and breach of the superseding pledge agreement and foreclosure of security interest in the amount of $210,000, plus 18% default interest compounding monthly beginning September 7, 2013.

**IT IS FURTHER ORDERED BY THE COURT THAT** Mr. Rothstein is entitled to obtain from the Clerk of the Court the original Infinity Energy Resource, Inc. Certificate No. 3287 representing 77,310 shares of Infinity's common stock. Prior to taking possession of the Certificate, Mr. Rothstein shall contact the clerk's office to arrange for the timing of the delivery of the Certificate.

**IT IS SO ORDERED.**

Dated this 9th day of September, 2013, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge