## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| STANTON E. ROSS, | ) | |
| | ) | |
| Plaintiff/Counter Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-2101 JWL/DJW |
| | ) | |
| ADAM ROTHSTEIN, | ) | |
| | ) | |
| Defendant/Counter Plaintiff. | ) | |

## PLAINTIFF'S VERIFIED MOTION FOR LEAVE TO FILE MEMORANDUM IN OPPOSITION TO  DEFENDANT'S MOTION TO REVIEW MAGISTRATE'S ORDER GRANTING  PLAINTIFF LEAVE TO AMEND, OUT OF TIME WITH SUPPORTING MEMORANDUM

As provided under Fed. R. Civ. P. 6(b)(1)(B) and D. Kan. Local Rule 6.1(a), plaintiff Stanton E. Ross ("Ross") respectfully moves the   Court for leave to file the attached Memorandum in Opposition to the Motion of defendant Adam Rothstein ("Rothstein") to Review Magistrate's Order Granting Plaintiff Leave to Amend ("Motion") out-of-time.   In support of this Motion, Ross would show the Court the following:

### FACTUAL AND PROCEDURAL BACKGROUND

1.      On October 1, 2013, Ross filed a Motion for Leave to File a First Amended Complaint herein, the purpose of which was to assert a claim against Rothstein for wrongful disposition of collateral under K.S.A. §§ 84-9-625 and 84-9-626.

2.      Rothstein opposed that Motion.

3.      On December 20, 2013, this Court by and through the Honorable David J. Waxse, United States Magistrate Judge entered an Amended Scheduling Order herein [Doc. 114].

4.      Such Amended Scheduling Order provides, in material part, that:

a.    Ross's Motion for Leave to File First Amended Complaint has been granted;

b.    Ross has "shown that his motion could not have been filed by the … deadline" appearing in the original Scheduling Order "because the event giving rise to the proposed claim for wrongful disposition of collateral under K.S.A. § 84-9-625 did not occur until after the deadline";

c.    Rothstein "did not meet" his own "burden of showing" Ross's "proposed claim to be futile";

d.    Neither party had "been able to find a case that squarely addresses whether an over-the-counter market is a 'recognized market' for purposes of the UCC; and

e.    "[a]ny prejudice to" Rothstein "could be minimized by extending certain case deadlines".

5.    At 4:40 p.m. on Friday, January 3, 2014, Rothstein filed his "Motion … to Review Magistrate's Order Granting Plaintiff Leave to Amend" [Doc. 125].

6.    At 4:40 p.m. on Friday, January 3, 2014, James F.B. Daniels, Ross's counsel was out of town and did not see the Notice of Electronic Filing that was transmitted to him on such date, until the morning of Monday, January 6, 2014.

7.    Daniels and McDowell, Rice, Smith & Buchanan ("MRSB") of which he is a member, docket/calendar all pleadings, motions and other papers to which a response is permitted or required and do so by electronic means.

8.    Matters requiring a response are entered into the central docket control system and a date is assigned by which such response is to be filed and served.

9.    Like Daniels himself, the legal assistant responsible for such data input in matters upon which Daniels is engaged was also absent on 4:40 p.m. on Friday, January 3, 2014 when Rothstein's motion was filed and ECF notice of such filing was transmitted.

10.    Accordingly, Rothstein's motion was not entered into the central docket system until the following Monday, January 6, 2014.

4701807-1

11.     Although a correct response time of 14 days was entered into the central docket system, the date of filing and service of such motion and thus the commencement date for such 14-day period was entered erroneously as January 6, 2014.

12.     At Daniels' instruction, it is the regular practice of the legal assistant charged with docketing matters in cases in which Daniels is engaged to delete the ECF notice of filing from Daniels "incoming e-mails" as and when the matter is docketed.

