# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Stanton E. Ross,**

    **Plaintiff/Counterclaim Defendant,**

**v.**                                                                                   Case No. 13-CV-2101

**Adam Rothstein,**

    **Defendant/Counterclaimant.**

## MEMORANDUM & ORDER

Plaintiff Stanton E. Ross is the Chief Executive Officer of and a substantial shareholder in Infinity Energy Resources, Inc. ("Infinity"). Mr. Ross filed a petition in state court against defendant Adam Rothstein asserting claims of fraudulent misrepresentation, violations of the Kansas Consumer Protection Act and defamation arising out of a $210,000 short-term loan made by Mr. Rothstein to Mr. Ross. Mr. Rothstein removed the petition to federal court on the basis of diversity jurisdiction and, thereafter, asserted seven counterclaims against Mr. Ross arising out of Mr. Ross's alleged breach of various agreements related to the loan. Shortly after the filing of his counterclaims, Mr. Rothstein filed a motion for preliminary injunction seeking the delivery and transfer to Mr. Rothstein of an aggregate total of 142,310 shares of Infinity common stock constituting security, interest and consideration with respect to the loan and subsequent agreements between the parties. As a result of that hearing, 65,000 shares of Infinity stock were transferred to Mr. Rothstein and 77,310 shares of Infinity stock were issued in Mr. Rothstein's name and deposited into the court until further order of the court.

At the onset of discovery, Mr. Rothstein filed a motion for judgment on the pleadings or, alternatively, for summary judgment on each of Mr. Ross's claims for relief and for summary judgment as to three of Mr. Rothstein's counterclaims against Mr. Ross. In September 2013, the court granted summary judgment in favor of Mr. Rothstein on Mr. Ross's fraud and KCPA claims and granted in part and denied in part summary judgment on Mr. Ross's defamation claim. The court further entered judgment in favor of Mr. Rothstein on his claims for breach of the secured promissory note; breach of the forbearance agreement; and breach of the superseding pledge agreement and foreclosure of security interest in the amount of $210,000, plus 18% default interest compounding monthly beginning September 5, 2012. Finally, the court ordered that Mr. Rothstein was entitled to obtain from the Clerk of the Court the original Infinity Energy Resource, Inc. Certificate No. 3287 representing 77,310 shares of Infinity's common stock.

Shortly after obtaining the stock certificate from the Clerk of the Court, Mr. Rothstein filed a notice of disposition of collateral indicating that the stock shares were sold and liquidated. Mr. Rothstein's notice prompted the filing of Mr. Ross's motion to amend his complaint to add a claim for wrongful disposition of collateral under K.S.A. § 84-9-625. In the December 20, 2013 Amended Scheduling Order, the magistrate judge granted Mr. Ross leave to file an amended complaint on the grounds that Mr. Rothstein had not met his burden of showing that Mr. Ross's proposed claim was futile and that any prejudice to Mr. Rothstein could be minimized by the extension of discovery deadlines. Mr. Rothstein, pursuant to Federal Rule of Civil Procedure 72(a), has filed a motion for review of that order (doc. 125) and that motion is before the court at this time.

In addition, since the filing of the court's memorandum and order resolving Mr. Rothstein's motion for summary judgment, the parties have been engaged in the discovery process including the document production and the taking of depositions. Those efforts have triggered Mr. Rothstein's second motion for summary judgment on Mr. Ross's defamation claim (doc. 132) which, in turn, has triggered Mr. Ross's motion for reconsideration (doc. 159) of the court's September 2013 memorandum and order granting in part Mr. Rothstein's motion for summary judgment on Mr. Ross's defamation claim. Those motions are also before the court at this time. Finally, Mr. Rothstein has filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 56(h) in which he contends that Mr. Ross, under penalty of perjury, knowingly submitted a false declaration in opposition to Mr. Rothstein's initial motion for summary judgment.

As explained in more detail below, the court denies the motion for review; denies the motion for reconsideration; grants the motion for summary judgment; and denies the motion for sanctions.

## I. Facts

For purposes of Mr. Rothstein's motion for summary judgment, the following facts are either uncontroverted or related in the light most favorable to Mr. Ross, the non-moving party. Stanton Ross is a resident of Johnson County, Kansas and is currently the Chairman of the Board, President, Chief Executive Officer and a shareholder of Infinity, a publicly traded company having its principal place of business in Johnson County, Kansas. Prior to the financial collapse of 2008 and the resulting economic recession, Mr. Ross pledged substantial

portions of his holdings of Infinity stock to one or more lenders as security for loans, the proceeds of which he used for personal, household and business purposes. When the value of that stock declined precipitously, loans were called and one or more lawsuits were filed against Mr. Ross. In connection with funding the settlements of those lawsuits, Mr. Ross required cash. According to Mr. Ross, a payment of $210,000 was due to be made upon those settlements in the first quarter of 2012. Mr. Ross did not have the required cash.

