## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

STANTON E. ROSS,

        **Plaintiff/Counter Defendant,**

**v.**

ADAM ROTHSTEIN,

        **Defendant/Counterclaimant.**

Case No. 13-2101-DDC-TJJ

---

## MEMORANDUM AND ORDER

This matter comes before the Court on: (1) defendant's Motion for Summary Judgment on plaintiff's claim for wrongful disposition of collateral, defendant's right to a deficiency damages award, and defendant's entitlement to attorney's fees (Doc. 252); (2) plaintiff's Motion for Summary Judgment on plaintiff's claim for wrongful disposition of collateral under K.S.A. §§ 84-9-624 and 84-9-626 and defendant's counterclaim for fraud in the inducement (Doc. 255); and (3) plaintiff's Motion in Limine excluding all facts, evidence, testimony, opinions, and inferences offered by defendant's proffered expert attorney Brian C. Underwood (Doc. 261). The Court referred all three motions to Magistrate Judge Teresa J. James for report and recommendation. On December 23, 2014, Judge James issued her Report and Recommendation (Doc. 283), recommending that the Court grant in part and deny in part plaintiff's Motion in Limine (Doc. 261), grant defendant's Motion for Summary Judgment (Doc. 252), and deny plaintiff's Motion for Summary Judgment (Doc. 255).

Plaintiff filed timely objections to the Report and Recommendation (Doc. 289).[1]  After considering plaintiff's objections and defendant's response, and having reviewed Judge James' well-reasoned Report and Recommendation, the Court overrules plaintiff's objections and adopts the Report and Recommendation of Judge James in its entirety.

## I.     Undisputed Facts

Judge James' Report and Recommendation (hereinafter, "Report") accurately sets forth the undisputed facts of the case.  The Court briefly summarizes those facts here.

Plaintiff is a resident of Johnson County, Kansas, and currently the Chairman of the Board, President, Chief Executive Officer, and shareholder of Infinity Energy Resources, Inc. ("Infinity"), a publicly traded company with its principal place of business in Johnson County, Kansas.  Defendant is a Connecticut resident and currently the advisor to several funds concentrating in the technology, media, and entertainment sectors.

On March 30, 2012, defendant agreed to loan plaintiff $210,000 for 60 days.  The terms of the loan were memorialized in a Secured Promissory Note and Pledge Agreement signed by the parties.  The Secured Promissory Note required plaintiff to repay the loan in full within 60 days, on or before May 31, 2012, and to pay the interest on the loan by transferring to defendant 15,000 shares of Infinity stock.

Plaintiff failed to repay the loan by its due date of May 31, 2012.  At plaintiff's request, the parties entered into a signed, written Forbearance Agreement on August 27, 2012.  Under the Forbearance Agreement, among other things, (1) plaintiff reaffirmed all obligations under the

---

[1]     Defendant also filed Conditional Objections to the Report and Recommendation (Doc. 286), which he requested the Court to consider only if it rejected Judge James' recommendation that the Court enter summary judgment against plaintiff on plaintiff's claim for wrongful disposition of collateral and in favor of defendant on defendant's claim for a deficiency damages award and determination (Doc. 286 at 1).  Because the Court adopts Judge James' Report and Recommendation in its entirety, it need not consider defendant's Conditional Objections.  Therefore, the Court overrules defendant's Conditional Objections as moot.

Secured Promissory Note, (2) plaintiff acknowledged the default, and (3) defendant agreed to forbear from taking any remedial action on the Secured Promissory Note based on plaintiff's default until January 1, 2013.  As consideration for the Forbearance Agreement, plaintiff agreed to deliver and transfer an additional 50,000 shares of Infinity common stock.  When they executed the Forbearance Agreement, the parties entered into a (Superseding) Pledge Agreement in which plaintiff pledged 77,310 shares of Infinity common stock that he owned.

Plaintiff did not repay the loan on or before January 1, 2013, and his failure to repay the loan continues to date.

On January 30, 2013, plaintiff filed this lawsuit in the District Court of Johnson County, Kansas, and defendant removed the action to this Court.  On September 9, 2013, Judge Lungstrum, the district judge then presiding over this case, granted summary judgment for defendant on his counterclaims for breach of the Secured Promissory Note, breach of the Forbearance Agreement, and breach of the (Superseding) Pledge Agreement and foreclosure of security interest (Doc. 54).  Two days later, Judge Lungstrum entered judgment for defendant on defendant's three breach of contract claims in the total amount of $210,000, plus 18% default interest compounding monthly beginning September 5, 2012 (Doc. 56).  Judge Lungstrum also ruled that defendant was entitled to obtain from the Clerk of the Court the original Infinity Energy Resources, Inc. Certificate No. 3287 representing 77,310 shares of Infinity common stock (Doc. 54).

On September 12, 2013, the Clerk of the Court released this stock certificate to defendant, which plaintiff previously had deposited with the Court (Docs. 52, 57).  Four days later, defendant deposited the certificate for the 77,310 shares of Infinity common stock in an account with online broker Fidelity.com.  He had established this account earlier in 2013, when

3

he sold the 15,000 Infinity shares (that plaintiff had agreed to pay as interest on the loan) and the 50,000 Infinity shares (that plaintiff agreed to pay as additional consideration in the Forbearance Agreement) that defendant previously had received from plaintiff.

Defendant sold the 77,310 shares of Infinity common stock on September 16, 2013.  He sold the shares in six different lots at prices ranging from $2.85 per share to $2.99 per share. After deducting brokerage fees and commissions, defendant realized $221,361.91 from the sale of the 77,310 shares.

Infinity's common stock trades on the Over-the-Counter QB Tier Market ("OTCQB") under the symbol "IFNY."  Infinity's common stock was not publicly traded or sold on any other stock market in 2012, 2013, or anytime since.

On December 23, 2013, plaintiff filed an Amended Complaint asserting a claim against defendant for Wrongful Disposition of Collateral under K.S.A. § 84-9-625.  This amendment relied on defendant's sale of the 77,310 shares of Infinity common stock (Doc. 117 at 10 −11). Plaintiff alleges that defendant violated Kansas law by failing to give plaintiff notice of the impending sale and by selling the shares in a commercially unreasonable manner.

In July 2014, the parties filed cross-motions for summary judgment (Doc. 252, 255) and plaintiff filed a motion in limine to exclude the testimony of defendant's expert, Brian C. Underwood (Doc. 261).  Defendant's motion seeks summary judgment against plaintiff's claim for wrongful disposition of collateral and in favor of defendant's right to deficiency damages and attorney's fees (Doc. 252).  Plaintiff seeks summary judgment on his claim for wrongful disposition of collateral and against defendant's counterclaim for fraud in the inducement.

