## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STANTON E. ROSS,           )
                                  )
               Plaintiff,    )    Case No. 13cv2101 DDC/TJJ
                                  )
v.                              )
                                  )
ADAM ROTHSTEIN,       )
                                  )
              Defendant.   )

## MEMORANDUM IN SUPPORT OF
## DEFENDANT ADAM ROTHSTEIN'S MOTION
## TO RECOVER ATTORNEY'S FEES AND EXPENSES

Respectfully submitted by:

BERKOWITZ OLIVER WILLIAMS
SHAW & EISENBRANDT LLP

Neil L. Johnson          KS Bar No. 13934
Nicholas L. DiVita       Mo. Bar No. 37514
KS Federal Bar No. 70079
Sharon A. Stallbaumer   KS Bar No. 16760
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone: 816-561-7007
Facsimile: 816-561-1888
E-Mail:     njohnson@berkowitzoliver.com
             sstallbaumer@berkowitzoliver.com

**Attorneys for Defendant Adam Rothstein**

# <u>TABLE OF CONTENTS</u>

I.   NATURE OF THE MATTER BEFORE THE COURT ..................................................... 1

II.  FACTS ............................................................................................................................ 4

    A.   Ross' Fraudulent Inducement of the $210,000 Loan From Rothstein.................... 4

    B.   Loan Documents Negotiated By The Parties With The Assistance of
        Counsel On Both Sides, And Signed By CEO Ross, a "Sophisticated
        Businessperson".................................................................................................... 4

    C.   Operative Contractual Attorney's Fees Provisions Which the Court Has
        Held Enforceable, Entitling Rothstein to Recover His Legal Fees and
        Costs Incurred Both In Loan Enforcement and Collection, And In Defense ......... 5

    D.   Ross' Defaults and Pre-Litigation Conduct Necessitating The Services of
        Attorney's Seth Markowitz and Craig Sanders on Behalf of Rothstein ................ 7

    E.   Recap of the Litigation and Ross' Bad Faith, Dilatory and Vexatious
        Litigation Conduct ................................................................................................ 8

        1.   Ross (Not Rothstein) Commenced This Litigation By Filing A
            Meritless Petition in the Johnson County District Court ......................... 10

        2.   Preliminary Injunction Proceedings Concerning Interest Shares,
            Consideration Shares, and Pledged Shares of Infinity Common
            Stock ........................................................................................................ 10

        3.   No Good Faith Basis For Ross' Claims Against Rothstein ...................... 12

        4.   Ross' Dilatory Claim For Wrongful Disposition of Collateral................. 14

        5.   Ross' Abusive, Disingenuous, and Dishonest Pleading, Discovery,
            and Dispositive Motion Practices ............................................................ 17

III. QUESTION PRESENTED.............................................................................................. 19

IV.  ARGUMENT................................................................................................................... 20

    A.   Rothstein Is Entitled to Recover His Attorney's and Expenses Incurred
        With Respect to Loan Enforcement, Collection and Litigation, And In
        Defense of Claims Against Him, As the Court Has Previously Determined........ 20

    B.   Procedures Under Fed. R. Civ. P. 54 and D. Kan. Rule 54.2 Concerning
        Motions to Recover Attorney's Fees and Expenses ............................................. 20

C.     Standards for Evaluation of Motions for Contractual Attorney's Fees and
       Expenses ............................................................................................................. 21

       1.     Contractual Attorney's Fees Claims Do Not Require the Close
              Scrutiny Of A "Lodestar" Analysis Employed For Statutory Fee
              Claims, As Contractual Fees Are Routinely Awarded and the
              Contract Enforced According To Its Terms.............................................. 21

       2.     Even If Rothstein Had No Contractual (or Statutory) Basis For
              Recovery of Attorney's Fees, Rothstein Would Be Entitled to
              Recover His Fees Due to Ross' Bad Faith In Conducting the
              Litigation................................................................................................ 22

D.     Rothstein's Claim For Fees and Expenses Passes Any Reasonableness
       Test, Including The Lodestar Analysis Employed In Statutory Fee Cases........... 23

       1.     Reasonableness of Hours ......................................................................... 25

       2.     Daily Block Billing Is Permissible ........................................................... 26

       3.     In Determining Reasonableness of Rates, a District Judge May
              Consider His or Her Own Knowledge of Prevailing Market Rates
              In the Relevant Community, And Other Indicia....................................... 26

       4.     Reasonable Redactions of Privileged Information From Time
              Descriptions In Fee Invoices Is Prudent and Permissible........................ 27

       5.     While Rothstein May Recover All Fees Incurred, Due To The
              Interrelation and Intertwining of All Claims and Defenses In The
              Case, He Has Segregated Out Fees For Time Clearly Devoted To
              His Fraud In The Inducement Counterclaim ............................................ 28

       6.     Rothstein May Recover Fees Incurred For Attorney Work
              Performed In Preparing and Presenting His Motion For Fees,
              Memorandum, and Supporting Materials ................................................. 29

V.     CONCLUSION............................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*American Multi-Cinema, Inc. v. Southroads, LLC*, 119 F.Supp.2d 1190 (D.Kan. 2000) .................................................................................................................... 21

*Barstow v. Ross*, Case No. 13LA00963 in the Johnson County District Court (Limited Actions) ................................................................................................. 9

*Blum v. Stenson*, 465 U.S. 886 (1984) ...................................................................... 24

*Brennan v. Kunzle*, 154 P.3d 1094 (Kan. App. 2007) ............................................... 6

*Brown v. Phillips Petroleum Co.,* 838 F.2d 451 (10th Cir.1988) ............................ 24

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) .................................... 24

*Cadena v. Pacesetter Corp.*, 224 F.3d 1203 (10th Cir.2000) ................................... 26

*Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243 (10th Cir.1998) .................... 1, 24, 25, 27, 30

*Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991) ........................................................ 23

*Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088 (10th Cir.2005) ........................... 24

*Dayan v. McDonald's Corp.,* No. 70CH 2258 (Ill.Cir.Ct. March 1, 1983) ................ 2

*DeSpiegelaere v. Killion*, 24 Kan.App.2d 542, 947 P.2d 1039 (1997) ...................... 28

*Flohrs v. Eli Lilly and Co.*, 2013 WL 3947152 (D. Kan. 2013) .......................... 24, 25

*Fusion, Inc. v. Nebraska Aluminum Castings, Inc.,* 962 F.Supp. 1392 (D. Kan. 1997) ................................................................................................................ 21, 22

*Glass v. Pfeffer,* 849 F.2d 1261 n. 3 (10th Cir.1988) ............................................... 30

*Gottlieb v. Barry,* 43 F.3d 474 (10th Cir.1994) ....................................................... 24

*Harford Fire Insurance Co. v. P&H Cattle Co., Inc.*, 2006 WL 3612661 * 4 (D. Kan., Dec. 11, 2006) ........................................................................................ 27

*Heavy Petroleum Partners, LLC v. Atkins*, 457 Fed. Appx. 735, 2012 WL 120058 (10th Cir. 2012) ............................................................................................... 20

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ............................................................. 24

*Hernandez v. George,* 793 F.2d 264 (10th Cir.1986) ............................................... 30

*In re Neurontin Marketing, Sales Practices and Products*, 433 F. Supp. 2d 172 (D. Mass. 2006) .................................................................................................. 6

*Johnson v. Georgia Highway Express, Inc.,* 48 F.2d 714 (5th Cir.1974) ................................... 24

*Leo v. Garmin International*, 2012 WL 3245456 * 2 (D. Kan., June 18, 2012) ............ 24, 25, 27

*Lippoldt v. Cole*, 468 F.3d 1204 (10th Cir.2006) ........................................................ 24

*Malloy v. Monahan,* 73 F.3d 1012 (10th Cir.1996) ...................................................... 26

*Mares v. Credit Bureau of Raton*, 801 F.2d 1197 (10th Cir.1986) ............................................ 30

*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482 (10th Cir.1994) ..................................................................................................... 27

*Odessa Ford, LLC v. T.E.N. Investments, Inc.*, 2009 WL 1617465 (D. Kan., June 9, 2009) ....................................................................................................... 22

*Penncro Associates, Inc. v. Sprint Spectrum LP*, 2006 WL 1320252 (D.Kan. 2006) ......................................................................................................... 21

*Pennsylvania v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) .................................................................... 27

*Poindexter v. Morse Chevrolet, Inc.*, 282 F.Supp.2d 1232 (D.Kan.2003) ................................ 23

*Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983) ................................................................ 22, 27

*Robinson v. City of Edmond*, 160 F.3d 1275 (10th Cir.1998) ..................................... 24

*Rosenbaum v. MacAllister,* 64 F.3d 1439 (10th Cir.1995) ........................................ 25

*Schwarz v. Folloder*, 767 F.2d 125 (5th Cir. 1985) ..................................................... 2

*Sheldon v. Vermonty*, 237 F.Supp.2d 1270 (D. Kan. 2003) ....................................... 28

*Shimman v. Int'l Union of Operating Engineers, Loc. 18*, 744 F.2d 1226 (6th Cir.1984) ........................................................................................................ 23