13.     Accordingly, Daniels was unable or, in any event, failed immediately to discern that in truth Rothstein's motion had been filed and served on Friday, January 3, 2014 rather than Monday, January 6, 2014 and that January 21, 2014, the date shown in the central docketing system as the deadline for response to the Motion was itself incorrect.

14.     On Monday, January 20, 2014, Daniels directed an e-mail to counsel for Rothstein, a copy of which is attached to this Motion as **EXHIBIT 1**.  In that e-mail, Daniels documented his belief that Ross's response to Rothstein's Motion was due to be filed and served on Tuesday, January 21, 2014 and asked Rothstein's consent to a one day extension of time for such response to and including Wednesday, January 22, 2014.

15.     In reply, Rothstein's counsel informed Daniels by e-mail that Ross's response to Rothstein's Motion should have been filed not later than Friday, January 17, 2014 and that any response was already overdue and untimely, a copy of which is attached to this Motion as **EXHIBIT 2**.

16.     Daniels is principal counsel in more than two dozen matters now in litigation, which litigation pends in a number of jurisdictions throughout the United States.

17.     In order to manage the numerous dates for responses to filings and other deadlines that arise in these cases, Daniels uses and relies and has been informed by those persons

responsible for "risk management" at MRSB that he must use and rely upon the central docket system maintained by MRSB which, to Daniels' understanding, conforms to "best practices" with respect to such systems.

18.     Daniels relied upon such system in this case, albeit in error, and to his considerable regret.

19.     By this Motion, Daniels has now acted to correct that misplaced reliance by seeking leave to file Ross's Memorandum in Opposition to Rothstein's Motion out-of-time and has done so but one day after learning that in fact Ross's response was already untimely.

20.     Ross has never before requested leave in this case to perform any act after the time established for the performance thereof has expired, nor has Daniels ever made such a request for and on behalf of any client in any case that has ever pended before this Court or any judge of this  Court.

## MEMORANDUM IN SUPPORT OF RELIEF REQUESTED

**A.**     **Fed. R. Civ. P. 6(b) and D. Kan. Local Rule 6.1(a)**

21.     Under Fed. R. Civ. P. 6(b) where the specified period for the performance of an act has elapsed, "**a district court may enlarge the period and permit the tardy act where the omission is the 'result of excusable neglect'**", <u>Pioneer Investment Ser. Co. v. Brunswick Assoc., LP</u>, 507 U.S. 380, 391, 113 S. Ct. 1489, 123 L.Ed.2d 74 (1993), *quoting in part from* Fed. R. Civ. P. 6(b).  To the same effect, D. Kan. Local Rule 6.1(a) provides that "[a]bsent a showing of excusable neglect, the Court will not grant extensions requested after the specified time expires".

**B.**     **The Excusable Neglect Standard of Fed. R. Civ. P. 6(b) and D. Kan. Local Rule 6.1 is Not Limited to Situations Where the Failure to Timely File is Due to Circumstances Beyond the Control of the Filer; it Extends Even to**

4701807-1

**"Inadvertent Delays" and to Situations "in Which the Failure to Comply With a Filing Deadline is Attributable to Negligence"**

22.     As the Supreme Court noted in <u>Pioneer Investment</u>, the "Courts of Appeal" themselves "**have generally recognized that 'excusable neglect' may extend to inadvertent delays**" and while "**inadvertence, ignorance for rules or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant**", *Id.*

23.     As the Court noted further, the "**excusable neglect standard for allowing late filings is**" used throughout "the Federal Rules of Civil Procedure", 507 U.S. at 392.  For example, Fed. R. Civ. P. 13(f) permits counterclaims "**to be set up by amendment where the omission is due to 'oversight, inadvertence or excusable neglect, or when justice requires**'" and in such a context, "**it is difficult indeed to imagine that 'excusable neglect' was intended to be limited**" to situations which the moving party simply could not control as opposed to those which it could control but, for whatever reason, did not, *Id.*

24.     Likewise, "**for purposes of**" relief from judgments under Fed. R. Civ. P. "**60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence**", 507 U.S. at 394, 113 S. Ct. at 1497.