Adam Rothstein is a Connecticut resident and currently the advisor to several funds concentrating in the technology, media and entertainment sectors. In March 2012, Mr. Rothstein agreed to and did loan Mr. Ross $210,000 and the terms of the loan were set forth in a Secured Promissory Note and Pledge Agreement executed by the parties. Pursuant to those terms, the loan was to be repaid in full within 60 days, on or before May 31, 2012 and the interest for the loan was to be paid by the transfer of 15,000 shares of Infinity stock. Under the terms of the Pledge Agreement, Mr. Ross pledged as security for the loan specifically identified certificates totaling, in the aggregate, 142,310 shares of his Infinity stock. Mr. Ross failed to repay the loan by May 31, 2012 and did not transfer to Mr. Rothstein the 15,000 "Interest Shares" or any of the shares pledged as security for the loan.

In August 2012, at Mr. Ross's request, the parties executed a written Forbearance Agreement pursuant to which Mr. Ross reaffirmed his obligations under the Secured Promissory Note and acknowledged that he was in default. The parties further agreed that the loan due date would be extended to January 1, 2013. In exchange for Mr. Rothstein's forbearance, Mr. Ross agreed to transfer 50,000 shares of Infinity stock (the "Consideration Shares") and the original 15,000 Interest Shares within seven days. At the time of the Forbearance Agreement, the parties

also executed a Superseding Pledge Agreement whereby Mr. Ross pledged as security the remaining 77,310 Infinity shares that he owned. The Forbearance Agreement provides for default interest "to accrue and compound monthly at the rate of eighteen percent (18%) per annum" upon Mr. Ross's failure to satisfy his obligations under the agreement.

Mr. Rothstein did not receive from Mr. Ross certificates representing the Pledged Shares or Interest Shares within the seven-day window provided for in the Forbearance Agreement and the Superseding Pledge Agreement. Moreover, Mr. Ross did not repay the loan on or before January 1, 2013. Shortly thereafter, the parties ended up in this court. Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II. Motion for Review

After Mr. Rothstein filed a notice of disposition of collateral indicating that the stock shares were sold and liquidated, Mr. Ross filed a motion seeking leave to amend his complaint to add a claim for wrongful disposition of collateral under K.S.A. § 84-9-625. The magistrate judge granted Mr. Ross leave to file an amended complaint on the grounds that Mr. Rothstein had not met his burden of showing that Mr. Ross's proposed claim was futile and that any prejudice to Mr. Rothstein could be minimized by the extension of discovery deadlines. Mr. Rothstein, pursuant to Federal Rule of Civil Procedure 72(a), has filed a motion for review of that order (doc. 125). As will be explained, the motion is denied.

Mr. Ross sought to amend his complaint to add a claim for wrongful disposition of collateral. In opposing that motion before the magistrate judge, Mr. Rothstein urged that the claim was futile. According to Mr. Rothstein, his disposition of the stock was commercially

5

reasonable as a matter of law under the Uniform Commercial Code because he sold it on a "recognized market." *See* K.S.A. § 84-9-627(b)(1) (disposition of collateral is commercially reasonable if the disposition is made in the usual manner on any recognized market). As noted in the Official UCC Comment, the concept of a "recognized market" is quite limited and it applies only to markets in which "there are standardized price quotations for property that is essentially fungible, such as stock exchanges."

Mr. Rothstein sold the stock on the market where Infinity stock is traded—the OTCQB market. Although he concedes that there is no case directly on point, he urges (as he did before the magistrate judge) that the OTCQB market is a "recognized market" for purposes of the UCC and explains, in some detail, how that market is "nearly identical" to the New York Stock Exchange and NASDAQ. He relies extensively on www.otcmarkets.com (as well as non-Kansas state court cases defining a "recognized market" outside the context of the OTCQB market) to persuade the court that the OTCQB market is a "recognized market" akin to the NYSE and NASDAQ. In response, Mr. Ross, also relying largely on www.otcmarkets.com, urges his own version of the facts in his effort to persuade the court that the OTCQB market is not a recognized market for purposes of the UCC. Each party, then, offers a narrative of their version of the facts and the purported significance of those facts in light of allegedly analogous case law. The parties' submissions clearly reflect factual disputes about the nature of the OTC market and whether that market satisfies the requirements for a "recognized market."