## II.      Report and Recommendation

The Court referred the motions to Judge James for a report and recommendation (Doc. 282).  In the Report issued December 23, 2014 (Doc. 283), Judge James first recommended that the Court grant in part and deny in part plaintiff's motion in limine.  Her Report concluded that though Mr. Underwood is qualified to testify as an expert under Fed. R. Evid. 702, he cannot testify about the four opinions in his affidavit because they are inadmissible legal conclusions. Judge James explained that Mr. Underwood cannot testify about legal opinions, he nonetheless may testify about factual issues that will help the Court decide legal issues.  In making her recommendations on the cross-motions for summary judgment, Judge James determined that she could consider the factual statements in Mr. Underwood's affidavit "such as the operation, function, and trading of stocks on over-the-counter securities markets generally, as well as the OTCQB in particular and how it functions, operates, and how stocks trade on the OTCQB," as well as "the details of [defendant's] actual trades of the Infinity shares at issue."  (Doc. 283 at 19–20)  But Judge James' recommended rulings on the cross-motions for summary judgment nonetheless disregarded Mr. Underwood's legal opinions.  (*Id.* at 21)

Next, Judge James recommended that the Court grant defendant's motion for summary judgment for three reasons.  First, Judge James recommended summary judgment against plaintiff's claim for wrongful disposition of collateral.  She concluded that the undisputed facts establish that plaintiff waived his right to notice of defendant's sale of the 77,310 shares of Infinity common stock and also that defendant had sold the shares in a commercially reasonable manner.  Second, Judge James recommended that the Court enter a deficiency damages determination and award for defendant, and if the Court adopted her Report, she recommended the Court set an evidentiary hearing to determine the amount of the deficiency judgment that

plaintiff owes to defendant.  Third, Judge James recommended that defendant is entitled to

recover his reasonable out-of-pocket costs and expenses (including attorney's fees) because the

(Superseding) Pledge Agreement requires plaintiff to pay those costs and expenses.  Judge James

recommended that the Court determine the amount that defendant is entitled to recover after

defendant complies with the fee application process established in Fed. R. Civ. P. 54(d)(2) and

D. Kan. Rule 54.2.

Judge James then turned to plaintiff's motion for summary judgment.  She recommended

ruling against plaintiff's motion for summary judgment for two reasons.  First, the same reasons

that led her to recommend summary judgment for defendant against plaintiff's wrongful

disposition of collateral claim also warranted summary judgment against plaintiff on this same

claim.  Namely, the undisputed facts establish plaintiff had waived his right to receive notice of

defendant's sale of the stock and defendant had sold the stock in a commercially reasonable

manner.  Second, Judge James recommended summary judgment against defendant's

counterclaim for fraud in the inducement because plaintiff filed his motion out of time and

genuine factual issues exist that preclude summary judgment.

Plaintiff asserts thirteen objections to Judge James' Report.  The Court addresses each

objection below.

### III.    Standards of Review

Under Fed. R. Civ. P. 72(b)(2) and 28 U.S.C. § 636(b)(1)(C), a party may file specific,

written objections to a magistrate judge's proposed findings and recommendations.  When

reviewing a magistrate judge's report and recommendation on a dispositive issue, the Court

reviews de novo "those portions of the [magistrate's] report or specified proposed findings or

recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  This de novo review

requires the Court to "consider relevant evidence of record and not merely review the magistrate judge's recommendation." *In re Griego*, 64 F.3d 580, 584 (10th Cir. 1995) (citation omitted). When performing this review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b).

The standard for deciding summary judgment is well-established. Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When it applies this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

The Court applies this same standard to cross motions for summary judgment. Each party bears the burden of establishing that no genuine issue of material fact exists and entitlement to judgment as a matter of law. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). But where the cross motions overlap, the Court may address the legal arguments together. *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010) (citation omitted).

## IV.    Plaintiff's Objections

### A.   Objection No. 1 – Plaintiff Objects that the Report Found True a Number of Facts Material to Defendant's Fraud in the Inducement Claim.

Plaintiff first objects to the Report's acceptance of several summary judgment facts that are material to defendant's fraud in the inducement claim. By accepting those facts as true,

plaintiff argues, Judge James ignored plaintiff's evidence controverting those facts and thereby

engaged in an impermissible weighing of the summary judgment facts.

Plaintiff bases this objection on eight facts Judge James concluded were uncontroverted:

(1)     During the parties' initial discussions about the loan, plaintiff said "it would be a very short term loan since his company, Infinity, was moments away from closing on a financing and the company owed him $300,000 in 'back pay.'"  (Doc. 283 at 2–3)

(2)     Plaintiff "assured [defendant] that he would be able to promptly repay the loan, stating that Infinity was near to closing on a financing from which the $300,000 in 'back pay' Infinity owed him would be funded." (*Id.* at 3)

(3)      "At no time during the conversations leading up to [defendant] agreeing to make the loan to [plaintiff] did [plaintiff] tell [defendant] there were substantial tax liens filed against [plaintiff] that would make any compensation payment to [plaintiff] from Infinity subject to being consumed by taxing authorities." (*Id.*)

(4)      "At no time during the conversations leading up to [defendant] agreeing to make the loan to [plaintiff] did [plaintiff] tell [defendant] that [defendant] was counting on Infinity entering into a business relationship with a drilling partner that would result in Infinity being able to fund his 'back pay.'" (*Id.*)

(5)      "At no time during the conversations leading up to [defendant] agreeing to make the loan to [plaintiff] did [plaintiff] state to [defendant] that [plaintiff] was counting on the value of Infinity's stock to rise, the sale of which would enable him to repay the loan." (*Id.* at 4)

(6)     "Before [defendant] funded the $210,000 loan to [plaintiff] on March 30, 2012, [defendant] was never told in any manner by [plaintiff] himself, or by Stephen Gans, or by any Digital Ally Board member, or by anyone else, that [plaintiff] had tax problems and tax liens filed against him." (*Id.*)

(7)     "At no time did Mr. [Stephen] Gans hear or otherwise learn from [plaintiff], from any other member of the Digital Ally Board, or from anyone else associated with Digital Ally, that [plaintiff] had problems with the IRS and tax liens filed against him." (*Id.*)

(8)     "[Plaintiff] did not repay the Loan on or before the forbearance extended due date, and his failure to repay the Loan continues to this date." (*Id.* at 5)

Defendant set out each of these statements of fact in his Statement of Material Facts

supporting his summary judgment motion (Doc. 254 at ¶ 7) or in his Statement of Additional

Material Facts filed in response to plaintiff's summary judgment motion (Doc. 267 at ¶¶ 68, 70–73, 76, 79).  He properly cited evidence in the record to support each of these factual statements.  Plaintiff responded to defendant's statement of fact that "[Plaintiff] did not repay the Loan on or before the forbearance extended due date, and his failure to repay the Loan continues to this date" (No. 8 above) by stating that it was "undisputed."  (Doc. 271 at ¶ 7)   And plaintiff never responded to the other statements of fact (contained in defendant's Statement of Additional Material Facts in response to plaintiff's summary judgment motion (Doc. 267)), as Fed. R. Civ. P. 56(c)(1) and D. Kan. Rule 56.1 require.[2]  Plaintiff did not controvert specifically defendant's Statement of Additional Material Facts in plaintiff's reply (Doc. 280) or in any other document filed with the Court.  Thus, Judge James did not err when she accepted these eight facts as uncontroverted and included them in her findings of fact.

Plaintiff lists another 30 statements of fact that purportedly controvert the eight statements of fact described above and accepted by Judge James.  Plaintiff asserts that Judge James ignored these 30 statements of fact, and, by doing so, she engaged in an impermissible weighing of the summary judgment facts.  Plaintiff correctly stated that a court may not weigh competing facts at summary judgment under the well-established standard.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

Plaintiff included the 30 statements of fact (that he claims Judge James ignored) in his Statement of Uncontroverted Material Facts in support of his motion for summary judgment

---

[2]        Fed. R. Civ. P. 56(c)(1) requires a party asserting that a fact is disputed to cite particular parts of the record or to establish a genuine issue; D. Kan. Rule 56.1(b) states that all material facts set forth in the non-moving party's statement of additional facts are deemed admitted unless specifically controverted by the reply of the moving party.

(Doc. 257).  Defendant filed a Response to plaintiff's Statement of Uncontroverted Material Facts (Doc. 268).  In Doc. 268, defendant responded to each of plaintiff's 30 factual statements by explaining that the majority of these facts either are immaterial, objectionable because they lack foundation or are hearsay, or controverted based on other evidence in the record.  Plaintiff did not address defendant's objections to these 30 factual statements in his reply (Doc. 280) or in any filing with the Court.