*Stewart Title Guaranty Company v. Sterling*, 822 S.W.2d 1 (Tex.1991) .................................. 28

*Terra Venture, Inc. v. JDN Real Estate-Overland Park, LP*, 242 F.R.D. 600 (D. Kan. 2007) ....................................................................................................... 28

*Towerridge Inc. v. TAO, Inc.,* 111 F.3d 758 ................................................................ 23

*U.S. v. Cadieux*, 324 F. Supp. 2d 168 (D. Me. 2004) ............................................... 6

*United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors,* 834
 F.2d 1533 (10th Cir.1987) ........................................................................................... 21, 22

*University of Kansas v. Sinks*, 2009 WL 3191707 * 5 (D. Kan. Sept. 28, 2009) ....................... 26

## **Statutes**

K.S.A. § 58-2312 ................................................................................................................... 6

## **Rules**

Fed. R. Civ. P. 54(d)(2)(A) ................................................................................................... 20

Fed.R.Civ.P.54(d)(2) ............................................................................................................ 7

## I.        NATURE OF THE MATTER BEFORE THE COURT

After achieving complete success on the merits in this action heavily litigated over 2 ½ years, involving multiple claims, counterclaims, and defenses, defendant Adam Rothstein seeks by his motion to recover $622,139.62[1] in total attorney's fees and legal expenses from plaintiff Stan Ross, which motion is based principally upon the following:

1.        The written loan agreements between the parties contain comprehensive attorney's fees and expense provisions which the Court, in multiple previous dispositive rulings, has determined are legally valid, enforceable, and entitle Rothstein to recover from Ross not only the fees and expenses incurred in loan enforcement and collection efforts, but also in defending Rothstein from claims asserted against him that arise from the loan.[2]

2.        Rothstein has complied with federal and local rule requirements with respect to seeking fees and expenses by motion under Fed. R. Civ. P. 54.  Attached hereto as Exhibit W is the Statement of Consultation required by D. Kan. Rule 54.2. Also attached are Rothstein's and his counsel's supporting and authenticating affidavits, invoices and expense records, as well as  a summary of total hours per Berkowitz Oliver attorney  and a summary of total litigation expenses advanced by Berkowitz Oliver.[3]

---

[1]  This figure is the total amount of fees and expenses sought in Rothstein's contemporaneously filed <u>Amended</u> Motion to Recover Attorney's Fees and Expenses, which amount is adjusted from the figure stated in Rothstein's original motion [ECF Doc 308], primarily to include fees incurred in preparation of this Memorandum and supporting materials, which this Court has previously held to be recoverable. *Case v. Unified School District No. 233*, 157 F.3d 1243, 1254 (D. Kan. 1998).

[2]  Memorandum and Order, pp. 20-21 [ECF Doc 55-1]; Report and Recommendation [ECF Doc 283]; Memorandum and Order, pp. 32 - 36 [ECF Doc 297]; Memorandum and Order [304]; see, also, [Final] Judgment In A Civil Case [ECF Doc 310].

[3]  Affidavit of Adam Rothstein Supporting Motion to Recover Attorney's Fees, Exhibit X; Affidavit of Neil L. Johnson Supporting Adam Rothstein's Motion to Recover Attorney's Fees, Exhibit Y; Statement of Consultation Pursuant to D. Kan. Rule 54.2, Exhibit W; Invoices, Receipts, Summaries, Exhibits 39 – 77.

3.      While the fees and expenses Rothstein incurred would have otherwise been kept to a level commensurate with typical efforts to collect a $210,000 secured loan, Ross, a CEO of two public companies, represented by his companies' large Kansas City law firm, defaulted multiple times, then with no good faith basis, trumped up multiple meritless affirmative claims against Rothstein, sued Rothstein first,[4] and employed over-zealous, dilatory, unfounded, unscrupulous, time-consuming litigation tactics, asserted and filed countless false allegations and contentions, argued misstatements of law, and engaged in serial discovery shenanigans, all for purposes of delay and oppression, multiplying the proceedings unnecessarily and vexatiously.

Ross is hardly in a position to complain about or contest the substantial legal expense he has caused Rothstein to incur.  As the 5th Circuit once stated, while reversing a District Court's denial of a fee request for $400,000 incurred in defending against frivolous claims:

> It is unbecoming for the plaintiffs to hail the defendant into court by means of false allegations and then to complain when the defendant hires skillful, experienced and expensive advocates to defend against those allegations. Having wrongfully kicked the snow loose at the top, [the plaintiff] must bear the consequences of the avalanche at the bottom.

*Schwarz v. Folloder*, 767 F.2d 125, 134 (5th Cir. 1985)(citing *Dayan v. McDonald's Corp.,* No. 70CH 2258 (Ill.Cir.Ct. March 1, 1983)).

A day-by-day recounting of the past 2 ½ years of litigation, in which Rothstein was forced to incur the $622,139.62 in recoverable fees and expenses mostly in defending himself, is not practical here, and presumably not desired by the Court.  Therefore, Rothstein has endeavored to present that history in meaningful summary fashion in this Memorandum, and

---

[4]  Ross was undoubtedly motivated to gin up his Petition against Rothstein and file it in the Johnson County, Kansas, District Court in order to take advantage of his relationship with his companies' Kansas City-based law firm, attempt to string things out in a state court with lesser resources, gain hometown advantage, and prevent Rothstein, a Connecticut resident, from possibly using a court in Rothstein's jurisdiction to attempt loan enforcement and collection.

briefly describe a few examples of the means by which Ross consciously chose to commence and conduct the litigation in bad faith.

For the Court's quick reference and overview, attached hereto as Exhibit 38 is a Chronological Summary Table describing each recoverable fee and/or expense invoice (and/or receipt) issued to Rothstein, identified by exhibit number, date, and service provider, next to a summary description of the primary services rendered, case activity and/or relevant events occurring during the invoice period for which services were rendered and/or expenses incurred, together with D. Kan. ECF Docket reference numbers relating to the filings in this case occurring during each of the time periods reflected in the Table, most of which are monthly.

Exhibit X attached hereto is the Affidavit of Adam Rothstein Supporting Motion to Recover Attorney's Fees, briefly describing the pre-litigation engagement and involvement of New York attorneys Seth Markowitz and Craig Sanders after Ross defaulted and evaded Rothstein, and authenticating the Markowitz and Sander invoices, as well as receipts reflecting travel expenses Mr. Rothstein incurred in attending the April 2013 preliminary injunction hearing and October 2013 mediation in this matter.

Exhibit Y attached hereto is the Affidavit of Neil L. Johnson Supporting Adam Rothstein's Motion to Recover Attorney's Fees describing, among other pertinent facts, his firm's engagement and handling of Mr. Rothstein's representation in this matter, the attorneys who worked on the case, together with their experience and hourly rates, the billing practices employed by the firm, routine editing and reduction of invoices issued to Mr. Rothstein, reduction of invoice totals for time spent on Rothstein's fraud in the inducement claim, and authenticating invoices and summaries of attorney billable time and expenses attached hereto.

3

## II.      FACTS

### A.      Ross' Fraudulent Inducement of the $210,000 Loan From Rothstein

In her Report and Recommendation concerning the parties' last round of dispositive motions,[5] accepted and adopted in its entirety by the District Court,[6] Judge James found certain facts to be uncontroverted which resulted in the Court ruling that Rothstein had a submissible claim for fraud in the inducement and punitive damages against Ross, i.e., Ross started this controversy by making material false representations and omissions when he induced Rothstein into loaning him the subject secured loan of $210,000. [7]

### B.      Loan Documents Negotiated By The Parties With The Assistance of Counsel On Both Sides, And Signed By CEO Ross, a "Sophisticated Businessperson"

Rothstein, a Connecticut resident, engaged his business attorney Seth Markowitz in New York to prepare and help negotiate the terms of the Loan Documents that were negotiated and pulled together in a short period of time.[8]  For his part, borrower and CEO Ross, who, early and often, farcically claimed he was victimized by Rothstein, has been determined by the Court to be a "sophisticated businessperson," and was also represented by counsel in connection with the loan agreements.[9]  The initial "Loan Documents" included the March 30, 2012 Secured

---

[5]  Report and Recommendation [ECF Doc 283].

[6]  Memorandum and Order [ECF Doc 297].

[7]  Report and Recommendation, pp. 2 – 4 [ECF Doc 283]; Memorandum and Order, pp. 6 – 10 [ECF Doc 297].

[8]  See, generally, Affidavit of Adam Rothstein in Support of Motion for Preliminary Injunction [ECF Doc 26-1]; Second Supplemental Affidavit of Adam Rothstein in Support of Motion for Judgment, ¶ 8 [ECF Doc 51-2]; Affidavit of Adam Rothstein Supporting Motion to Recover Attorney's Fees, ¶ 1, Exhibit X attached hereto.

[9]  See Memorandum and Order, p. 19 [ECF Doc 55-1]; Second Supplemental Affidavit of Adam Rothstein…, ¶ 8 [ECF Doc 51-2].