25.     That being the case, construing the term "'**excusable neglect … inflexibly to exclude every instance of an inadvertent or negligent omission would ignore the meaning of the word neglect and would be at odds with the accepted meaning of that word in analogous contexts**" throughout the Federal Rules, 507 U.S. at 394-95, 113 S. Ct. at 1498.

**C.    The Determination of Whether a Given Act of "Neglect" is "Excusable" is an Equitable One Taking Account of all Relevant Circumstances Surrounding the Omission**

26.    Because "**Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable'**", the Supreme Court has concluded "**that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission**", Pioneer Investment, 507 U.S. at 395, 113 S. Ct. at 1498.

27.    These relevant circumstances "**include … the danger of prejudice to the**" opposing party; "**the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith**", Id. at 113 S. Ct. at 1498.

28.    Those guidelines comport with the Tenth Circuit's own pronouncements prior to Pioneer that although "**simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice**", even that rule is by no means inflexible and "**some showing of 'good faith on the part of the party seeking the enlargement and some reasonable basis for non-compliance within the time specified' is normally required**", Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987).

**D.    Upon the Facts, This is Not a Case of "Simple Inadvertence or Mistake of Counsel" But is a Case in Which Ross Has Demonstrated Both "Good Faith" and a "Reasonable Basis for Non-Compliance"**

29.    Daniels will admit it: he relied upon a machine and/or upon persons charged with operating that machine.  In his defense, he can note only that such machine and such personnel have proven to be essentially unerring in the past; that most lawyers rely upon similar machines and personnel, that most insurers who provide indemnities from and against errors or omissions attributed to lawyers, require them to do so.

6

30.     Daniels did not "count wrong" or "misapprehend" the Rules, or ascribe the "wrong deadline" to the "wrong Motion".  In good faith, Daniels relied upon his machine and his personnel and upon discovering that they had erred, acted immediately, indeed in the space of some 24 hours, to remedy that error.

31.     That in so relying, Daniels may be guilty of "inadvertent" error or even "negligent omission" does not, according to the Supreme Court disqualify him or Ross from relief under a rule which by its terms expressly contemplates "neglect".

**E.     The Delay in the Filing of Ross's Response to Rothstein's Motion is a Delay of But Two (2) Business Days; it Will Not Result in Any Prejudice to Rothstein and it Will Not Delay or Otherwise Have Adverse Impact Upon These Proceedings**

32.     As demonstrated, Daniels learned yesterday, January 20, 2014, that Ross's response should have been filed on Friday, January 17, 2014 and has acted today, January 21, 2014 to correct that omission.

33.     There has been no meaningful delay and although Rothstein may thereby be denied the opportunity to claim victory by default given the standard of review specified in Fed. R. Civ. P. 72(a), victory by default would have been unlikely in any case.

34.     Whether Ross responded or not, this Court was and is obliged to review Judge Waxse's decision to allow the amendment, on the merits, as those merits are disclosed in the "entire record" and to leave that decision unmolested unless it actually creates in the Court's mind a "definite and firm conviction that a mistake has been committed".

WHEREFORE, as provided under Fed. R. Civ. P. 6(b)(1)(B) and D. Kan. Local Rule 6.1(a), plaintiff Stanton Ross respectfully requests that the within Motion be granted.

Respectfully submitted,

McDOWELL RICE SMITH & BUCHANAN

*/s/ James F.B. Daniels*
James F.B. Daniels, KS Fed #70468
605 W. 47th Street, Suite 350
Kansas City, MO 64112
(816) 753-5400 telephone
(816) 753-9996 telecopier
jdaniels@mcdowellrice.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies on this 21st day of January, 2014 a true and correct copy of the above and foregoing was filed using the Court's CM/ECF system and served upon those persons requesting electronic notification.

*/s/ James F.B. Daniels*

8