In reviewing the magistrate judge's order, the court is required to defer to the magistrate judge's ruling "unless it was clearly erroneous or contrary to law." *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006). In the Amended Scheduling Order, the magistrate judge held

that Mr. Rothstein had not established futility because "[n]either party has been able to find a case that squarely addresses whether an over-the-counter market is a 'recognized market' for purposes of the U.C.C." Mr. Rothstein contends that the magistrate judge's order is both clearly erroneous and contrary to law because the evidence demonstrates that a mistake was committed and the magistrate judge failed to apply the pertinent statutes and case law. The court disagrees and finds that the magistrate judge's ruling was correct because there is no case or authority declaring as a matter of law—as argued by Mr. Rothstein—that the OTCQB market is a recognized market under the UCC nor do the parties agree on the relevant facts from which this court might arrive at a conclusion one way or the other. It may well be that the OTCQB is a recognized market but, as evidenced by the parties' reliance on opposing and disputed "facts," that question clearly cannot be resolved in the context of what amounts to a Rule 12(b)(6) motion or, for that matter, should questions of material fact be manifest upon the presentation of admissible evidence, a motion for summary judgment.[1] The motion to review is denied.

### III. Motion to Reconsider

---

[1] Mr. Rothstein asserts in that motion that an amendment is futile if the amendment "would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." While that may be true when the court is presented with affidavits, deposition transcripts or exhibits that would be admissible at trial and that demonstrate the absence of material factual disputes, *see Bauchmann ex rel. Bauchmann v. West High School*, 132 F.3d 542, 561-62 (10th Cir. 1997), the parties did not present such materials to the magistrate judge in connection with the motion to amend and, even if they had, there is no indication on the record before the court that such evidence would demonstrate the absence of factual disputes. Moreover, Mr. Rothstein asked the magistrate judge to declare as a matter of law (while relying on disputed facts) that the OTCQB market was a recognized market for purposes of the UCC. Based on the briefing presented to him, he clearly could not do so.

Before turning to Mr. Rothstein's second motion for summary judgment on Mr. Ross's defamation claim, the court must resolve Mr. Ross's motion to reconsider the court's prior order concerning the defamation claim. Specifically, Mr. Ross asks the court to reconsider and vacate two aspects of that order. First, Mr. Ross asks the court to reconsider that portion of the order in which the court held that a demand letter sent by Mr. Rothstein's counsel to various recipients could not form the basis for Mr. Ross's defamation claim because the undisputed facts demonstrated that the letter was absolutely privileged. Second, Mr. Ross asks the court to reconsider that portion of the order in which the court granted summary judgment to the extent Mr. Ross claimed that Mr. Rothstein had made defamatory statements to Steve Gans.

By way of background, Mr. Ross, in responding to Mr. Rothstein's initial motion for summary judgment on the defamation claim, did not address in any respect Mr. Rothstein's argument that the demand letter was absolutely privileged and he did not seek relief under Federal Rule of Civil Procedure 56(d) requesting additional time to obtain affidavits or to take discovery in an effort to respond adequately to the motion. The court granted the motion on the grounds that the undisputed facts demonstrated that the letter was preliminary to a proposed judicial proceeding and directly related to that proposed proceeding such that it was absolutely privileged. With respect to Mr. Rothstein's alleged statements to Mr. Gans, the court granted summary judgment in favor of Mr. Rothstein because Mr. Gans averred that he reviewed the specific allegations in Mr. Ross's affidavit; he specifically denied that Mr. Rothstein ever made those statements to him; and Mr. Rothstein offered only inadmissible hearsay in response to that evidence.

In his motion for reconsideration, Mr. Ross asserts that "new evidence" in the form of deposition testimony from November 2013 demonstrates that summary judgment on these issues was inappropriate. According to Mr. Ross, the deposition of Mr. McCormack revealed that a draft of the demand letter was provided to him such that the letter was "excessively published" as to destroy any absolute privilege. Mr. Ross further argues that the deposition of Mr. Gans revealed that he in fact received written communications from Mr. Rothstein in which Mr. Rothstein made defamatory statements about Mr. Ross. The motion is denied. Mr. Ross's motion is asserted under Federal Rule of Civil Procedure 54(b), which provides that the court may, in its discretion, revise an interlocutory order at any time prior to the entry of final judgment. A Rule 54(b) motion, however, is not appropriate to advance arguments that could have been raised in prior briefing. *Johnson v. Simonton Bldg. Properties, Inc.*, 2009 WL 902409, at*2 (D. Kan. Mar. 31, 2009); *see also Ankeney v. Zavaras*, 524 Fed. Appx. 454, 458 (10th Cir. 2013) (grounds for granting a Rule 54(b) motion include "new evidence previously unavailable").