In her Report, Judge James set out the statement of facts on which she based her recommendation and explained that these facts were "either uncontroverted, or, where controverted, are construed for summary judgment purposes in the light most favorable to the party opposing the summary judgment motion."  (Doc. 283 at 2).  She also made clear that "[i]mmaterial facts and factual averments not properly supported by the record are omitted" from her findings of fact.  (*Id.* at 2)

The Court has reviewed the factual record cited by plaintiff in support of these 30 factual statements and agrees with Judge James:  these 30 factual statements are either immaterial or not supported by the record.  Therefore, Judge James did not err by failing to include these factual statements in her findings of fact.  Because the Report properly excluded these 30 factual statements from the findings of fact, the Court concludes Judge James did not weigh the summary judgment facts improperly.  The Court therefore overrules plaintiff's first objection to the Report.

### B.  Objection No. 2 – Plaintiff Objects that the Report Erroneously Admits the Factual Testimony of Defendant's Expert While Excluding His Opinions.

In the Report, Judge James recommended that the Court grant in part and deny in part plaintiff's motion in limine seeking to exclude all facts, evidence, testimony, opinions, and inferences offered by defendant's proffered expert attorney, Brian C. Underwood (Doc. 283 at

20–21).  Judge James first determined that Mr. Underwood is qualified to testify as an expert under Fed. R. Evid. 702.  But having decided the threshold question of expertise, Judge James then concluded that Mr. Underwood cannot testify at trial about the four opinions in his affidavit because they are inadmissible legal conclusions.  However, Judge James differentiated between these four legal opinions and factual issues that will assist the Court in deciding legal issues "such as the operation, function, and trading of stocks on over-the-counter securities markets generally, as well as the OTCQB in particular and how it functions, operates, and how stocks trade on the OTCQB," as well as "the details of [defendant's] actual trades of the Infinity shares at issue."  (*Id.* at 19–20)  Plaintiff objects to the Report's recommendation for two reasons.

First, plaintiff objects that Mr. Underwood cannot testify as a fact witness about these facts because he lacks personal knowledge of the facts, as Fed. R. Evid. 602 requires.  But Judge James did not recommend that the Court admit Mr. Underwood's testimony as fact witness testimony under Fed. R. Civ. P. 602.  To the contrary, she determined that Mr. Underwood was qualified to testify as an expert under Fed. R. Evid. 702, which allows a "witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion *or otherwise*."  Fed. R. Evid. 702 (emphasis added).  An expert witness may testify about facts at trial when the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Civ. P. 702(a); *see also Specht v. Jensen*, 853 F.2d 805, 809–10 (10th Cir. 1988) (holding that expert witness may testify about specific questions of fact to aid the jury's understanding of the facts in evidence); *Hartzler v. Wiley*, 277 F. Supp. 2d 1114, 1118 (D. Kan. 2003) (excluding expert's opinion testimony that amounted to legal conclusions but allowing expert to testify about facts and circumstances demonstrating the parties' intent in entering into an ambiguous contract).

Judge James' ruling left Mr. Underwood in a relatively uncommon position for an expert. The Report excluded all his opinions because they amounted to legal opinions—an expertise typically reserved for the Court.  But Judge James concluded that Mr. Underwood still possessed other "knowledge, skill, experience, training, or education" that, in Her Honor's estimation, helped understand the evidence.  Fed. R. Evid. 702.  May an expert in this position still testify about the "non-opinion" aspects of the expert's "knowledge" or "experience"?  While plaintiff argues in his objections that Mr. Underwood cannot be permitted to testify about any "facts" that support his properly excluded opinions, plaintiff cites no authority for this argument.  (Doc. 289 at ¶ 26, 32)  In contrast, the available authority on this issue leads the Court to conclude that Judge James correctly considered Mr. Underwood's "knowledge" about and "experience" with "the operation, function, and trading of stocks on over-the-counter securities markets generally, as well as the OTCQB in particular . . . ."  (Doc. 283 at 19–20)

As Judge James recognized, Rule 702(a) empowers a court to consider such evidence. "A witness who is qualified as an expert . . . may testify in the form of an opinion or otherwise if: (a) the expert's . . . other specialized knowledge will help the trier of fact . . . ."  Fed. R. Evid. 702(a).  The Rule's Advisory Committee Notes amplify this principle.  "Most of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded."  Fed. R. Evid. 702 advisory committee's note (commenting on the 1972 proposed rules).  And the case authorities also reject the idea that opinions are essential to an expert's currency.  *See United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001) (holding that the government was "free to offer expert testimony . . . as background for an offense"); *see also Fisher v. Ciba Specialty Chems. Corp.*, No. 03-0566-WS-B, 2007 WL 2302470, at *2–3 (S.D. Ala. Aug. 8, 2007) (citing, among others, *United States v. Lewis*, 240 F.3d 866, 869 –70 (10th

Cir. 2001) (trial court properly admitted expert testimony to explain general requirements of Oklahoma law although expert offered no opinions whether that law applied to defendant)). Both *Fisher* and *Lewis* rejected motions seeking to exclude expert witnesses because they offered background information but no opinions.

Here, Judge James did not err by recommending that the Court admit Mr. Underwood's uncontroverted background information even though she had excluded his opinions. Her exclusion ruling did not nullify Mr. Underwood's qualifications. And Rule 702 permits a court to consider such testimony—here by Affidavit—as does the commentary of the advisory committee and the cases applying the rule.

Plaintiff also objects that defendant never disclosed Mr. Underwood as a fact witness. Defendant points out that plaintiff did not raise this argument in his original motion (Doc. 261), and, therefore, the Court should not consider it. Nevertheless, the Court reiterates that Judge James did not recommend that the Court treat Mr. Underwood as a fact witness but instead found Mr. Underwood qualified to testify as an expert about these factual issues. Defendant properly disclosed Mr. Underwood as an expert witness (Doc. 162), and thus plaintiff's argument that the Court should exclude Mr. Underwood's testimony for failing to disclose him lacks merit.

Next, plaintiff argues that Mr. Underwood's factual testimony is based on hearsay and therefore is inadmissible under Fed. R. Evid. 703,[3] unless the evidence's probative value outweighs its prejudicial effect. Plaintiff argues, without specificity, that the facts which Mr. Underwood relies on "consist entirely of something he has read or heard" and thus constitute

---

[3]     Fed. R. Evid. 703 provides: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."

hearsay.  (Doc. 289 at ¶ 34)  The Court, however, has reviewed Mr. Underwood's affidavit (Doc. 253-3) and agrees with defendant:  Mr. Underwood's affidavit provides sufficient foundation for his specialized knowledge about over-the-counter markets, including the OTCQB.  The Court therefore overrules plaintiff's second objection to the Report.

### C.  Objection No. 3 – Plaintiff Objects to the Report's Acceptance of Certain Factual Testimony Provided by Mr. Underwood That Plaintiff Claims Is Contradicted By Other Evidence in the Record.

Like the arguments made by his first objection, plaintiff argues that Judge James erred by accepting as true certain factual testimony of Mr. Underwood because other evidence in the record contradicts this factual testimony.  By doing so, plaintiff argues, Judge James improperly weighed the evidence on summary judgment.  The Court rejects this argument for several reasons.

First, plaintiff lists eight pieces of "factual testimony" that the Report purportedly "admits, credits and adopts" and this "in some instances violat[es] the exclusion of rulings elsewhere in the Report."  (Doc. 289 at ¶ 36 (noting, in particular, the Report's ruling that the Court cannot accept Mr. Underwood's legal conclusion that the OTCQB is a "recognized market" as defined under the Kansas Uniform Commercial Code))  The Court has reviewed the eight factual statements and finds that Judge James did not err by including them in her Report. Several of these statements address Mr. Underwood's qualifications to testify as an expert and Judge James' determination that he has the requisite skill, experience, and knowledge to testify as an expert about certain factual matters.  The Court again has reviewed Mr. Underwood's education, training, and other professional background, as set out in his affidavit, and agrees with Judge James.  Mr. Underwood is qualified to testify as an expert under Fed. R. Evid. 702.