Promissory Note and Pledge Agreement,[10] and, after Ross defaulted in just 60 days on May 31, 2012, the parties entered into a written Forbearance Agreement and (Superseding) Pledge Agreement in August 2012, with both parties again represented by counsel.[11]

### C. Operative Contractual Attorney's Fees Provisions Which the Court Has Held Enforceable, Entitling Rothstein to Recover His Legal Fees and Costs Incurred Both In Loan Enforcement and Collection, And In Defense

In paragraph 11 of the Secured Promissory Note, Ross agreed to pay Rothstein's costs of collection, and foreclosure of the security interest, including reasonable attorney's fees, and all costs of suit upon Ross' default, including in the event Rothstein is made party to any litigation.[12] In paragraph 14 of the (Superseding) Pledge Agreement, Ross also agreed to pay all reasonable fees and expenses of Rothstein's attorneys incurred in connection with any matters arising out of the Pledge Agreement, the parties' Forbearance Agreement or the Note, including fees and expenses incurred in defending and protecting the rights of Rothstein.[13]

As a threshold matter, the Court long ago considered, analyzed and rejected CEO Ross' unpleaded arguments that the loan agreements were generally inequitable, unconscionable and/or unenforceable.[14]  In granting early summary judgment to Rothstein on his contract-based

---

[10]  Affidavit of Adam Rothstein in Support of Motion for Preliminary Injunction, ¶¶ 5 and 6 [ECF Doc 26-1]; Rothstein Exhibits 1 and 2 [ECF Doc 26-4, 26-5].

[11]  Memorandum and Order, pp. 18 – 19 [ECF Doc 55-1]; Affidavit of Adam Rothstein in Support of Motion for Preliminary Injunction, ¶¶ 10 and 11 [ECF Doc 26-1]; Rothstein Exhibits 4 and 5 [ECF Doc 26-7, 26-8]; Second Supplemental Affidavit of Adam Rothstein…, ¶ 13 [ECF Doc 51-2].

[12]  Secured Promissory Note, ¶ 11 [ECF Doc 26-4] (emphasis added).

[13]  (Superseding) Pledge Agreement, ¶ 14 [ECF Doc 26-8] (emphasis added).

[14]  Memorandum and Order, pp. 17 – 20 [ECF Doc 55-1].

Counterclaim Counts I-III, and awarding him an interlocutory money judgment, Judge

Lungstrum specifically found the loan agreements valid, enforceable, and <u>not</u> unconscionable.[15]

In her Report and Recommendation addressing the parties' final round of dispositive

motions, Judge James, in late December 2014, ruled that Rothstein was in fact entitled under the

loan agreements to recover his attorney's fees and expenses from Ross, noting in part that Ross

<u>had not even disputed</u> in the summary judgment briefing that he is obligated under the foregoing

contractual provisions to pay Rothstein's fees and expenses.[16]  The District Judge accepted and

adopted Judge James' Report and Recommendation in its entirety, rejected Ross' late-asserted

arguments under K.S.A. § 58-2312 and *Brennan v. Kunzle*, 154 P.3d 1094 (Kan. App. 2007) that

Rothstein's recovery of attorney's fees should be limited to "reasonable costs of collection" only,

and made it clear that Rothstein is entitled to recover all fees and expenses he has incurred,

including those incurred in defending against Ross' claims.[17]

When Rothstein recently moved to voluntarily dismiss his remaining counterclaims and

for entry of a final judgment, including a request that the final judgment reflect, among other

things, the Court's rulings as to Rothstein's entitlement to recover attorney's fees, Ross, again

disregarding the Court's previous dispositive rulings as to fees, and again disregarding basic

---

[15]  Id. at 19-20 ("In short, there is nothing about any of the agreements—either the substance of those agreements or the manner in which the agreements were executed—that shocks the conscience of the court.")

[16]  Report and Recommendation, pp. 38 – 39 [ECF Doc 283].

[17]  Memorandum and Order, pp. 32 – 34 [ECF Doc 297]. Ross had improperly injected new arguments (albeit incorrect arguments) against Rothstein's entitlement to attorney's fees <u>for the first time</u> in Ross' Objections to Judge James' Report and Recommendation. (Plaintiff's Objections to Report and Recommendation, pp. 53 – 57 [ECF Doc 289].) But the law is clear, as Rothstein pointed out then, that arguments not raised before the United States Magistrate Judge cannot be raised for the first time as objections to the Report and Recommendation. See Defendant Adam Rothstein's Response to Plaintiff Ross' Objections to Report and Recommendation of U.S. Magistrate Judge, pp. 19 – 20, 27 – 28, [ECF Doc 292]), citing *U.S. v. Cadieux*, 324 F. Supp. 2d 168 (D. Me. 2004); *In re Neurontin Marketing, Sales Practices and Products*, 433 F. Supp. 2d 172 (D. Mass. 2006).

court rules and procedure, attempted another new, late, specious argument, this time suggesting that Rothstein was out of time to move for fees under Fed.R.Civ.P. 54.[18]  The Court ruled that not only had Ross waived this argument by not asserting it in the summary judgment briefing, but the argument was fundamentally wrong.[19]

The Court's final Judgment for Rothstein, entered July 15, 2015, stated, among other things, that, "[c]onsistent with the Court's Memorandum and Order of June 25, 2015 (Doc. 304), defendant Rothstein is entitled to recover his attorney's fees incurred in this matter, under the procedures set forth in Fed.R.Civ.P.54(d)(2) and D. Kan. Rule 54.2."[20]

### D.    Ross' Defaults and Pre-Litigation Conduct Necessitating The Services of Attorney's Seth Markowitz and Craig Sanders on Behalf of Rothstein

After May 31, 2012, when Ross had immediately defaulted on the 60-day, $210,000 loan, Rothstein had New York attorney Seth Markowitz represent and assist him with attempting to communicate with Ross concerning his defaults (i.e., no loan repayment and no transfer of the 15,000 IFNY Interest Shares), and to inquire and demand that the defaults be cured, and the loan be repaid.  Markowitz also represented Rothstein as to the Forbearance Agreement and (Superseding) Pledge Agreement, negotiated and entered into with Ross in August 2012, and when Ross thereafter continued his defaults and evasion.  Ross again defaulted on repayment as

---

[18]  Ross argued that Judge Lungstrum's September 2013 summary judgment ruling and interlocutory money judgment for Rothstein was somehow an appealable "judgment" triggering the 14-day deadline to move to recover attorney's fees under Rule 54, misrepresenting both law and fact, as was typical of Ross throughout the case.  See Motion of Defendant/Counterclaimant Adam Rothstein for Voluntary Dismissal of His Remaining Counterclaims IV-VII, Determinations As To His Deficiency Award, Interest, and Costs, And For Entry of Final Judgment [ECF Doc 298]; Plaintiff's Memorandum In Opposition to Defendant/Counterclaimant Rothstein's Motion for Voluntary Dismissal…And For Entry of Final Judgment, pp. 6 – 10 [ECF Doc 302]; Reply Memorandum In Support of Motion of…Adam Rothstein For Voluntary Dismissal…And For Entry of Final Judgment, pp. 22 – 29 [ECF Doc 303].

[19]  Memorandum and Order, pp. 10 – 13 [ECF Doc 304].

[20]  Judgment In A Civil Case [ECF Doc 310].

of the January 1, 2013 forbearance date.  Seth Markowitz sent Ross a notice of default, and represented Rothstein in further communications with Ross concerning an additional possible forbearance.  When it appeared litigation may become necessary, Rothstein engaged New York litigation attorney Craig Sanders, who, among other things, prepared and sent two demand letters, to Ross and Infinity, the latter letter relating primarily to the IFNY shares Ross was obligated to transfer to Rothstein as Interest, Consideration and as pledged as security.[21]

When Ross sued Rothstein and filed his Petition in the Johnson County District Court, Rothstein, with the assistance of Seth Markowitz, engaged the Berkowitz Oliver firm in Kansas City for the litigation.[22]

### E. Recap of the Litigation and Ross' Bad Faith, Dilatory and Vexatious Litigation Conduct

Notwithstanding the above discussed provisions in the Loan Documents that would require Ross to pay Rothstein's legal fees and expenses incurred both in loan collection and in Rothstein defending against claims made against him, Ross made a conscious choice to sue Rothstein, trumping up multiple claims, all of which were rejected by the Court by dispositive motion rulings in favor of Rothstein, several early in the case, though not without Ross first purposefully, and vexatiously causing Rothstein to incur substantial legal expense in the process.

What Rothstein did not know when he loaned Ross the $210,000, but later learned at the start of the litigation, is that CEO Ross has an apparent extensive history of defaulting on his taxes and debts, and using his companies' law firm and the courts to manage his liabilities, often counterclaiming aggressively against his lenders who file collection actions against him. This

---

[21]  Affidavit of Adam Rothstein in Support of Motion for Preliminary Injunction, ¶¶ 9 - 19 [ECF Doc 26-1]; Affidavit of Adam Rothstein Supporting Motion to Recover Attorney's Fees, ¶¶ 1 - 4, Exhibit X attached hereto.