It is undisputed that the evidence relied upon by Mr. Ross was available to him—albeit in a different form—at the time he responded to Mr. Rothstein's initial motion for summary judgment. In June 2013, several weeks prior to the filing of Mr. Ross's response brief, Mr. Rothstein produced documents to Mr. Ross that included an e-mail chain between Mr. Rothstein and Mr. McCormack indicating that Mr. Rothstein had provided to Mr. McCormack a draft of the demand letter. That document production also included the e-mail communications from Mr. Rothstein to Mr. Gans that are the subject of Mr. Gans's deposition testimony now relied upon by Mr. Ross. Mr. Ross, then, had these e-mails in his possession at the time he responded

9

to the first motion for summary judgment and he did not reference those emails in any respect or submit those emails with his response. Mr. Ross contends that these emails, in the absence of testimony from Mr. McCormack and Mr. Gans, would not have satisfied his "burden of proof" and that he needed the deposition testimony to "prove the truth" of what was "merely suggested" in the emails.[2] As the nonmoving party, however, Mr. Ross was entitled to have the email evidence, and all reasonable inferences from that evidence, viewed in the light most favorable to him. Moreover, Mr. Ross was not required, in response to the motion for summary judgment, to prove his claim but only to show the existence of material factual disputes concerning his claim. In any event, Mr. Ross fails to explain why—in light of emails produced by Mr. Rothstein—he did not avail himself of the opportunity to file a Rule 56(d) motion and request that the court defer consideration of those aspects of the summary judgment motion involving the demand letter and Mr. Gans. Mr. Ross, then, has not demonstrated that his Rule 54(b) motion is based on new evidence that was previously unavailable to him.

For the foregoing reasons, Mr. Ross's motion to reconsider is denied and the court, in analyzing Mr. Rothstein's second motion for summary judgment on the defamation claim, will not consider claims or evidence relating to the demand letter or any allegedly defamatory statements made by Mr. Rothstein to Mr. Gans.

**IV.  Motion for Summary Judgment**

---

[2] Mr. Ross does not suggest that he would have been unable to authenticate the emails or that the emails were inadmissible for some other reason.

The court turns, then, to consider Mr. Rothstein's second motion for summary judgment on Mr. Ross's defamation claim. With respect to that motion, Mr. Rothstein must demonstrate that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and makes inferences in the light most favorable to Mr. Ross, the non-movant. *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Although the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party, summary judgment is warranted if the moving party "points out a lack of evidence to support an essential element of the claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Systems, Inc.*, ___ F.3d ____, 2013 WL 4046470 (10th Cir. Aug. 12, 2013).

The evidence in the record, as marshaled by Mr. Ross, reflects that Mr. Rothstein allegedly made defamatory statements about Mr. Ross to Dan Hutchins and Riley McCormack. Mr. Hutchins is Infinity's Chief Financial Officer and Mr. McCormack is an investor in and shareholder of Infinity. According to Mr. Ross, Mr. Rothstein made defamatory statements about him in oral conversations with Mr. Hutchins and Mr. McCormack and in written e-mail communications with Mr. McCormack. The court begins with Mr. Ross's evidence concerning statements made by Mr. Rothstein during oral conversations. In his second amended declaration filed in support of his opposition to the motion for summary judgment, Mr. Ross avers that he spoke with Mr. McCormack by telephone on several occasions in January 2013 and that, during

these conversations, Mr. McCormack advised him that Mr. Rothstein had told Mr. McCormack, among other things, that Mr. Ross had failed to fulfill his fiduciary duties to Infinity; that Mr. Ross was pursuing his own interests in derogation of the interests of Infinity and Infinity's shareholders; that Mr. Ross was not fit to be the CEO of a public corporation like Infinity; and that Mr. Ross was untruthful, dishonest and of bad character. In his deposition, Mr. Ross testified that in late January 2013 he spoke with Mr. Hutchins by telephone and that, during that conversation, Mr. Hutchins advised him that Mr. Rothstein had told Mr. Hutchins by telephone that Mr. Ross was dishonest and untrustworthy; that Mr. Ross lacked the honesty and integrity necessary to be the CEO of a public corporation; and that Mr. Ross would injure Infinity, its shareholders and its business prospects.