The other statements include facts taken from Mr. Underwood's affidavit that describe the operation, function, and trading of stocks on over-the-counter securities markets, including the OTCQB. Defendant included some of these facts in his Statement of Material Facts in support of his summary judgment motion, citing Mr. Underwood's affidavit to support these facts (Doc. 254 at ¶¶ 31–39). Plaintiff responded that many of these facts were undisputed, or, where disputed, plaintiff failed to controvert the facts with admissible evidence in the summary judgment record (Doc. 271 at ¶¶ 31–39). Defendant presented additional factual testimony from Mr. Underwood's affidavit in his Statement of Additional Material Facts filed in response to plaintiff's summary judgment motion (Doc. 267 at ¶¶ 48–56). As explained above, plaintiff never responded to these factual statements—not in plaintiff's reply (Doc. 280) or in any other document filed with the Court. The Court thus concludes that Judge James did not err when she accepted Mr. Underwood's factual testimony as uncontroverted.

Second, plaintiff argues that Judge James erred by accepting a statement made in Mr. Underwood's affidavit that "the sale of Infinity shares traded on the OTCQB 'were sold in a recognized market at standardized prices; and that the sale of the shares [was] not the subject of individual negotiation.'" (Doc. 283 at 35 (quoting Mr. Underwood's Affidavit (Doc. 253-3 at ¶ 41)) Plaintiff contends that this statement of fact contradicts the Report's other ruling that it cannot accept Mr. Underwood's legal conclusion that the OTCQB is a "recognized market," as defined by the Kansas Uniform Commercial Code ("UCC"). The Court disagrees. The Report never adopted Mr. Underwood's statement that the sale of Infinity shares traded on the OTCQB were sold in a recognized market at standardized prices. Instead, the Report just described what Mr. Underwood had stated in his affidavit; it did not make any explicit finding about his statement or accept it as true. (*Id.*)

Reading further in the Report, Judge James again stated that she "rejects the ultimate conclusions offered by [Mr. Underwood]," but she found "that his factual statements and explanations support the conclusion that the Infinity shares at issue were sold at standardized prices and the sale of those shares was not subject to individual negotiation." (*Id.* at 36)  Judge James also noted that plaintiff had not offered any evidence to refute Mr. Underwood's statements that defendant's sale of the Infinity shares did not result from individually negotiated transactions.  (*Id.*)  Based on this finding, Judge James rejected plaintiff's argument that the OTCQB was not a "recognized market" under the Kansas UCC because the share prices are subject to negotiation.  Contrary to plaintiff's argument, Judge James did not accept Mr. Underwood's testimony that defendant's sale of Infinity stock on the OTCQB was sold in a recognized market as the Kansas UCC defines that term.  To the contrary, Judge James specifically rejected Mr. Underwood's legal conclusions.  (*Id.*)

Finally, plaintiff asserts that the Report ignored contrary evidence in the summary judgment record when it accepted Mr. Underwood's factual testimony as true.  By ignoring that contradictory evidence, plaintiff argues, Judge James improperly weighed the summary judgment evidence and violated the established standard for deciding summary judgment. Plaintiff objects that Judge James ignored five types of evidence that contradicted Mr. Underwood's testimony.

*First*, plaintiff argues that Judge James erred by disregarding ten factual statements about the operation of the OTCQB.  (*See* Doc. 289 at ¶ 50(a)–(j))  On summary judgment, plaintiff supported each of these factual statements by reference to two screen prints from the OTC Markets Group website.  Defendant objected to these website screen prints as inadmissible hearsay.  Defendant also argued that even if the website screen prints were admissible, the

information that they contained did not controvert facts establishing that the OTCQB operates as

a stock market where fungible marketable securities are:  (a) traded publicly; and (b) the

securities' prices are determined primarily through standardized real-time price quotations and

neutral market forces.

In the Report, Judge James explicitly addressed the website screen prints, questioning

"the authenticity and admissibility of the statements contained" in them.  (Doc. 283 at 33 (citing

*ColtTech LLC v. JLL Partners, Inc.*, 538 F. Supp. 2d 1355, 1357 n.3 (D. Kan. 2008) ("For

purposes of summary judgment, the court does not consider unsworn, unauthenticated

documents, including printed copies of web sites.")))  And putting aside the admissibility of this

evidence, the information from the website screen prints did not establish that the OTCQB

differed from other "recognized" securities markets because the prices of securities traded on the

OTCQB are individually negotiated, which, plaintiff argued, demonstrates that the Court should

not consider the OTCQB as a "recognized market" under Kansas law.  (*Id.*)  Judge James noted

that one of the screen prints "actually states that investors in OTCQB marketplaces can buy and

sell securities 'in a manner almost identical to that of trading NYSE or NASDAQ securities,

through the broker of their choice (institutional, online, retail)'" and another of the screen prints

"states that 'trading an OTCQX, OTCQB or OTC Pink security is comparable to trading a

security on NYSE or NASDAQ.  Investors may buy and sell securities through the institutional,

online or retail broker-dealer of their choice.'"  (*Id.* (quoting Docs. 272-5, 272-6))  The second

screen print also "provides a detailed explanation of the trading process for an individual

investor."  (*Id.*)

The Court has reviewed the factual statements cited by plaintiff and agrees with Judge

James.  The admissibility of the screen prints used to support plaintiff's purported facts is

questionable.  The proffered evidence is hearsay, and, on summary judgment, plaintiff did not

identify any hearsay exception that would allow the Court to consider this evidence.[4]  *See Argo*

*v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (the content

and substance of summary judgment evidence must be admissible at trial); *see also Adams v.*

*Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) ("Hearsay testimony that

would be inadmissible at trial cannot be used to defeat a motion for summary judgment[.]").  The

Court also agrees that even if these facts were admissible, they do not establish that the OTCQB

differs from other recognized markets because the prices of securities sold on the OTCQB are

subject to individual negotiation.

    *Second*, plaintiff argues that the Report improperly ignores certain factual statements

taken from an August 17, 2007 letter sent to the Securities and Exchange Commission ("SEC")

by Cromwell Coulson, who was then the CEO of Pink Sheets, LLC and now is the President of

OTC Markets Group.  In the summary judgment briefing, defendant objected to this letter

because it contained hearsay, was not previously produced in the litigation, was not cited in

plaintiff's First Amended Complaint, or identified in any Rule 26 disclosure.  (Doc. 278 at 41–

---

[4]      Plaintiff argues in Objection No. 4 below that the evidence is not hearsay because defendant manifested an adoption or belief in the truth of the statements contained on the website.  *See* Fed. R. Evid. 801(d)(2)(B).  In support of his assertion, plaintiff argues that defendant attached copies of screen prints from the same website to a motion to review Magistrate Judge Waxse's decision to allow plaintiff to amend his complaint (Doc. 126), defendant's expert relied on information from this website in his expert report (Doc. 253-3), and defendant admitted that certain information appears on this website (Doc. 268 at ¶¶ 30–36, 48–59).  But, upon closer examination of those filings, defendant's references to the website were made in response to plaintiff's citation of the website in his First Amended Complaint (Doc. 117).  Moreover, defendant's admission that certain statements appear on a website does not establish that he manifested a belief in the truth of those statements to bring them within the hearsay exception of Fed. R. Evid. 801(d)(2)(B).  To the contrary, defendant specifically stated in his Answer that he was not admitting to the factual accuracy, completeness, or admissibility of the quoted excerpts from the website and defendant continued to object to the admissibility of the statements in the summary judgment briefing. (*See, e.g.*, Doc. 268 at ¶ 30)  Thus, the Court rejects plaintiff's assertion that defendant manifested a belief in the truth of the statements on these screen prints to bring the evidence within the hearsay exception.