[22]  Affidavit of Adam Rothstein Supporting Motion to Recover Attorney's Fees, ¶¶ 1, 5, Exhibit X attached hereto.

information about Ross was put before the Court early in this case as a fact pertinent to Rothstein's preliminary injunction motion relating to the IFNY shares.[23]

Ross' intent in this instance to, in bad faith, sue Rothstein first and then abuse the court system to intimidate, wear down and wear out Rothstein, is not only evident from the record as a whole, but it was confirmed under oath by third-party witness Riley McCormack.  Mr. McCormack, an acquaintance of both parties, had attempted to informally mediate a pre-litigation resolution between Ross and Rothstein, and McCormack was a supposed recipient of defamatory statements allegedly made to him by Rothstein.  Ross' trumped up, hearsay-based defamation claim was ultimately dismissed on summary judgment.[24]  When being deposed, McCormack testified that Ross had stated a "threat" to him in late January 2013 that if Rothstein were to "pursue this or bring Infinity into this, he had <u>buddies</u> who would quote, unquote, 'take a pound of flesh from Adam'…He had <u>friends</u> who would tie Adam up in court" and McCormack complained of the deposition questioning tactics by Ross' counsel.[25]

---

[23]  Memorandum in Support of Motion For Preliminary Injunction of Counterclaimant Adam Rothstein, pp 12 – 13 [ECF Doc 6]. In one such case, Ross defaulted on payment of his daughter's private school tuition owed to the Barstow School, and when sued, a default judgment was entered against him, but the case was then dismissed shortly after Ross asserted in a counterclaim, like he did against Rothstein, that the Barstow School had committed fraud and violated the Kansas Consumer Protection Act. See Ross' Answer and Counterclaim in *Barstow v. Ross*, Case No. 13LA00963 in the Johnson County District Court (Limited Actions)[ECF Doc 51-9].

[24]  See Memorandum and Order entered April 10, 2014, pp. 10 - 15 [ECF Doc 201]; Memorandum and Order entered Sept. 9, 2013 [ECF Doc 55-1].

[25]  McCormack Depo., Ex. H, 118:17-119:22; 128:16-130:5 [ECF Doc 133-3](emphasis added).  This testimony of McCormack was given within a typical, lengthy, but failed attempt by Ross' counsel to mislead and badger witness McCormack into attributing McCormack's own words in e-mails as being the words of Rothstein, to which counsel for Rothstein regularly had to object, and to which witness McCormack himself often protested, stating, for example, at 86:14-25: "I'm just annoyed at these questions, they are repetitive, and I'm a disinterested witness, and you are treating me as a hostile witness. I don't understand.…I don't mind giving testimony. I just really resent the repetitive nature of questions to put words in my mouth." See McCormack Depo., Ex. H, 43:22-45:10; 52:4-53:9; 61:6-87:25; 135:2-9 [ECF Doc 133-3]; McCormack Depo. Exhibit 514, which is Rothstein Ex. 29 [ECF Doc 133-9].

**1.      Ross (Not Rothstein) Commenced This Litigation By Filing A Meritless Petition in the Johnson County District Court**

After Ross defaulted  multiple times on his loan obligations to Rothstein, it was Ross (not Rothstein) who commenced this action, on January 30, 2013, by filing a Petition in the Johnson County District Court, Case No. 13CV00726, ginning up claims against Rothstein for Fraudulent Misrepresentation, Violation of the Kansas Consumer Protection Act, and Defamation (Petition Counts I - III).[26]  Rothstein removed the case to this Court on February 25, 2013, and filed his Answer and Counterclaims on March 1, 2013.[27]  Rothstein pleaded counterclaims for breach of the Secured Promissory Note, Breach of Forbearance Agreement, and Breach of Forbearance Pledge Agreement and Foreclosure of Security Interest (Counts I - III), as well as Breach of Unconditional Guarantee, Breach of Covenants of Good Faith and Fair Dealing, Unjust Enrichment, and Fraud [In The Inducement], Including Punitive Damages (Counts IV - VII).[28]

**2.      Preliminary Injunction Proceedings Concerning Interest Shares, Consideration Shares, and Pledged Shares of Infinity Common Stock**

Since Ross had not performed his clear contractual obligations to deliver to Rothstein 15,000 Interest Shares (Infinity common stock agreed as interest for the 60-day loan) and 50,000 Consideration Shares (Infinity common stock agreed as consideration for the parties' Forbearance Agreement), Rothstein had no choice but to pursue preliminary injunctive relief, and, after briefing and a hearing,[29] was successful in obtaining a Court-directed Agreed Order requiring that Ross turn over to Rothstein 65,000 shares of Infinity common stock that he held

---

[26] Petition for Injunction and Damages [ECF Doc 6-8].

[27] Verified Answer, Affirmative Defenses, and Counterclaims [ECF Doc 4].

[28] *Id.*

[29] See Motion for Preliminary Injunction of Counterclaimant Adam Rothstein [ECF Doc 5] and supporting Memorandum and Exhibits [ECF Doc 6], filed March 15, 2013, and ensuing related filings and events [ECF Doc 7, 9, 10, 12, 13, 15, 16, 18].

(consisting of the 15,000 Interest Shares plus the 50,000 Consideration Shares), and further requiring that Ross deposit with the Court the 77,310 Pledged Shares (Ross' remaining Infinity common stock pledged as collateral).[30]  The Agreed Order only served to result in subsequent convoluted motion practice by Ross.[31]

Ross could have simply collaborated in turning over the shares that he was so clearly obligated by contract to turn over, but instead chose to engage in dilatory delay tactics, and along the way made false statements and allegations to the Court that he had in fact already taken all the actions necessary to, and did in fact transfer said shares to Rothstein.[32]

From the outset, Ross disregarded and disobeyed various Court deadlines and directives,[33]  including failing to show up at the Preliminary Injunction hearing after submitting his Declaration in opposition to Rothstein's preliminary injunction motion, when Judge

---

[30]  Agreed Order Concerning Motion for Preliminary Injunction of Counterclaimant Adam Rothstein, entered April 15, 2013 [ECF Doc 19].

[31]  See ECF Doc 24, 28, 31, 32, 34. 39. 3, 44, 45, 47, 48, 49, and 52.

[32]  Beginning with his Petition, ¶¶ 11 and 16, Ross <u>falsely</u> alleged: "In full compliance with his agreements, Ross transferred and assigned 15,000 shares of Infinity stock to Rothstein, in payment, in full, of the 'interest'…[and] Ross issued each of the instructions, submitted each of the requests and performed each of the acts required to effect the issuance and transfer to Rothstein, absolutely, in his own name, the 65,000 shares of Infinity stock which Rothstein had demanded." See Petition, pp. 3-4, ¶¶ 11, 16 [ECF Doc 1, at pp. 15 and 16]. When facing Rothstein's Motion for Preliminary Injunction concerning the IFNY shares, Ross reiterated these same false allegations as fact assertions in his Memorandum in Opposition, to which was attached a one-page Declaration bearing his "electronic" signature, declaring the opposition "facts" asserted in the Memorandum to be true, the vast majority of which were just a verbatim cut-and-paste restatement of his Petition allegations, whether or not they had any bearing on the preliminary injunction issues. Plaintiff's Memorandum in Opposition to Defendant's Motion for Preliminary Injunction, pp. 5-9 [ECF Doc 15]; Declaration of Stanton Ross Under Penalty of Perjury [ECF Doc 15-1].

[33]  See Motion for Sanctions of Defendant/Counterclaimant Adam Rothstein [ECF Doc 23]; Memorandum and Order, pp. 21-22 [ECF Doc 55-1].

Lungstrum had made it clear that no such filed declaration of facts will be considered unless the declarant will be available for cross-examination at the hearing.[34]

Further indicating that Ross filing his "Petition" was merely a delay, intimidation or settlement coercion tactic, Ross engaged in no discovery during the first several months after he filed the case, and then served tardy, perfunctory, minimal Initial Disclosures only after receiving (and substantially plagiarizing) Rothstein's Initial Disclosures, tossing in a claim for "putative damages" not previously pleaded.[35]   Rothstein produced his initial substantial document production to Ross shortly after Rothstein's Initial Disclosures were served,[36] while Ross produced none until much later, and only after written discovery was initiated.

### 3.      No Good Faith Basis For Ross' Claims Against Rothstein

Ross' fraud claim (Count I) was based on the wholly contrived notion that after the parties entered their Forbearance Agreement in August 2012, and after Ross again defaulted by not immediately transferring the Interest and Consideration Shares, Rothstein, according to Ross, promised that he would negotiate yet another forbearance if Ross would simply get the Interest

---

[34]   *Id.*; Not only did Judge Lungstrum render this instruction, but Ross, in his Memorandum in Opposition, introduced his "facts" as follows in a subheading: "The Facts, as Verified by Ross Under 28 U.S.C. § 1746, <u>About Which Ross Will Testify Under Oath at the Hearing</u> Upon Rothstein's Motion for Preliminary Injunction." (Plaintiff's Memorandum in Opposition, p. 5 [ECF Doc 15](emphasis added)).  Ross also stated in his "Declaration" that the facts asserted in the Memorandum "are true and correct" and "<u>my testimony would and will conform to those facts</u>," but then Ross did not personally appear at the preliminary injunction hearing. (Declaration of Stanton Ross Under Penalty of Perjury, ¶ 2, bearing his "electronic" signature [ECF Doc 15-1]("I have reviewed the facts appearing in ¶¶ 1-17 inclusive of the accompanying Memorandum; such facts are true and correct and if or when examined under oath on April 10, 2013, <u>my testimony would and will conform to those facts</u>.")(emphasis added)).