In his motion for summary judgment, Mr. Rothstein contends that Mr. Ross's evidence concerning what Mr. McCormack and Mr. Hutchins allegedly told plaintiff about oral conversations they allegedly had with Mr. Rothstein is inadmissible hearsay and cannot support plaintiff's defamation claim. The court agrees. While evidence concerning what Mr. Rothstein told Mr. McCormack and Mr. Hutchins would not constitute hearsay, *see* Fed. R. Evid. 801(d)(2), Mr. Ross has not suggested that any exception to the hearsay rule would permit him to testify at trial as to what Mr. McCormack and Mr. Hutchins, both out-of-court declarants, told him. *See* Fed. R. Evid. 801(c). In light of the fact that Mr. Ross's proffered evidence is inadmissible, the evidence produced by Mr. Rothstein demonstrates the absence of material factual issues on this aspect of plaintiff's claim. *See* Fed. R. Civ. P. 56(c)(2) & (4). Mr. McCormack testified in his deposition that in all of his conversations with Mr. Rothstein, Mr. Rothstein did not speak negatively about Mr. Ross. Similarly, Mr. Hutchins testified that he had

no knowledge of Mr. Rothstein making any negative or insulting statements about Mr. Ross and he denied having a conversation with Mr. Ross about any allegedly defamatory statements made by Mr. Rothstein. Thus, even viewed in the light most favorable to Mr. Ross, the uncontroverted admissible evidence is that Mr. Rothstein made no defamatory statements to Mr. McCormack or Mr. Hutchins during the course of oral conversations with those individuals.

That leaves only Mr. Ross's evidence of email communications between Mr. Rothstein and Mr. McCormack. In that regard, Mr. Ross points to two separate e-mail chains between Mr. Rothstein and Mr. McCormack. The first e-mail chain is dated January 8, 2013 and Mr. Rothstein and Mr. McCormack communicated in that chain about Mr. Rothstein's attempts to serve Mr. Ross with the lawsuit that Mr. Rothstein intended to file against him and Mr. Ross's apparent refusal to permit his lawyer to accept service on his behalf. In his emails to Mr. McCormack, Mr. Rothstein states that Mr. Ross "is going to make us serve him" at his office; that he does not "understand [Mr. Ross's] thought process;" and that Mr. Ross's approach was "a total waste of money and unnecessary embarrassment."

The second e-mail chain begins on January 25, 2013 with Mr. Rothstein forwarding to Mr. McCormack a draft of the demand letter that Mr. Rothstein's counsel anticipated sending to Mr. Hutchins, Mr. Ross and others. In the first email, Mr. Rothstein wrote:

> Just an FYI—this is going to the CFO with two minor corrections today. We have still not heard from Stan even after your well argued email. It certainly feels to me like he is both insincere and stalling for time.

Two days later, on January 27, 2013, Mr. McCormack replied to the email very briefly by expressing hope that the demand letter might help to resolve the issues and avoid litigation. In response to Mr. McCormack's email, Mr. Rothstein wrote:

13

> I just think he is getting bad advice or perhaps no legal advice. He is living in this fantasy world where he thinks he can dictate timing—and that is just not the case. The facts of this thing make him and the Company look horrible. He gains nothing by dragging his feet and subjects the Company unnecessarily to added scrutiny and costs. We sent the Company all that detail a week ago and then heard from Hoffman that he has not been instructed to comply. What does Stan think the natural response to that would be?
>
> Perhaps now that you have seen all the documentation you can reach out to him one last time? You can also mention to him that his refusal to get on the phone does not look good to you and further strengthens our view that he is neither sincere [n]or honest in his response to us. He just does not have the luxury of infinite time that he thinks he does. Our debate this weekend is whether to give Dan 24 or 48 hours to respond? Craig is very comfortable in our case and rights and Seth has double checked everything. Stan is dragging the Company in and he will have to bear the responsibility for that.

Mr. Rothstein moves for summary judgment on each of the allegedly defamatory statements made by him in his email communications to Mr. McCormack.