43)  Defendant also objected that plaintiff neither had designated Mr. Coulson as an expert

witness nor identified him as a fact witness under Rule 26.  (*Id.*)

Judge James did not refer specifically to this August 17, 2007 letter in her Report, but

Judge James did announce that she had omitted all "factual averments not properly supported by

the record."  (Doc. 283 at 2)  Plaintiff argues that this letter is a public document available for

inspection on the SEC's website and the EDGAR system, but he cites no authority that would

allow the Court to take judicial notice of this letter under Fed. R. Evid. 201.  A court may take

judicial notice of evidence "only if the facts in question are 'not subject to reasonable dispute;'

if, instead, they are 'capable of accurate and ready determination by resort to sources whose

accuracy cannot reasonably be questioned.'"  *Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir.

2001) (quoting Fed. R. Evid. 201(b) and citing *United States v. Burch*, 169 F.3d 666, 672 (10th

Cir. 1999)).  Plaintiff has failed to show that the contents of the August 17, 2007 letter are "not

subject to reasonable dispute" or that they are "capable of accurate and ready determination"

from sources "whose accuracy cannot reasonably be questioned."  Thus, the Court declines to

take judicial notice of this letter.  Moreover, Judge James properly excluded the August 17, 2007

letter because it was inadmissible on summary judgment for all of the additional reasons asserted

by defendant and described above.

*Third*, plaintiff asserts that Judge James erred by failing to consider facts from two screen

prints purportedly taken from the OTC BB website.  (*See* Doc. 289 at ¶ 52)  Like the other

website screen prints described above, defendant objected to the OTC BB website screen prints

as inadmissible hearsay.  Defendant also argued that even if the website screen prints were not

hearsay, the information contained in them did not controvert facts cited by defendant describing

the operation of the OTCQB.  Again, the Report does not discuss the OTC BB website screen

prints explicitly, but Judge James disregarded this information on summary judgment.  The Court concludes that Judge James did not err by failing to consider these screen prints.  For the same reasons discussed above, the information contained in these website screen prints is inadmissible hearsay, which the Court cannot consider on summary judgment.  *See Argo*, 452 F.3d at 1199; *see also Adams*, 233 F.3d at 1246.  The Court also agrees that, even if the facts contained in these website screen prints are admissible, they do not controvert the admissible and properly supported factual statements describing the OTCQB's operation cited by plaintiff.

*Fourth*, plaintiff objects that Judge James failed to consider certain statements contained in FINRA Rule 220.01 (Supplementary Material) which, plaintiff contends, shows that prices on the OTCQB are negotiable.  On summary judgment, defendant objected to plaintiff's citation of this supplementary material because it is hearsay, misleading, incomplete, and lacks foundation.  Defendant also pointed out that the rule's actual language (as opposed to the supplementary material) describes the OTC standardized price quotation system and the process that prevents member dealers from "backing away" from quotes, thereby controverting the selected statements cited by plaintiff in the supplemental material.  (Doc. 278 at 40–41)  The Court agrees with defendant.  Plaintiff failed to establish that this supplemental material is admissible on summary judgment, and, even if admissible, it does not controvert other facts describing the OTCQB's price quotation system.  Therefore, Judge James did not err by refusing to consider on summary judgment these certain statements contained in FINRA Rule 220.01 (Supplementary Material).

*Fifth*, plaintiff argues that Judge James erred by failing to consider statements made on an SEC website about the sale of OTC securities.  Defendant again objected to these facts on summary judgment because plaintiff had failed to establish that information from this government website is admissible without a sponsoring witness or some other basis for

admissibility.  Defendant also objected that the information was incomplete and therefore misleading.  Defendant cited other information from the website confirming that the OTC Link (the trading platform) facilitates trading on the OTCQB based on standardized price quotations, thereby contradicting the selected information cited by plaintiff trying to establish that OTCQB prices are subject to negotiation.  Defendant also objected to the statement that the OTC Link provides subscribers the ability to send and receive trade messages, allowing them to communicate for the purpose of negotiating trades, as immaterial.  Defendant argued no evidence exists showing that defendant had any such communications to negotiate the sale of shares at issue in this case and the evidence establishes that the sale was transacted electronically at then-prevailing market prices in the best bid/best offer process.

Judge James specifically considered the fact that the OTC Link allows communications and trade negotiations among broker-dealers for possible private transactions of common stock shares of a publicly traded company.  (Doc. 283 at 35)  But she disagreed that this feature required the Court to conclude that the OTCQB is not a "recognized market" under the Kansas UCC.  (*Id.*)  Judge James noted that private parties always have the ability to negotiate private transactions outside of a recognized market.  (*Id.*)  Moreover, that kind of individual negotiation did not occur with the sale of shares at issue here.  (*Id.* at 36)  Instead, Judge James determined that the undisputed facts establish that defendant's sale of the Infinity shares in this case was consistent with public trading on the NYSE.  (*Id.*)

The Court agrees with Judge James' consideration of the governing facts pertinent to the operation of the OTCQB.  She did not weigh facts but, instead, considered the information as a whole in reaching certain conclusions about the operation of the OTCQB and, more specifically, about the sale of the Infinity shares on that market in this case.

*Last*, plaintiff asserts that Judge James erred by failing to consider 15 factual statements which, plaintiff claims, are admissions made in defendant's deposition that demonstrate that the OTCQB is not a "recognized market" under the UCC.  (Doc. 289 at ¶ 55)  On summary judgment, defendant objected to most of these factual statements because they were misleading or incomplete citations from defendant's deposition testimony about the OTCQB's operation. Defendant responded that certain testimony was uncontroverted to the extent defendant was testifying as a lay witness, but he also referred to more accurate, complete, and admissible facts about the OTCQB's operation as described by defendant's expert, Mr. Underwood.  The Court agrees with defendant that plaintiff's purported facts rely on incomplete statements taken from defendant's deposition in which he was testifying about a topic only in a lay witness capacity and not as an expert.  These factual statements do not controvert the other evidence cited by defendant describing the OTCQB's operation.  Therefore, Judge James did not err by failing to consider these alleged admissions from defendant's deposition testimony.

For all these reasons, the Court concludes that Judge James properly considered the summary judgment record.  Judge James did not weigh conflicting evidence.  Instead, she determined correctly that the Court could not consider certain evidence—evidence that plaintiff contends contradicts Mr. Underwood's testimony—because plaintiff's proffered evidence is inadmissible, immaterial, or not supported by the summary judgment record.  Thus, the Court overrules plaintiff's third objection to the Report.

### D.   Objection No. 4 – Plaintiff Objects to Judge James' Questioning of the Authenticity and Admissibility of Website Screen Prints Proffered by Plaintiff.

As discussed above, plaintiff relied on several statements taken from screen shot prints off of the OTC Markets Group's website to controvert defendant's description of the OTCQB's

operation.  Judge James questioned the authenticity and admissibility of the screen prints from

the OTC Markets Group Website.  But she also concluded that, if they were admissible, the

information did not establish that the OTCQB differs from other "recognized" securities markets

because the prices of securities traded on the OTCQB are individually negotiated.  (Doc. 283 at

33)

In his fourth objection, plaintiff argues that Judge James erred by questioning the

authenticity and admissibility of this evidence.  Plaintiff claims that this evidence is admissible

and that Judge James erred by failing to consider it on summary judgment.  The Court already

has addressed the admissibility of the statements from this website above, concluding they are

hearsay and not subject to the hearsay exception in Fed. R. Evid. 801(d)(2)(B).  The Court also

rejects plaintiff's argument that defendant and his expert relied on statements from this same

website.  Instead, the record shows that defendant and his expert referred to statements from this

website in response to plaintiff's citations to this website in his First Amended Complaint (Doc.

117).