[35]   The Initial Disclosures were due to be exchanged by June 14, 2013. See Scheduling Order [ECF Doc 20], Certificates of Service [ECF Doc 21 and 22], and Ross' Initial Disclosures [ECF Doc 26-14].

[36]   See cover letter and copy of document disk attached as Exhibit 1 to Defendant Adam Rothstein's Memorandum of Law in Opposition to Plaintiff's Motion to Compel [ECF Doc 112-1].

and Consideration Shares transferred to him, but Rothstein did not so negotiate further.  Among other obvious defects with this claim found by the Court, was the fact that Ross never even transferred the Interest and Consideration Shares in any event, though that inconvenient truth did not deter Ross from falsely asserting and contending otherwise, multiple times.[37]

Ross' bogus claim for violation of the Kansas Consumer Protection Act (Count II) was based on the foregoing frivolous fraud contention, in combination with an unfounded contention that Rothstein, an individual, was somehow a "supplier" of loans for purposes of the Act, an allegation Ross stated was made "upon information and belief" as if that somehow gave it a good faith basis.[38]

Ross' Defamation claim (Count III) was based on an attorney demand letter (commonly understood in defamation law to be a privileged document) sent in January 2013 by Rothstein's initial litigation attorney Craig Sanders to Infinity's CFO Dan Hutchins (because the transfer of the Infinity shares were implicated in the loan dispute), as well as Ross' conclusory, foundation-less and hearsay-based embellishments, set forth in Ross' Declaration, as to what Ross concluded and speculated Rothstein must have also said to other Ross acquaintances.[39]

Summary judgment was granted to Rothstein early in the case on Ross' affirmative Claims (Counts I – III), though summary judgment on the defamation claim was only partial in the Court's first ruling, as Ross was successful in creating enough of a fog with his conclusory, foundation-less, hearsay-based contentions to cause extended proceedings and substantial further

---

[37]  See footnote 32 above; Petition ¶¶ 14 – 19, 22-29 [ECF Doc 26-9]; Fact Reply of Defendant Adam Rothstein…, ¶¶ 29-32 [ECF Doc 51]; Memorandum and Order, pp. 6-8 [ECF Doc 55-1].

[38]  Petition, ¶¶ 6, 32 [ECF Doc 26-9]; Fact Reply of Defendant Adam Rothstein, pp. 2-3 [ECF Doc 51]; Memorandum and Order, pp. 18 – 19 [ECF Doc 55 – 1]

[39]  Petition, ¶¶ 20-21, 35-38 [ECF Doc 26-9]; Sanders Letter, Rothstein Ex. 11 [ECF Doc 26-13]; Fact Reply of Defendant Adam Rothstein, pp. 10-12, 33-36 [ECF Doc 51].

litigation until the final summary judgment ruling on the contrived defamation claim.[40]  Ross

piled on two frivolous motions for reconsideration concerning the Defamation claim.[41]

### 4.    Ross' Dilatory Claim For Wrongful Disposition of Collateral

It was in September 2013, after Rothstein was granted the foregoing early summary

judgment ruling against Ross, as well as a money judgment and the right to possession and to

foreclose on the IFNY Pledged Shares, that Rothstein sold the Pledged Shares on the OTCQB in

what the Court later concluded was in fact a commercially reasonable manner, realizing

$221,361.91 in proceeds.[42]  Though Rothstein did Ross a favor by liquidating the IFNY Pledged

Shares near their peak trading price, Ross moved the Court, citing to only piecemeal, misleading

website hearsay as his factual basis, to allow him to add a claim for "wrongful disposition of

collateral," which motion the Court granted, over Rothstein's objection, in the late fall 2013.[43]

Ross' principal concocted theory, based on the website hearsay he dug up and spun, was

that the OTCQB was not a "recognized market" under the UCC, a theory the Court rejected in

dispositive motion rulings.[44]  As further indication that Ross adding this claim for wrongful

disposition was a continuation of his bad faith dilatory litigation misconduct, is the fact that,

though the scheduling order deadlines were extended and trial was continued to accommodate

---

[40]  Memorandum and Order, pp.

[41]  ECF Doc 159, 183, 189,

[42]  Statement of Material Facts in Support of Defendant Adam Rothstein's Motion for Summary Judgment…, ¶ 24, p. 8 [ECF Doc 254], citing to Rothstein Aff., ¶ 8, Ex. P [ECF Doc 253-2]; Plaintiff's Response to Statement of Material Facts…, ¶ 24, p. 7 ("Undisputed")[ECF Doc 271]; Report and Recommendation, p. 7, 29 - 38 [ECF Doc 283]; Memorandum and Order, pp. 3 – 4, 24 - 32 [ECF Doc 297].

[43]  Plaintiff's Motion for Leave to File First Amended Complaint [ECF Doc 60]; Defendant Adam Rothstein's Memorandum in Opposition… [ECF Doc 61]; Plaintiff's Reply…[ECF Doc 63]; Amended Scheduling Order (granting Ross leave to amend)[ECF Doc 114]. First Amended Complaint for Injunction and Damages [ECF Doc 117]

[44]  Report and Recommendation, p. 7, 29 - 38 [ECF Doc 283]; Memorandum and Order, pp. 3 – 4, 24 - 32 [ECF Doc 297].

discovery for this newly added "claim", [45]  Ross did little to nothing to factually develop his "case," supplemented no disclosures, engaged no expert or other real fact witness, engaged in no discovery as to Rothstein's expert Underwood, and instead engaged in numerous shenanigans in attempting to block Rothstein from engaging in discovery.

When Rothstein served deposition notices to depose Stan Ross and his company Infinity (under Rule 30(b)(6)) with respect to the wrongful disposition claim, Ross promptly filed a motion for protective order (to which Rothstein filed a response) claiming that Ross (who would be the deponent both in his individual capacity and as Infinity's corporate witness) could not possibly have any knowledge whatsoever relevant to Ross' own wrongful disposition claim and the "recognized market" issue.[46]  When an agreement was worked out by which Ross would appear for a limited deposition, and his motion for protective order was withdrawn,[47] he then succeeded in causing numerous delays and rescheduling of the depositions, one time claiming to have a medical condition that prevented him from sitting for it, while at the very same time was conspicuously working as a CEO, conducting a shareholder conference call and engaged in negotiating an intensive debt restructuring for his public companies.[48]

Ultimately, even though Ross had loudly and purposefully asserted in his motion for protective order that he had no knowledge whatsoever relevant to the "recognized market" issue, and succeeded in delaying and limiting Rothstein's deposition of him in that regard, he later submitted his own lengthy Declaration in final dispositive motion briefing purporting to set forth numerous detailed facts, conclusions, and opinions, even in the nature of expert testimony,

---

[45]  Amended Scheduling Order (granting Ross leave to amend)[ECF Doc 114].

[46]  See ECF Doc 156, 157, 177, 187

[47]  ECF Doc 191.

[48]  ECF 202, 203, 215, 216, 223, 230, 244, 245.

beginning with a description of his experience as a "Series 7" and "Series 63" licensed stockbroker, magically speaking directly to the over-the-counter markets, how they operate, the OTCQB, and numerous other related subjects directed at the "recognized market" issue.[49]

When Rothstein served requests for admissions relating to Ross' wrongful disposition claim, Ross responded with numerous improper, convoluted objections, and dysfunctional, improper responses, requiring a motion and hearing before Judge James, upon which the Court substantially rejected Ross' objections and ordered proper, competent responses.[50]

Ross also sandbagged with respect to a purported third-party fact witness named Mark Depew, a broker with a St. Louis-based firm named Maloney Securities, whose office is in Wyoming, who was misrepresented by Ross to be a "market maker," and whom Ross did not disclose, albeit informally, until after the deadline for making Supplemental Disclosures and so close to the discovery deadline that Rothstein had to object on the basis of prejudicial delay. Yet, Ross again succeeded, with this dilatory tactic, in causing a further extension of the case scheduling order and deadlines, entered by the Court with the proviso that Ross would schedule and take Depew's deposition by a certain date. Not only did Ross then not depose Depew, but he simply withdrew Depew as a witness once Rothstein incurred expense and attorney time issuing document subpoenas to Depew and Maloney Securities to obtain pertinent documents in advance of any such deposition, but of course not before Ross moved to quash Rothstein's subpoenas, to which motion Rothstein was required to prepare and file a response, and incur fees in doing so.[51]

---

[49] Declaration of Stanton Ross Under Penalty of Perjury [ECF Doc 258-17].