According to Mr. Rothstein, each of the statements challenged by Mr. Ross is non-defamatory as a matter of law because the statements present Mr. Rothstein's opinion of Mr. Ross's conduct, qualifications or character in relation to non-defamatory facts concerning the loan dispute that were well known to Mr. McCormack. The court agrees. While Mr. Ross attempts to argue that Mr. Rothstein's statements are not statements of opinion but rather are statements of fact, Mr. Rothstein's statements clearly reflect a level of subjectivity that are not susceptible of being proved true or false. *See Byers v. Snyder*, 44 Kan. App. 2d 380, 397 (2010); *Warren v. City of Junction City*, 207 F. Supp. 2d 1216, 1220 (D. Kan. 2002). Mr. Rothstein writes that he "does not understand" Mr. Ross's thought process; that he "feels like" Mr. Ross is lacking sincerity and stalling for time; that he "thinks" that Mr. Ross is receiving bad advice or no advice"; and that in his "view" Mr. Ross is being neither honest nor sincere. Mr. Rothstein's

email communications, taken as a whole, demonstrate as a matter of law that Mr. Rothstein was expressing a subjective view of Mr. Ross's behavior rather than expressing objectively verifiable facts. The statements are expressions of opinion.

Under the Restatement (Second) of Torts, a statement in the form of an opinion is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion. *See Restatement (Second) of Torts* § 566 (1977).[3] That is not the case here. It is undisputed that Mr. McCormack was well-versed in the circumstances surrounding the loan dispute between Mr. Ross and Mr. Rothstein and there is no evidence or suggestion of any undisclosed defamatory facts. Mr. Rothstein's statements, then, are "pure opinion" in which "both parties to the communication know the facts or assume their existence" and the maker of the comment "expresses a comment as to the plaintiff's conduct, qualifications or character" based on those facts "without implying the existence of other facts in order to justify the comment." *See id.*, cmt. b. As such, the statements are not actionable. *See id.* & cmt. c ("A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is."). Summary judgment, then, is granted on Mr. Ross's defamation claim.

## V.    Motion for Sanctions

---

[3] The Tenth Circuit has predicted that the Kansas Supreme Court would apply this section of the Restatement if faced with an issue concerning statements of opinion. *Bundren v. Parriott*, 245 Fed. Appx. 822, 828 n. 5 (10th Cir. Aug. 24, 2007).

Mr. Rothstein moves for sanctions against Mr. Ross on the grounds that Mr. Ross, according to Mr. Rothstein, knowingly submitted a false declaration in opposition to Mr. Rothstein's first motion for summary judgment. Specifically, Mr. Rothstein contends that Mr. Ross swore under penalty of perjury that he maintained in his possession certain voicemails allegedly left by Mr. McCormack in which Mr. McCormack relayed to Mr. Ross allegedly defamatory statements made to him by Mr. Rothstein. According to Mr. Rothstein, Mr. Ross, at the time he filed the declaration, knew that he no longer had those voicemails in his possession because the mobile device on which they were stored had been irretrievably lost. By way of relief, Mr. Rothstein asks the court to strike Mr. Ross's defamation claim in its entirety and to order Mr. Ross to reimburse Mr. Rothstein for the reasonable fees and costs he incurred in defending against the defamation claim and in bringing the motion for sanctions.

The court denies the motion. While the court obviously expects complete candor from all parties and would be very disturbed if in fact Mr. Ross violated his duty of candor to the court by submitting a false declaration, the court declines to resolve that issue because Mr. Rothstein's primary request for relief—the dismissal of the defamation claim—has been rendered moot by the court's granting of summary judgment on that claim. Moreover, regardless of the merits of Mr. Rothstein's motion, the court would not order Mr. Ross to reimburse Mr. Rothstein for defending against the defamation claim because the voicemail evidence had no bearing whatsoever on the court's resolution of the initial motion for summary judgment. The court addressed the issue in a footnote by stating that Mr. Ross had not submitted the content of the voicemails and that the voicemail evidence, as described by Mr. Ross in his declaration, constituted inadmissible hearsay in any event. Finally, in light of other evidence submitted by

Mr. Ross, including the demand letter, the e-mail exchanges between Mr. McCormack and Mr. Rothstein, and other statements made by Mr. Ross in his declarations, Mr. Rothstein clearly had to defend against the defamation claim even in the absence of the voicemail evidence. The court, then, denies the motion for sanctions.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant/counter claimant Adam Rothstein's motion for review (doc. 125) is **denied**; Mr. Rothstein's second motion for summary judgment (doc. 132) is **granted**; Mr. Ross's motion to reconsider (doc. 159) is **denied**; and Mr. Rothstein's motion for sanctions (doc. 185) is **denied.**

**IT IS SO ORDERED.**

Dated this 9th day of April, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