More important to this objection, however, plaintiff ignores that Judge James *did*

consider the evidence from the screen prints.  Her Report specifically states, "*[e]ven setting*

*aside the admissibility of these screen prints*, the Court finds the information in them does not

support [plaintiff's] position that the OTCQB is distinguishable from other 'recognized'

securities markets because the prices of OTCQB securities are individually negotiated, and

therefore the OTCQB should not be considered a 'recognized market' under K.S.A. 84-9-

627(b)(1) or (2)."  (*Id.* (emphasis added))  Judge James specifically referenced other statements

in the screen prints that supported defendant's argument that the OTCQB operates in a manner

comparable to trading a security on the NYSE or NASDAQ.  Thus, Judge James concluded that

23

the information in the screen prints failed to establish plaintiff's assertion that the OTCQB is

different from other recognized markets.  Judge James did not err in her consideration of this

evidence.

### E.   Objection No. 5 – Plaintiff Objects that the Report Failed to Require Defendant to Meet His Burden Under K.S.A. § 84-9-626 of Proving that the Collection, Enforcement, Disposition, and Acceptance of the Collateral Complied with Kansas Law.

K.S.A. § 84-9-626 applies to an action, like this one, that "aris[es] from a transaction in

which the amount of a deficiency or surplus is in issue."  The statute requires a secured party to

bear the burden of establishing "that the collection, enforcement, disposition, or acceptance [of

collateral] was conducted in accordance with [Part 6 of Kansas UCC Article 9, K.S.A. §§ 84-9-

601 through 628]."  K.S.A. § 84-9-626(2).  The statute also provides:

> [I]f a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with [the statutory requirements], the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney fees exceeds the greater of:
>
> (A) The proceeds of the collection, enforcement, disposition, or acceptance; or
>
> (B) the amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the provisions of this part relating to collection, enforcement, disposition, or acceptance.

K.S.A. § 84-9-626(3).  K.S.A. § 84-9-626(4) explains that "the amount of proceeds that would

have been realized is equal to the sum of the secured obligation, expenses, and attorney fees

unless the secured party proves that the amount is less than that sum."

Plaintiff argues that the Report failed to hold defendant to this statutory burden on

summary judgment.  The Court disagrees.  As described in more detail below in response to

plaintiff's sixth, seventh, eighth, ninth, and tenth objections, Judge James properly applied this

statutory burden to the deficiency claim on summary judgment.  The Report concluded that no

24

genuine issues of material fact exist to demonstrate that defendant failed to comply with Part 6 of Article 9 of the Kansas UCC in the collection, enforcement, disposition, or acceptance of the collateral, and therefore, Judge James recommended that the Court grant summary judgment for defendant and against plaintiff on this claim.

Plaintiff argued on summary judgment that defendant failed to comply with the requirements of Kansas law because defendant failed to give plaintiff notice of the sale of 77,310 shares of Infinity stock, failed to obtain a waiver of notice after default, and failed to sell the collateral in a commercially reasonable manner.  First, Judge James concluded that, although defendant did not give notice to plaintiff of the sale, as K.S.A. § 84-9-611 requires, defendant established that plaintiff had waived notice in a post-default agreement making notice unnecessary under K.S.A. § 84-9-624(a).  (Doc. 283 at 26–28)  Second, Judge James determined that defendant had established as a matter of law that his disposition of the collateral was commercially reasonable as K.S.A. §§ 84-9-610 and 84-9-627 require.  (*Id.* at 29–38)  Thus, Judge James concluded that the summary judgment facts establish that defendant had complied with Part 6 of Article 9.  Therefore, the Report recommended that defendant was entitled to summary judgment on plaintiff's claim for wrongful disposition of collateral and a deficiency damages determination award.  (*Id.*)

The Report properly applied the statutory burden.  *See, e.g.*, *Raytheon Aircraft Credit Corp. v. Mi-Ka Aviation, Inc.*, No. 01-1339-WEB, 2003 WL 21496865, at *5 (D. Kan. May 5, 2003) (granting summary judgment against a debtor who was liable for a debt due under a promissory note because, among other things, no evidence existed showing that the creditor disposed of the collateral in violation of the Kansas UCC); *United States v. Cox*, 731 F. Supp. 1023, 1025–26 (D. Kan. 1990) (granting summary judgment against a debtor's claim that a

secured creditor violated the Kansas UCC because the "evidence clearly show[ed]" that the sale of collateral was conducted in a commercially reasonable manner); *Gillenwater v. Mid-American Bank and Trust Co.*, 870 P.2d 700, 703–04 (Kan. Ct. App. 1994) (holding that the trial court did not err in granting summary judgment against a debtor's claim that the secured creditor sold collateral in a commercially unreasonable manner).  Judge James concluded that defendant met his burden under K.S.A. § 84-9-626(2) to establish that his collection, enforcement, disposition, or acceptance of the collateral complied with Part 6 of Article 9 of the Kansas UCC.  The Report thus did not need to address K.S.A. § 84-9-626(3) which provides a formula for determining the debtor's liability, but only if the secured party fails to prove that the collection, enforcement, disposition, or acceptance followed the statutory requirements.  That statute does not apply here because the uncontroverted facts establish that defendant complied with the requirements contained in Part 6 of Article 9 of the Kansas UCC.

The Court recognizes that the Report speaks in terms of defendant's proof.  (*See* Doc. 37 ("The Court thus finds that [defendant] has sufficiently proven that his deposition of the  . . . stock was conducted in accordance with . . . Part 6 of Kansas UCC Article 9.")  The Court understands this language to communicate Judge James' ruling that the uncontroverted facts establish that defendant sold the stock in compliance with the Kansas UCC's requirements.  To verify, the Court has conducted an independent review of the relevant undisputed facts and concludes that they establish this proposition as a matter of law.  The Court overrules plaintiff's fifth objection to the Report.

**F.  Objection Nos. 6 and 7 – Plaintiff Objects to the Report's Conclusion that Plaintiff Waived the Notice Requirement After Default Because (1) the Waiver of Notice in the (Superseding) Pledge Agreement is not a Post-Default Waiver as Defined By K.S.A. § 84-9-624(a), and (2) Even if the (Superseding) Pledge Agreement Contains a Waiver of Notice, the Waiver Does Not Include Notices of Sale.**

Plaintiff's sixth and seventh objections argue that the Report erred by concluding that plaintiff waived notice of defendant's sale of the Infinity stock.  Plaintiff objects to the Report's conclusion for two reasons.

First, plaintiff contends that the waiver contained in the (Superseding) Pledge Agreement is not a waiver as defined by K.S.A. § 84-9-624(a) because plaintiff did not agree to the waiver after default.  K.S.A. § 84-9-624(a) provides that a debtor may "waive the right to notification of disposition of collateral . . . only by an agreement to that effect entered into and authenticated *after default*."  *Id.* (emphasis added).  Plaintiff argues that the (Superseding) Pledge Agreement (which contains the waiver provision) extended the due date of the loan to January 1, 2013, and, therefore, when plaintiff signed that Agreement on August 27, 2012, he was not in default on the loan.

The Report rejected plaintiff's argument, and the Court agrees with this conclusion. Kansas law requires the Court, when considering a contract that is unambiguous and whose language is not doubtful or obscure, to give the contract's words "their plain, general and common meaning" and to enforce the contract "according to its terms."  *Wagnon v. Slawson Exploration Co., Inc.*, 874 P.2d 659, 666 (Kan. 1994) (citations omitted).  Applying the laws governing contract interpretation in Kansas, Judge James properly construed the plain and unambiguous language in the parties' contracts.