[50] See ECF Doc 142, 180, 193, 194, 200, 206 and 214.

[51] ECF Doc 212, 213, 223, 226, 227, 230, 231, 233.

5.   **Ross' Abusive, Disingenuous, and Dishonest Pleading, Discovery, and Dispositive Motion Practices**

In response to Rothstein's initial motion to dismiss or for summary judgment, Ross generated and filed, like he did in response to both of Rothstein's subsequent summary judgment motions, little more than a lengthy, contrived personal Declaration of conclusions, arguments, opinion, hearsay, and voluminous and irrelevant material concerning his personal background and companies, begging sympathy [Doc 41-1], and then converted it into a lengthy "Responsive Statement of Facts" [see, e.g., ECF Doc 42], along with other irrelevant and needlessly redundant material, in an obvious attempt to overwhelm Rothstein  as well as the Court with sheer volume and immaterial redundancy, and to create a fog and illusion that "fact issues must exist somewhere."  A number of fact assertions by Ross were demonstrably false, many violated the requirements of Rule 56 and Local Rule 56.1 in that they were not based on any admissible evidence, or no evidence was even cited, and most were conclusory, contrived, argumentative, speculative, contained lay opinion and/or hearsay, or were completely inconsequential, and anything but concise, many did not fairly meet the substance of Rothstein's contentions, in violation of local rule requirements, and Rothstein so objected and responded, early and often, in necessarily time consuming, lengthy, and tedious Reply filings.[52]

Included in Ross' August 2013 Declaration was a contention, later demonstrated to be patently false, that Ross had in his possession saved voice mail messages from Riley McCormack revealing defamatory statements made by Rothstein.[53]  When pressed in discovery, Ross unreeled a story that the voice mails were on an iPhone 4 he had given to his young

---

[52]  See ECF Doc 40, 41, 42, 50, 51, 132, 133, 134, 158, 160, 181, 182, 183, 252-258, 266-272, .277-281; Memorandum and Order [ECF Doc 55-1]; Memorandum and Order [ECF Doc 201]; Report and Recommendation [ECF Doc 283]; Memorandum and Order [ECF Doc 297].

[53]  Declaration of Plaintiff Stanton Ross Under 28 U.S.C. § 1746, ¶ 55.a. [ECF 41-1]("Riley McCormack,…told me all of these things in voice mails, all of which I have saved").

daughter who lost it, but it was clear that when he made the statement in his Declaration that he had from McCormack "voice mails, all of which I have saved," it was false, and/or, at a minimum, he had spoliated evidence.[54]  It was only after a motion and hearing before Judge James that Ross agreed to withdraw any offer at trial of evidence of purported McCormack voice message statements, a resolution engineered by Judge James.[55]  At the hearing, when directly and purposefully asked by the Court whether the voice mails were disclosed in Ross' Initial Disclosures, counsel for Ross stated falsely that they were, in fact, included, and further stated, quite falsely, that the voice mail messages were "always one of the centerpieces of the case known to all parties and of interest to all of them since its inception." [56]

In his Declaration supporting his motion for summary judgment on Rothstein's fraud in the inducement claim, Ross asserted conclusory, hearsay-based, and false contentions that because the Digital Ally board was well-informed of Ross' tax problems and liens, and because Stephen Gans was on the board and close to Rothstein, Rothstein must have known of the tax

---

[54]  See Defendant Adam Rothstein's Motion to Compel [ECF Doc 105]; Memorandum in Support…and exhibits [ECF Doc 106]; Plaintiff's Memorandum in Opposition…[ECF Doc 118]; Defendant Adam Rothstein's Reply…[ECF Doc 127].

[55]  Defendant Adam Rothstein's Request for Hearing and Oral Argument [ECF Doc 129]; Plaintiff's Response to Defendant's Request for Hearing and Oral Argument [ECF Doc 131]; Notice of Hearing [ECF Doc 135]; Motion of Defendant Adam Rothstein Directing Plaintiff Stanton E. Ross to Appear at February 18 Hearing, and Memorandum in Support [ECF Doc 137, 138]; Plaintiff's Response…[ECF Doc 149]; Order directing Ross to appear [ECF Doc 150]; Minute Entry for Motion Hearing [ECF Doc 163]; Order [ECF Doc 172].

[56]  Defendant Adam Rothstein's Motion for Sanctions…[ECF Doc 185]; Memorandum in Support…pp. 10-11, ¶¶ 19 -25 [ECF Doc 186]; Hearing Transcript, p. 4 [ECF Doc 186-1];  Ross' Initial Disclosures [ECF Doc 26-14]. Judge Lungstrum declined to grant Rothstein's motion for sanctions in this regard in large part because he found it to be moot because he granted Rothstein the ultimate relief of full summary judgment on Ross' defamation clam. Memorandum and Order, pp. 15 - 17 ECF Doc 201].

problems and liens before making the loan, when Ross himself signed an SEC filing indicating Gans did not even join the Board until well after the loan was made, as Gans also testified.[57]

Ross took his own pot shot at a summary judgment motion on Rothstein's fraud in the inducement claim, which motion was not only untimely filed by 6 months, as noted by the Court, with Ross again disregarding court rules and orders, but was also found to be completely without merit, and Ross did not even bother to respond to Rothstein's responsive fact contentions, as the Court well noted.[58]  The Court itself characterized this Ross motion as "halfhearted."[59]

Even when Rothstein moved to voluntarily dismiss his remaining minimally litigated counterclaims in order to put an end to the litigation, Ross asserted false statements of law and fact in response, and made misleading arguments encouraging the Court to impose onerous conditions on Rothstein for such dismissal, such as payment of Ross' attorney's fees.[60]

## III.    QUESTION PRESENTED

Whether Rothstein, with his contractual entitlement to recover his attorney's fees and expenses previously established by the Court, is entitled to recover from Ross the full amount sought, in order to obtain the full benefit of his bargain, particularly in light of Ross' conscious choice to conduct bad faith, vexatious litigation, and thereby cause Rothstein to incur substantial legal expense

---

[57]  See Responses and Objections of Defendant Adam Rothstein…,pp., 3, 44-46 [ECF Doc 268]

[58]  Report and Recommendation [ECF Doc 283]; Memorandum and Order [ECF Doc 297].

[59]  Memorandum and Order, p. 6 [ECF Doc 304].

[60]  ECF Doc 298, 299, 302, 303, 304.

**IV.     ARGUMENT**

    **A.     Rothstein Is Entitled to Recover His Attorney's and Expenses Incurred With Respect to Loan Enforcement, Collection and Litigation, And In Defense of Claims Against Him, As the Court Has Previously Determined**

    The Court has made it crystal clear in multiple dispositive motion rulings that the operative contractual fee and expense provisions are valid, enforceable, and entitle Rothstein to recover from Ross not only the fees and expenses incurred in loan enforcement and collection efforts, but also in defending himself from claims asserted against him that arise from the loan.[61]

    **B.     Procedures Under Fed. R. Civ. P. 54 and D. Kan. Rule 54.2 Concerning Motions to Recover Attorney's Fees and Expenses**

    Under Fed. R. Civ. P. 54(d)(2)(A), "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Under Kansas law, claims for contractual attorney's fees for work done in the instant, pending case are not an element of damages, but recoverable by Rule 54 motion.  *Heavy Petroleum Partners, LLC v. Atkins*, 457 Fed. Appx. 735, 2012 WL 120058 (10th Cir. 2012)(unpublished).  Rule 54(d)(2)(B) requires, among other things, that the motion for fees be filed, as it was here, no later than 14 days after the entry of judgment.

    D. Kan. Rule 54.2 sets forth a procedure which a party claiming <u>statutory</u> attorney's fees is to follow, but this Court, as it has done here, routinely directs parties to follow this local rule

---

    [61]  Memorandum and Order, pp. 20-21 [ECF Doc 55-1]; Report and Recommendation [ECF Doc 283]; Memorandum and Order, pp. 32 - 36 [ECF Doc 297]; Memorandum and Order [304]; see, also, [Final] Judgment In A Civil Case [ECF Doc 310].  In opposing Rothstein's recent motion for final judgment, Ross attempted an after-the-fact argument that Rothstein was out of time to file his fee motion, suggesting Rothstein should have filed it after the entry of Judge Lungstrum's interlocutory Judgment in September 2013, which argument was rejected by this Court in granting Rothstein's motion for final judgment.  See Plaintiff's Memorandum in Opposition…, pp. 6 – 10 [ECF Doc 302]; Reply Memorandum in Support of Motion of Defendant/Counterclaimant Adam Rothstein…, pp. 22 – 29 [ECF Doc 303]; Memorandum and Order, pp. 10 – 13 [ECF Doc 304]; [Final] Judgment In A Civil Case [ECF Doc 310].

procedure as to claims for <u>contractual</u> attorney's fees as well.[62]  Accordingly, Rothstein filed his

motion for fees and expenses on July 9, 2015(without memorandum or supporting materials),[63]

initiated consultation with Ross' counsel, attaches his Statement of Consultation hereto,[64] and

now files this Memorandum and supporting materials.  D. Kan. Rule 54.2(f) prohibits discovery

being conducted on motions for attorney's fees unless permitted by the Court upon motion by the

opposing party and for good cause.