It is undisputed that plaintiff defaulted on the Secured Promissory Note on May 31, 2012. Therefore, when plaintiff entered into the (Superseding) Pledge Agreement on August 27, 2012,

27

he had defaulted already on the loan.  Contrary to plaintiff's argument, the (Superseding) Pledge Agreement and Forbearance Agreement (which the parties also executed on August 27, 2012) did not extend the loan's maturity date to January 1, 2013.  Instead, defendant agreed in the Forbearance Agreement not to take any remedial action on the Secured Promissory Note based on plaintiff's default until January 1, 2013.  Plaintiff also specifically acknowledged in the Forbearance Agreement that the maturity date of the loan was May 31, 2012, that he had failed to pay defendant the amount owed on the loan by that date, and that he was in default.  Plaintiff also agreed in the Forbearance Agreement that defendant was not waiving any of his rights or remedies under the Secured Promissory Note, including his rights upon plaintiff's default.  Thus, plaintiff's execution of the (Superseding) Pledge Agreement (which included the waiver of notice) occurred after default, as K.S.A. § 84-9-624(a) requires.

Second, plaintiff argues that the waiver of notice provision in the (Superseding) Pledge Agreement contains an exception for notices of sale.  Paragraph 12.1 of that Agreement states that defendant "without notice except as specified below, [may] sell the Pledged Collateral or any part thereof at a commercially reasonable price or prices and upon such other terms as [defendant] deems reasonable."  (Doc. 253-9 at ¶ 12.1)  Plaintiff asserts that the "except as specified below" language refers to paragraph 17, which requires that "[a]ll notices . . . including any . . . notice of sale . . . shall be in writing" and served in a particular manner.  (*Id.* at ¶ 17)  Therefore, plaintiff contends, the Agreement required defendant to give plaintiff notice of the sale of Infinity shares in writing and deliver the notice in the manner specified by paragraph 17.

The Court has reviewed the cited language in the (Superseding) Pledge Agreement and agrees with Judge James' interpretation of these two provisions.  The language of paragraph 12.1 is both plain and unambiguous.  It states that defendant may sell the collateral "without notice

except as specified below" but the Agreement contains no exceptions immediately following that paragraph or anywhere else in the Agreement.  The requirements contained in paragraph 17 do not create an exception to the waiver of notice in paragraph 12.1.  Instead, the language in paragraph 17 merely sets out the requirements for providing notice under the Agreement if such notice is required.  But there is no provision in the Agreement requiring notice of the sale; rather, plaintiff specifically waived notice in paragraph 12.1.  In sum, then, Judge James did not err when she decided that the undisputed facts show that plaintiff had waived his right to notice of the sale of Infinity stock.  The Court overrules plaintiff's sixth and seventh objections to the Report.

### G. Objection Nos. 8, 9, and 10 – Plaintiff Objects to the Report's Conclusion that the Sale of Infinity Stock was "Commercially Reasonable" Because (1) the Report Improperly Disregarded or Weighed the Summary Judgment Evidence in Reaching this Conclusion; (2) Defendant Failed to Preserve the Value of the Stock by Selling in the Manner That He Did, and, Thus, He Could Have Received More Value From the Sale; and (3) the Report Failed to Consider Defendant's Admissions Proving that the OTCQB is Not a "Recognized Market."

With his eighth, ninth, and tenth objections, plaintiff argues that the Report erred by concluding that defendant sold the Infinity stock in a commercially reasonable manner.  Plaintiff asserts that the Report's conclusion is wrong for three reasons.

First, plaintiff argues that the Report failed to consider 11 factual statements about how defendant sold the Infinity shares in different lots through an online broker dealer.  (Doc. 289 at ¶ 110)  In the summary judgment briefing, defendant responded to these factual statements by stating that they were unconverted, but, in some instances, they were incomplete or immaterial.  (Doc. 268 at ¶¶ 61–71)  For a full description of the manner in which defendant sold the shares, defendant referred to his affidavit.  (Doc. 253-2)  The Court has reviewed the facts submitted by the parties on summary judgment and determines that the Report states the undisputed and

material facts accurately, as supported by the complete summary judgment record, to describe defendant's sale of the Infinity stock.  (*See* Doc. 283 at 7–9)  Indeed, the Report includes several of the facts listed among the 11 factual statements that plaintiff claims "were not mentioned, discussed or considered" in the Report.  (Doc. 289 at ¶ 110)  Other statements that the Report "failed" to include are immaterial, and Judge James specifically stated in her findings of fact that she had omitted immaterial facts.  (Doc. 283 and 2)  The Report's consideration of these 11 factual statements was not erroneous.

Second, plaintiff asserts that defendant failed to use reasonable care in the custody and preservation of the collateral.  Specifically, plaintiff claims that, by selling the stock in the manner that he did, defendant received less value for the stock than he could have generated otherwise.  K.S.A. § 84-9-207(a) imposes a duty of care on a secured party by requiring it to "use reasonable care in the custody and preservation of collateral in the secured party's possession." The "preservation of collateral" requirement in this statute "'includes preservation of value.'"  *In re Krug*, 189 B.R. 948, 960 (Bankr. D. Kan. 1995) (quoting *Reed v. Cent. Nat'l Bank of Alva*, 421 F.2d 113, 117 (10th Cir. 1970)).  Plaintiff argues that defendant failed to preserve the value of the Infinity stock by selling it in less than 40 minutes on the morning of September 16, 2013. Plaintiff contends that had defendant waited even a few hours, when the stock was trading at a higher price, he would have generated thousands of dollars more in his sale of the collateral.

But the Kansas UCC also provides that "[t]he fact that a greater amount could have been obtained by . . . disposition . . . at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the . . . disposition . . . was made in a commercially reasonable manner."  K.S.A. § 84-9-627(a). Several courts outside of Kansas, interpreting this same provision of the UCC, have reached the

same conclusion.  *See, e.g.*, *Layne v. Bank One*, *Ky., N.A.*, 395 F.3d 271, 280 n.9 (6th Cir. 2005)

(recognizing that the shares were highly volatile, and it was not commercially unreasonable for

the secured party to delay the sale because the price could have rebounded); *Federal Deposit Ins.*

*Corp. v. Air Atlantic, Inc.*, 452 N.E.2d 1143, 1147 (Mass. 1983) (although the debtor argued that

the secured party retained the collateral during a time when the market declined "ruinously," "no

exception is made [in § 9-627] for serious and notorious market declines.").

Here, the Report did not err by concluding that defendant's sale of the Infinity stock was

made in a commercially reasonable manner.  While plaintiff has the benefit of hindsight,

defendant had no such luxury.  K.S.A. § 84-9-627(a) specifically provides that a "greater amount

opportunity" does not preclude the Court from finding that the secured party disposed of the

collateral in a commercially reasonable manner.  For all of the reasons cited in the Report, Judge

James did not err by concluding that defendant's sale of the collateral was made in a

commercially reasonable manner.

Third, plaintiff argues that the Report erred by failing to consider defendant's admissions

about the operation of the OTCQB, which, plaintiff claims, prove that the OTCQB is not a

"recognized market' under the Kansas UCC.  The Court already has addressed this argument

above.  *See supra* Part IV.C.  While plaintiff argues that defendant made certain admissions

about the OTCQB's operation, plaintiff's descriptions of these alleged admissions are

incomplete.  Reviewing the summary judgment record as a whole, including the facts describing

the OTCQB's operation by defendant's expert, Mr. Underwood, the Report correctly considered

the undisputed facts describing the OTCQB's operation and properly determined from those

undisputed facts that the shares of Infinity stock were sold at standardized prices and were not

the subject of individual negotiation.  Thus, the Report did not err by concluding that the shares

of Infinity stock were sold on a "recognized market" and that defendant's sale was commercially

reasonable under K.S.A. § 84-9-627(b).

>   **H.   Objection Nos. 11 and 12 – Plaintiff Objects to the Report's Conclusion that Defendant is Entitled to Attorney's Fees Under the (Superseding) Pledge Agreement, But Even if Defendant Is So Entitled, Plaintiff Argues That The Court Must Limit the Recovery of Fees to the "Reasonable Costs of Collection" Under K.S.A. § 58-2312.**

Plaintiff objects to the Report's conclusion that defendant is entitled to recover attorney's

fees under the (Superseding) Pledge Agreement.  Plaintiff advances two objections to the

Report's conclusion.