C.   **Standards for Evaluation of Motions for Contractual Attorney's Fees and Expenses**

1.   **Contractual Attorney's Fees Claims Do Not Require the Close Scrutiny Of A "Lodestar" Analysis Employed For Statutory Fee Claims, As Contractual Fees Are Routinely Awarded and the Contract Enforced According To Its Terms**

In *Fusion, Inc. v. Nebraska Aluminum Castings, Inc.,* 962 F.Supp. 1392 (D. Kan. 1997),

this Court held that the evaluation of motions for <u>contractual</u> attorney's fees requires a different

approach than a "lodestar" analysis, or the "close scrutiny" of hours expended, or an independent

calculation of a "reasonable fee," which are involved in the approach utilized for <u>statutory</u>

attorney's fees claims, such as fee claims made under federal civil rights statutes.  The Court

explained, citing *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors,* 834

F.2d 1533 (10th Cir.1987), that "[c]lose scrutiny" of the hours expended for awards under the

federal <u>statutes</u> is justified because of the statutes' purpose of enabling private parties to obtain

legal help in seeking redress for statutory violations.  *Fusion*, 962 F. Supp. at 1397 (citing

---

[62]  *See, e.g., Penncro Associates, Inc. v. Sprint Spectrum LP*, 2006 WL 1320252 (D.Kan. 2006); *American Multi-Cinema, Inc. v. Southroads, LLC*, 119 F.Supp.2d 1190, 1215 (D.Kan. 2000); and in this case, Memorandum and Order, pp. 20-21 [ECF Doc 55-1]; Report and Recommendation, pp. 39, 45 [ECF Doc 283]; Memorandum and Order, p. 32 [ECF Doc 297].

[63]  Defendant Adam Rothstein's Motion to Recover Attorney's Fees and Expenses [ECF Doc 308].

[64]  Statement of Consultation, Rothstein Exhibit W attached hereto.

*Western States*, 834 F.2d at 1548).  The reasoning for a different approach for <u>contractual</u> fee claims was stated by the Tenth Circuit in *Western States* as follows, speaking to the enforcement of the benefit of the parties' bargain, and enforcing the contract according to its terms:

> In contrast, where contracting parties have agreed that a breaching party will be liable for attorneys' fees, the purpose of the award is to give the parties the benefit of that bargain, and the court's responsibility is to enforce that bargain. Normally, where the court is merely enforcing a contractual provision authorizing attorneys' fees, <u>the fees are routinely awarded and the contract is enforced according to its terms</u>.

*Id.* (footnote omitted; emphasis added).

The court does have discretion to adjust a contractual award of fees if a full award would be inequitable or unreasonable, though the court is not responsible for independently calculating a "reasonable fee." *Id., Fusion*, 962 F. Supp. at 1397 (citing *Western States*, 834 F.2d at 1549). Although the statutory fee standards are not to be used to compute a reasonable fee, those factors may be used by a court to assist in determining whether claimed fees are unreasonable or inequitable. *Id., Fusion*, 962 F. Supp. at 1397 (citing *Western States*, 834 F.2d at 1550, citing *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983)(setting out statutory fee award factors)). "Thus, the court need not engage in any 'lodestar' analysis here," but "exercises broad discretion in determining the amount of fees [and] a district court may award attorney fees in the same proportion as damages were assessed." *Fusion*, 962 F. Supp. at 1397 (citing *Western States*, 834 F.2d at 1527-28.)  Rothstein has had complete success on the merits, and has been awarded 100% of the compensatory damages he sought, entitling him to full recovery of the attorney's fees and expenses he seeks.

> ### 2. Even If Rothstein Had No Contractual (or Statutory) Basis For Recovery of Attorney's Fees, Rothstein Would Be Entitled to Recover His Fees Due to Ross' Bad Faith In Conducting the Litigation

In *Odessa Ford, LLC v. T.E.N. Investments, Inc.*, 2009 WL 1617465 (D. Kan., June 9, 2009), the fee claimant did not have a contractual basis for recovering attorney's fees, but the

Court analyzed whether fees should be awarded due to the opponent's bad faith conduct in the litigation. The Court noted that the Supreme Court recognizes an exception to the American Rule barring recovery of attorney's fees absent a contract or statute providing for same, when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. at *4 (citing *Poindexter v. Morse Chevrolet, Inc.*, 282 F.Supp.2d 1232, 1235 (D.Kan.2003) and *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991)). This exception derives from the courts' inherent power to sanction and punish conduct that abuses the judicial process. *Id*.

"Conduct during the course of the litigation which abuses the judicial process constitutes bad faith and indisputably, at the discretion of the court, warrants sanction through the charging of fees. [ ] Similarly, when a party maintains a meritless claim or defense, either by instituting an unfounded action wantonly or for oppressive reasons, or by necessitating that an action be filed or asserting a colorless defense, it engages in bad faith which is grounds for a fee award." *Id*. (citing *Towerridge Inc. v. TAO, Inc.,* 111 F.3d 758, 766 (citing *Shimman v. Int'l Union of Operating Engineers, Loc. 18*, 744 F.2d 1226, 1230–31 (6th Cir.1984))).

The Court here, in assessing Rothstein's fee claim, should not only find it reasonable and equitable to award Rothstein his <u>full</u> fee claim because of Rothstein's complete success on the merits, as well as the broad contractual provisions by which Ross agreed to a comprehensive fee recovery by Rothstein, but also because of Ross' bad faith in conducting the litigation wantonly and for oppressive reasons, asserting meritless claims and defenses, and multiplying the proceedings unreasonably and vexatiously.

> **D.** **Rothstein's Claim For Fees and Expenses Passes Any Reasonableness Test, Including The Lodestar Analysis Employed In Statutory Fee Cases**

In the event the Court elects to test for reasonableness by engaging in a lodestar analysis, such as that employed as to statutory fee claims, Rothstein's fee claim passes the test. To arrive

at a so-called "lodestar" figure for determining reasonable attorney's fees, the court multiplies the hours counsel reasonably spent on the litigation by a reasonable hourly rate. *Leo v. Garmin International*, 2012 WL 3245456 * 2 (D. Kan., June 18, 2012)(citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir.2006)).  The party seeking attorney's fees bears the burden of documenting the appropriate hours expended and hourly rates. *Id.* (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249–50 (10th Cir.1998)).  The lodestar figure is presumed to be a reasonable fee, but the court may adjust it upward or downward as necessary. *Id.* (citing *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1103 (10th Cir.2005), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006); *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir.1998)).

In *Flohrs v. Eli Lilly and Co.*, 2013 WL 3947152 (D. Kan. 2013), the Court held that whether the lodestar figure is subject to upward or downward adjustment is analyzed under the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 48 F.2d 714, 717–19 (5th Cir.1974) ("the *Johnson* factors"). *Id.* at * 3 (citing *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 453–54 (10th Cir.1988); *Gottlieb v. Barry,* 43 F.3d 474, 483 (10th Cir.1994)). Those factors are: (1) time and labor required, (2) novelty and difficulty of question presented by the case, (3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorneys due to acceptance of the case, (5) customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) "undesirability" of the case, (11) nature and length of the professional relationship with the client and (12) awards

in similar cases. *Flohrs, supra*, at * 3(citing *Rosenbaum v. MacAllister,* 64 F.3d 1439, 1445 (10th Cir.1995)).

### 1.    Reasonableness of Hours

To satisfy his burden to show that the hours claimed are reasonable, Rothstein must submit, as he has, "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Leo*, *supra*, at *2 (citing *Case*, 157 F.2d at 1249-50).  In *Leo*, the Court observed that attorneys normally do not bill all hours expended in litigation to a client, and to show requisite billing judgment, counsel for the claimant should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, and the court has a corresponding obligation to exclude hours not "reasonably expended" from the calculation. However, the court need not cause Rothstein's motion for attorney's fees to result in a second major litigation by identifying and justifying every hour allowed or disallowed.  *Id.* (citations omitted).

In the case at hand, Rothstein's counsel regularly reviewed and edited his firm's monthly billing invoices to Rothstein to ensure efficiency and value, giving particular consideration to the fact the client is an individual paying out of pocket, the nature of the case, and the amount of the loan in dispute, eliminating on average over 20 billable hours per month from the invoices, and reducing the total invoiced fee amounts accordingly, either by removing the subject time entry altogether, reflecting the time entry as a "No Charge," or applying a courtesy discount.[65]  The invoices of Seth Markowitz also reflect substantial courtesy discounts applied.[66]  Also, and as explained further herein below, time descriptions (and commensurate amounts billed to

---

[65]  Affidavit of Neil L. Johnson…, ¶ 9, Exhibit Y attached hereto.

[66]  Markowitz Invoices, Exhibits 39 – 41, 44 attached hereto.