First, plaintiff argues that the Report erred in concluding that no genuine issues of

material fact exist to preclude defendant's recovery of attorney's fees under the (Superseding)

Pledge Agreement.  The Court agrees with the Report's conclusion.  Paragraph 11 of the Secured

Promissory Note requires plaintiff to pay defendant's costs of collection, including reasonable

attorney's fees and all costs of suit, including "in the event [defendant] is made party to any

litigation because of the existence of the indebtedness evidenced by this Note . . . ."  (Doc. 253-6

at ¶ 11)  In addition, Paragraph 14 of the (Superseding) Pledge Agreement requires plaintiff to

pay "all reasonable out of pocket expenses" incurred by defendant "in connection with any

matters contemplated by or arising out of this Pledge Agreement" including costs and expenses

incurred in defending plaintiff's claims against defendant.  (Doc. 253-9 at ¶ 14)  Judge James

correctly concluded that the plain language of the parties' contracts require plaintiff to pay

defendant's reasonable attorney's fees, and she properly recommended that the fee application

process established by Fed. R. Civ. P. 54(d)(2) and D. Kan. Rule 54.2 shall govern the Court's

determination of that amount.

Second, plaintiff argues that the Court should amend the Report to make clear that defendant's recovery of attorney's fees is confined to "reasonable costs of collection," as defined by K.S.A § 58-2312.  The Court disagrees.  This statute does not limit defendant's recovery just to the "reasonable costs of collection."  Instead, K.S.A. § 58-2312 provides that "any note, mortgage or other credit agreement may provide for the payment of reasonable costs of collection, including, but not limited to, court costs, *attorney fees* and collection agency fees . . . ." *Id.* (emphasis added).[5]  The Kansas Court of Appeals has held that this statute does not limit the recovery of attorney's fees under a note to collection actions.  *Santa Rosa KM Assocs., Ltd. v. Principal Life Ins. Co.*, 206 P.3d 40, 53 (Kan. Ct. App. 2009).  To the contrary, *Santa Rosa* held that by enacting the current language in the statute, the Kansas Legislature "lift[ed] the blanket prohibition [on recovery of attorney's fees] and restor[ed] freedom of contract to parties to negotiate on the issue of attorney fees, particularly in a commercial context . . . ." *Id.*

Even after *Santa Rosa*, plaintiff argues, Kansas law does not allow the recovery of attorney's fees when the secured party's "defense of 'counterclaims [does] not entail proof or denial of essentially the same facts' as its own attempts to collect an obligation and 'are not intertwined to the point of being inseparable.'"  (Doc. 289 at ¶ 133 (quoting *Brennan v. Kunzle*, 154 P.3d 1094, 1113 (Kan. Ct. App. 2007), *rejected on other grounds by Osterhaus v. Toth*, 249 P.3d 888, 903 (Kan. 2011))  But the facts of *Brennan* differ significantly from those presented here.  In *Brennan*, the plaintiffs sought fees under a provision in a promissory note that limited recovery to attorney's fees incurred in enforcing the note.  *Brennan*, 154 P.3d at 1112.  In contrast, here, the attorney's fees provisions in the Secured Promissory Note and (Superseding) Pledge Agreement contain broader language and that language provides for the recovery of

---

[5]      K.S.A. § 58-2312 contains two exceptions of costs that are not included in "the costs of collection," but neither one applies here.

33

attorney's fees in this litigation.  Thus, the Court overrules plaintiff's eleventh and twelfth objections to the Report.

I.   **Objection No. 13 – Plaintiff Objects to the Report's Conclusion that Defendant Established Genuine Issues of Material Fact to Preclude Summary Judgment on Defendant's Fraud in the Inducement Claim.**

In his final objection to the Report, plaintiff argues that the Report erred by concluding that defendant presented evidence establishing genuine issues of material fact sufficient to avoid summary judgment on defendant's fraud in the inducement counterclaim.  Plaintiff's objection ignores that the Report provided two bases for its recommendation that the Court deny plaintiff's summary judgment motion on defendant's fraud in the inducement counterclaim.

First, the Report found that plaintiff's summary judgment motion was untimely because plaintiff filed it on July 17, 2014, more than six months after the January 10, 2014 deadline for filing such a motion.  Plaintiff offered no excuse for his failure to file on time, and the Report properly recommended that the Court deny the motion as untimely filed.

Second, even if the Court excused the motion's untimeliness, the Report determined that genuine issues of material fact exist, and they prevent the Court from granting summary judgment against this counterclaim.  The Report properly recited the legal standard for proving a fraud in the inducement counterclaim—defendant "must prove by clear and convincing evidence that (1) [plaintiff] made an untrue statement of existing material fact, (2) [plaintiff]  knew that the statement was untrue or recklessly made it with disregard for the truth, (3) [plaintiff] made the statement with the intent to induce [defendant] to act on the statement, (4) [defendant] justifiably relied on the statement to [his] detriment and (5) [defendant] sustained injury as a result of [his] reliance."  *BHC Dev., L.C. v. Bally Gaming, Inc.*, 985 F. Supp. 2d 1276, 1288–89

(D. Kan. 2013) (citing *Stechschulte v. Jennings*, 298 P.3d 1083, 1096 (Kan. 2013); PIK Civ. 4th 127.40).

The Report also concluded correctly that genuine disputes of material fact exist about whether plaintiff made untrue statements in his conversations with defendant leading up to defendant's agreement to make the loan to plaintiff. The Report also correctly concluded that disputes about material facts exist over plaintiff's alleged concealment or failure to disclose certain financial matters to defendant before he agreed to make the loan to plaintiff.

Plaintiff argues that his statement of uncontroverted facts establishes his intentions to repay the loan at the time defendant agreed to make the loan to him, and, therefore, those facts foreclose defendant's fraudulent inducement claim. To support this argument, plaintiff cites some of the 30 factual statements that the Court already has addressed. *See supra* Part IV.A. As explained above, the Report properly excluded many of these factual statements from its statements of fact because they either are immaterial or not supported by the record. Viewing the undisputed, properly supported facts in the summary judgment record, the Court agrees with Judge James. Genuine issues of material fact exist, and they prevent the Court from deciding defendant's fraud in the inducement claim on summary judgment. Thus, the Report did not err by recommending that the Court deny plaintiff's motion for summary judgment on defendant's fraud in the inducement claim. The Court overrules plaintiff's thirteenth objection to the Report.

## V.    Conclusion

After conducting a de novo review of the record, the Court accepts the Report and Recommendation and overrules plaintiff's objections to it. The Court also refers the parties to the Report and Recommendation for additional legal authority for the conclusions reached in this Memorandum and Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's objections to the Report and Recommendation of Judge James (Doc. 289) are overruled and the Report and Recommendation (Doc. 283) is adopted in its entirety.

**IT IS FUTHER ORDERED THAT** defendant's Motion for Summary Judgment on plaintiff's claim for wrongful disposition of collateral, defendant's right to a deficiency damages award, and defendant's entitlement to attorney's fees (Doc. 252) is granted.

**IT IS FUTHER ORDERED THAT** plaintiff's Motion for Summary Judgment on plaintiff's claim for wrongful disposition of collateral under K.S.A. §§ 84-9-624 and 9-626 and defendant's counterclaim for fraud in the inducement (Doc. 255) is denied.

**IT IS FUTHER ORDERED THAT** plaintiff's Motion in Limine excluding all facts, evidence, testimony, opinions, and inferences offered by defendant's proffered expert attorney Brian C. Underwood (Doc. 261) is granted in part and denied in part, as set out in this Order.

**IT IS SO ORDERED.**

**Dated this 12th day of March, 2015, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