Rothstein) which make any reference to Rothstein's fraud in the inducement claim have been segregated out from Rothstein's claim for fees, and the pertinent invoice amounts adjusted accordingly.  The remaining hours that form the basis of Rothstein's total fee claim are abundantly reasonable given the extensive and complex nature of the litigation, and the overzealous, dilatory and vexatious tactics and strategy employed by Ross and his counsel.

### 2.    Daily Block Billing Is Permissible

The attorney's fee invoices supporting Rothstein's Motion to Recover Attorney's Fees and attached to this Memorandum contain detailed descriptions of attorney and legal professional work and time recorded on a daily basis, though entered in blocks of daily time, rather than broken down on an incremental per-task basis. In this Court and the 10th Circuit, it has been held that the Tenth Circuit does not require any reduction or denial of a fee request if the prevailing party submits attorney records which reflect such block-billing, though the Court may discount the requested hours if it finds that the records submitted do not allow the Court to make a reasonableness determination.  *University of Kansas v. Sinks*, 2009 WL 3191707 * 5 (D. Kan. Sept. 28, 2009)(citing *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir.2000)). Rothstein respectfully submits that the daily block time descriptions contained in the attached invoices from each of his respective counsel contain sufficient detail for the Court to make a reasonableness determination.

### 3.    In Determining Reasonableness of Rates, a District Judge May Consider His or Her Own Knowledge of Prevailing Market Rates In the Relevant Community, And Other Indicia

The Tenth Circuit has held that to determine what constitutes a reasonable hourly attorney's fee rate, the district court considers the "prevailing market rate in the relevant community."  *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir.1996).  To determine a reasonable rate, the Court focuses on "what lawyers of comparable skill and experience

practicing in the area in which the litigation occurs would charge for their time." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). If the district court does not have adequate evidence of prevailing market rates for attorney fees, then it may, "in its discretion, use other relevant factors, including its own knowledge, to establish the rate." *Case, supra*, 157 F.3d at 1257.  A district judge may consider his or her "own knowledge of prevailing market rates as well as other indicia of a reasonable market rate." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1493 (10th Cir.1994) (internal quotation marks omitted); *Leo v. Garmin International*,  2012 WL 3245456 at * 3 (D. Kan., June 18, 2012).

Particularly given that the District Court Judge (and Magistrate Judge) to which this case is currently assigned have been appointed to the bench relatively recently, and prior to that have been in private practice for many years in this very community, Rothstein is satisfied to leave it to the Court to rely on its own knowledge of prevailing market rates of attorneys in this community with similar experience and skill when determining the reasonableness of the rates of Rothstein's attorneys.

### 4.     Reasonable Redactions of Privileged Information From Time Descriptions In Fee Invoices Is Prudent and Permissible

Reasonable redactions of the substance of privileged attorney-client communications from attorney invoices are permissible and do not impeded the Court's ability to review and assess the invoices.  *Harford Fire Insurance Co. v. P&H Cattle Co., Inc.*, 2006 WL 3612661 * 4 (D. Kan., Dec. 11, 2006).

With Rothstein's understanding that the mere fact that attorney-client communications occurred and the general topic discussed are typically not, in and of themselves, considered

privileged, but the substance of such communications, particularly analyses, strategy and advice rendered, are in fact privileged, the fee invoices attached as exhibits to this Memorandum contain only a few minimal redactions, out of an abundance of caution, where the time descriptions reveal the substance of the attorney-client communications.[67]

> 5.    **While Rothstein May Recover All Fees Incurred, Due To The Interrelation and Intertwining of All Claims and Defenses In The Case, He Has Segregated Out Fees For Time Clearly Devoted To His Fraud In The Inducement Counterclaim**

Under Kansas law, an <u>exception</u> to the duty to segregate recoverable from non-recoverable fees is recognized when fees are rendered in connection with claims that arise out of the same transaction and occurrences, and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts.  *Sheldon v. Vermonty*, 237 F.Supp.2d 1270 (D. Kan. 2003)(citing *DeSpiegelaere v. Killion*, 24 Kan.App.2d 542, 947 P.2d 1039 (1997), and *Stewart Title Guaranty Company v. Sterling*, 822 S.W.2d 1 (Tex.1991)).

As the Court in *Sheldon* explained and held, the exception to the general rule, as set out in *Stewart* and adopted by the Kansas Court of Appeals in *DeSpiegelaere,* applies to all causes of action in a case where they are dependent upon the same set of facts or circumstances and thus are intertwined to the point of being inseparable.  *Sheldon*, 237 F.Supp.2d at 1274; *see*, *also*, *Terra Venture, Inc. v. JDN Real Estate-Overland Park, LP*, 242 F.R.D. 600, 605 (D. Kan. 2007).

The vast majority of the litigation in this case occurred with respect to Rothstein's efforts to enforce and collect under the loan agreements, in obtaining summary judgment on Rothstein's contract-based Counterclaim Counts I – III, and in defending against Ross' affirmative claims against Rothstein arising out of the loan transaction, as Rothstein explained and described in

---

[67]  Affidavit of Neil L. Johnson…, ¶ 11, Exhibit Y attached hereto; Redacted Invoices, Exhibits 42, 52, 53 and 55 attached hereto. Rothstein offers to submit such invoices in unredacted form for the Court's *in camera* inspection if the Court determines it necessary.

detail in his Memoranda supporting his recent Motion…For Voluntary Dismissal of His Remaining Counterclaims IV-VII…And For Entry of Final Judgment [ECF Doc 298].[68]  The fees and expenses for all of this work are recoverable under the contractual attorney's fees provisions discussed hereinabove.

Included in Rothstein's voluntarily dismissed counterclaims IV – VII were his contract-related claims for breach of guarantee, breach of covenant of good faith and fair dealing, and unjust enrichment, which were not only minimally litigated, if at all, but are obviously interrelated and intertwined with Rothstein's contract-based counterclaims.

Rothstein concedes that there may be an issue as to whether the fees incurred for work performed on his fraud in the inducement counterclaim (Counterclaim Count VII) are recoverable under the contractual fee provisions, though such fees are arguably recoverable, and such work was substantially interrelated and intertwined with the other work in the case. However, taking the more conservative approach, the billable time entries in Rothstein's attached attorney's fees invoices in which the fraud in the inducement counterclaim is mentioned in any part of the time description, are eliminated (struck through), the fees incurred for that work are subtracted, and the invoice totals are adjusted accordingly.[69]

> **6.  Rothstein May Recover Fees Incurred For Attorney Work Performed In Preparing and Presenting His Motion For Fees, Memorandum, and Supporting Materials**

This Court and the 10th Circuit have held that "[a]n award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application."

---

[68]  Memorandum In Support of Motion of Defendant/Counterclaimant Adam Rothstein For Voluntary Dismissal of His Remaining Counterclaims IV-VII…And For Entry of Final Judgment, pp. 13 – 16 [ECF Doc 299]; Reply Memorandum in Support of Motion of Defendant/Counterclaimant Adam Rothstein For Voluntary Dismissal…, pp. 3 – 7 [ECF Doc 303].

[69]  Affidavit of Neil L. Johnson…, ¶ 10, Exhibit Y attached hereto;  Adjusted Invoices, Exhibits 54, 59, 60, 61, 62, 64, and 66 attached hereto.

*Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1254 (10th Cir.1998) (citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir.1986); *Glass v. Pfeffer,* 849 F.2d 1261, 1266 n. 3 (10th Cir.1988); *Hernandez v. George,* 793 F.2d 264, 269 (10th Cir.1986)).  Accordingly, the total attorney's fees Rothstein seeks to recover, as stated in his contemporaneously filed Amended Motion to Recover Attorney's Fees and Expenses, includes his fees incurred through August 14, 2015, which is the business day before the date on which this Memorandum and supporting materials are filed.[70]

## V.    CONCLUSION

For the foregoing reasons, defendant Adam Rothstein is entitled to recover from Ross an attorney's fees and expense award in the entire amount of $622,139.62 requested at this time.

Respectfully submitted,

BERKOWITZ OLIVER WILLIAMS
SHAW & EISENBRANDT LLP

By:_____/s/ Neil Johnson_____
    Neil L. Johnson       KS Bar No. 13934
    Nicholas L. DiVita      Mo. Bar No. 37514
      KS Federal Bar No.  70079
    Sharon A. Stallbaumer    KS Bar No. 16760
    2600 Grand Boulevard, Suite 1200
    Kansas City, Missouri 64108
    Telephone:  816-561-7007
    Facsimile:  816-561-1888
    E-Mail:    njohnson@berkowitzoliver.com
               sstallbaumer@berkowitzoliver.com

**Attorneys for Defendant Adam Rothstein**

---

[70]  See 8/14/2015 Invoice of Berkowitz Oliver (BOWSE), Rothstein Ex. 71.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2015, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties

receiving electronic notice thereof, including:

James F.B. Daniels
Adam J. Gasper
MCDOWELL RICE SMITH & BUCHANAN, P.C.
605 W. 47th Street, Suite 350
Kansas City, MO  64112-1905
jdaniels@mcdowellrice.com
agasper@mcdowellrice.com

/s/ Neil L. Johnson
**Attorney for Defendant Adam Rothstein**

31