## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STANTON E. ROSS,

        **Plaintiff/Counter**
        **Defendant,**

v.

ADAM ROTHSTEIN,

        **Defendant/Counterclaimant.**

      **Case No. 13-CV-2101-DDC-TJJ**

---

### MEMORANDUM AND ORDER

This matter comes before the Court on:  (1) defendant's Motion to Recover Attorney's Fees and Expenses (Doc. 308); (2) defendant's Amended Motion to Recover Attorney's Fees and Expenses (Doc. 316); and (3) defendant's Motion to Dismiss With Prejudice His Counterclaim Counts IV–VII (Doc. 329).  The Court first addresses defendant's motion to dismiss, and then considers defendant's motions for attorney's fees and expenses.  After considering the parties' arguments, the Court grants defendant's motion to dismiss and grants, in part, defendant's motions for attorney's fees and expenses.

**I.      Defendant's Motion to Dismiss With Prejudice His Counterclaim Counts IV–VII**

The parties are well familiar with the factual and procedural background of this case. The Court briefly summarizes background information that is relevant to the pending motions.

This lawsuit arises out of plaintiff's default on a $210,000 loan that defendant made to plaintiff.  The parties filed various claims against one another over the default, and the Court entered two summary judgment orders in this case.  Docs. 55-1 & 297.  Those orders granted summary judgment against plaintiff on all his claims against defendant and on three of the seven

counterclaims that defendant asserted against plaintiff.  *Id.*  Afterwards, the only claims remaining were four of defendant's counterclaims against plaintiff.

Following the Court's second summary judgment ruling, defendant voluntarily moved to dismiss his remaining four counterclaims without prejudice and asked the Court to enter a final judgment in the case.  Doc. 298.  The Court granted defendant's motion to dismiss the counterclaims without prejudice subject to certain conditions (Docs. 304, 309), and entered a final judgment (Doc. 310) that:  (1) granted judgment for defendant on all of plaintiff's claims and three of defendant's counterclaims; (2) granted judgment in the amount of $43,151.64, with post-judgment interest accruing at a rate of 18% compounding monthly from the date of the judgment until paid in full; (3) ruled that defendant is entitled to recover his attorney's fees incurred in this matter, under the procedures set forth in Fed. R. Civ. P. 54(d)(2) and D. Kan. Rule 54.2; and (4) ruled that defendant is the prevailing party for purposes of recovering costs under Rule 54(d)(1).

On August 14, 2015, plaintiff filed a Notice of Appeal of the Judgment.  Doc. 313.  On September 11, 2015, the Tenth Circuit Clerk entered an Order *sua sponte* advising that the court was considering a summary disposition of the appeal for lack of appellate jurisdiction.  Appellate Case No. 15-3186, Doc. 01019489687 (filed Sept. 11, 2015).  The Order explained that the Tenth Circuit lacks jurisdiction to consider an appeal of the case to the extent that this Court's dismissal of defendant's remaining counterclaims without prejudice did not render a final judgment.  *Id.* at 2 (citing *Heimann v. Snead*, 133 F.3d 767, 769 (10th Cir. 1998)).  In response to this Order, defendant sought a temporary remand of the case so that he could seek dismissal of his remaining counterclaims with prejudice to ensure that the Court's disposition of the case is final and appealable to the Tenth Circuit.  Appellate Case No. 15-3186, Doc. 01019505339 (filed

2

Oct. 9, 2015).  The Tenth Circuit granted defendant's motion and partially remanded the case to this Court for defendant to seek a dismissal with prejudice of his remaining counterclaims. Appellate Case No. 15-3186, Doc. 01019506264 (filed Oct. 13, 2015).

On October 19, 2015, defendant filed in this Court a Motion to Dismiss Counterclaim Counts IV–VII with Prejudice (Doc. 329).  D. Kan. Rules 6.1(d)(2) and 7.1(c) required plaintiff to respond to defendant's motion within 21 days, or by November 9, 2015.  The deadline for plaintiff to respond has passed, and plaintiff has not filed any response to defendant's motion to dismiss his remaining counterclaims with prejudice.  Under D. Kan. Rule 7.4(b), a party "who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum" unless there is a showing of excusable neglect.  This rule also provides "[i]f a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion.  Ordinarily, the court will grant the motion without further notice."  D. Kan. Rule 7.4(b).  Because plaintiff has not responded timely to defendant's motion to dismiss his remaining counterclaims with prejudice, the Court may grant the motion as uncontested under D. Kan. Rule 7.4(b).  For this reason and the reasons below, the Court grants defendant's motion and dismisses the remaining counterclaims with prejudice.

The Court treats defendant's motion as a motion for relief from a final judgment or order under Fed. R. Civ. P. 60(b)(6).  This rule provides:  "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason that justifies relief."  *Id.*  The decision to grant a Rule 60(b)(6) motion lies within the sound discretion of the trial court.  *Pierce v. Cook & Co., Inc.*, 518 F.2d 720, 722 (10th Cir. 1975), *cert. denied*, 423 U.S. 1079 (1976) (citation omitted); *see*

*also Chief Freight Lines Co. v. Local Union No. 886*, 514 F.2d 572, 576–77 (10th Cir. 1975) (holding that a district court did not abuse its discretion by reopening a dismissal without prejudice under Fed. R. Civ. P. 60(b)(6)).  A court should construe the rule liberally to serve substantial justice.  *Pierce*, 518 F.2d at 722 (quoting *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963)).

Here, defendant urges the Court to dismiss his remaining counterclaims with prejudice in the interest of judicial economy.  Defendant seeks to eliminate any question about the finality of the Court's judgment and to expedite the ultimate termination of this litigation.  The Court, in its discretion, finds that granting defendant's motion under Fed. R. Civ. P. 60(b)(6) serves substantial justice.  It provides finality and allows the parties to proceed with an appeal in search of the litigation's ultimate conclusion.  Under these circumstances, defendant is entitled to Rule 60(b)(6) relief.

The Court therefore relieves defendant from its previous Orders dismissing Counterclaim Counts IV–VII without prejudice (Docs. 304 & 309) under Fed. R. Civ. P. 60(b)(6), and dismisses Counterclaim Counts IV–VII with prejudice.

## II.     Defendant's Motions for Attorney's Fees and Expenses

In several earlier rulings, the Court determined that defendant is entitled to recover attorney's fees and expenses under the terms of the written loan agreements between the parties. *See* Doc. 283 at 39–40 (Magistrate Judge James' report recommending that defendant is entitled to recover his reasonable out-of-pocket costs and expenses as provided by the (Superseding) Pledge Agreement); Doc. 297 at 32–36 (overruling plaintiff's objections and adopting Judge James' recommendation that defendant is entitled to recover attorney's fees under the (Superseding) Pledge Agreement); Doc. 304 at 10–13 (rejecting plaintiff's argument that

defendant's fee request is untimely and ordering defendant to submit a motion for attorney's fees within 14 days after entry of the final judgment); Doc. 310 at 2 (stating in the Judgment that "defendant Rothstein is entitled to recover his attorney's fees incurred in this matter, under the procedures set forth in Fed. R. Civ. P. 54(d)(2) and D. Kan. Rule 54.2.").

As required by Fed. R. Civ. P. 54(d)(2) and D. Kan. Rule 54.2,[1] defendant filed a Motion to Recover Attorney's Fees and Expenses (Doc. 308) seeking $589,300 in total attorney's fees and expenses, $10,800 in expert witness fees, and $1,600 in travel expenses.  Doc. 308 at 1. Defendant stated in the motion that, consistent with D. Kan. Rule 54.2:  (a) he would consult with plaintiff and attempt to reach an agreement about the amount of attorney's fees and expenses owed; and (b) if the parties did not reach an agreement, defendant would file a memorandum supporting his request and a Statement of Consultation, as D. Kan. Rule 54.2 requires.  Doc. 308 at 1.

The parties could not agree on the attorney's fees and expenses owed to defendant.  *See* Doc. 317-2 (explaining in defendant's Statement of Consultation that the parties engaged in substantive communications about the amount of defendant's claim for fees and expenses but did not reach an agreement).  Therefore, on August 17, 2015, defendant filed an Amended Motion to Recover Attorney's Fees and Expenses (Doc. 316) and Memorandum in Support (Doc. 317).  In his Amended Motion, defendant requests a total award of $622,139.62 in attorney's fees and legal expenses ($609,739.28 for total attorney's fees and expenses, $10,800 for expert witness

---

[1]     When this case was assigned to Judge Lungstrum, his summary judgment order explained how our Court has used Rule 54.2:  "Although Local Rule 54.2 applies by its terms to statutory attorneys' fees, the court routinely directs parties to its provisions for contractual fee disputes as well."  Doc. 55-1 at 21 n.9; *see also Am. Multi-Cinema, Inc. v. Southroads, LLC*, 119 F. Supp. 2d 1190, 1215 (D. Kan. 2000) (ordering the parties to comply with D. Kan. Rule 54.2 when making a request for attorney's fees under a lease agreement).

fees, and $1,600.34[2] for travel expenses).  Defendant explained that he filed the amended motion

to include the additional attorney's fees incurred in preparing the memorandum and materials

filed in support of the fee request.  Doc. 316 at 2; *see also Case v. Unified Sch. Dist. No. 233*,

157 F.3d 1243, 1254 (10th Cir. 1998) (holding that an award of reasonable attorney's fees may

include compensation for work performed in preparing and presenting the fee application).

Plaintiff has filed a Memorandum in Opposition to Defendant's Amended Motion to

Recover Attorney's Fees and Expenses (Doc. 326).  It asserts several arguments against

defendant's request for $622,139.62 in attorney's fees and expenses in an action that he

characterizes as one seeking to collect on a $210,000 secured loan.  Defendant has submitted a

Reply (Doc. 327), and the matter is ripe for the Court's decision.

The Court begins by explaining the governing legal standard for an award of attorney's

fees and expenses.  Next, the Court addresses each of plaintiff's arguments against defendant's

request for attorney's fees and expenses.  The Court then determines whether defendant's request

for attorney's fees and expenses is reasonable.  The Court concludes its analysis by granting

defendant's amended motion in part, awarding $594,787.96 in attorney's fees and expenses.

## A.    Legal Standard

A party's right to recover attorney's fees in a diversity suit, like this one,[3] is substantive

in nature and governed by state law.  *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123

F.3d 1351, 1352 (10th Cir. 1997) (citations omitted).  Kansas law allows prevailing parties to

recover their attorney's fees only if a statute or contract specifically authorizes such recovery.

---

[2]    In the body of the motion, defendant requests $1,600 in travel expenses (Doc. 316 at 1), but he submits expenses totaling $1,600.34 (Doc. 317-5 at 6–7).  The Court uses the $1,600.34 amount because that amount is included in the total $622,139.62 requested.

[3]    The parties invoke subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) and 28 U.S.C. § 1441 (removal statute).  Doc. 247 at 1 (Pretrial Order at ¶ 1.a.).

*T.S.I. Holdings, Inc. v. Jenkins*, 924 P.2d 1239, 1254 (Kan. 1996). The Court already has decided that the parties' written loan agreements entitle defendant to recover his attorney's fees and expenses. *See* Doc. 297 at 32–36. On March 30, 2012, the parties signed a Secured Promissory Note where defendant agreed to loan plaintiff $210,000 for 60 days. Doc. 253-6. Paragraph 11 of the Secured Promissory Note requires plaintiff to pay defendant's costs of collection, including reasonable attorney's fees and all costs of suit, including "in the event [defendant] is made party to any litigation because of the existence of the indebtedness evidenced by this Note . . . ." Doc. 253-6 at ¶ 11. After plaintiff defaulted on the Secured Promissory Note, the parties signed a Forbearance Agreement (Doc. 253-8) and a (Superseding) Pledge Agreement (Doc. 253-9) on August 27, 2012. Paragraph 14 of the (Superseding) Pledge Agreement requires plaintiff to pay "all reasonable out of pocket expenses" incurred by defendant "in connection with any matters contemplated by or arising out of this Pledge Agreement" including costs and expenses incurred in defending plaintiff's claims against defendant. Doc. 253-9 at ¶ 14. Under these contractual provisions, defendant is entitled to recover his reasonable attorney's fees and expenses in this litigation from plaintiff.

Courts apply a different standard when analyzing a request for an award of attorney's fees under a contract compared to a fee request authorized by statute. *See Enter. Bank & Tr. v. Barney Ashner Homes, Inc.*, 300 P.3d 115, 2013 WL 1876293, at *21 (Kan. Ct. App. May 3, 2013) (unpublished table opinion); *see also United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1547 (10th Cir. 1987); *Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 962 F. Supp. 1392, 1397 (D. Kan. 1997).[4] With fee-shifting statutes, courts must

---

[4]     As noted above, the Court applies Kansas substantive law to decide defendant's attorney's fees request in this diversity case. However, the Tenth Circuit has described the federal and Kansas standards for reviewing a fee request as "not [that] different" because "[u]nder either standard, the district court analyzes the fee award using essentially the same factors." *Westar Energy, Inc. v. Lake*, 552 F.3d 1215,

carefully scrutinize a fee request, examining the attorney's time and expenses, because the purpose of those statutes is to help private parties obtain legal counsel to seek redress for injuries caused by actual or threatened violation of specific federal laws. *W. States*, 834 F.2d at 1548 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). In contrast, a contract-based award is designed "to give the parties the benefit of [the] bargain, and the court's responsibility is to enforce that bargain." *Id.*; *see also Enter. Bank & Tr.*, 2013 WL 1876293, at *21 ("In a case where attorney fees are awarded based on the contractual agreement of the parties, [the court has] no independent duty to peruse the itemized statements for reasonableness in the absence of particularized objections, as [the court] might under a statute granting fees to a prevailing party to support litigation serving the public good in addition to purely private interests."). Therefore, when awarding fees under a contract, courts "normally" award fees and enforce the contract according to its terms. *W. States*, 834 F.2d at 1548 (citations omitted).

The differing standard for statutory and contractual attorney's fee awards "does not mean, however, that the trial court should simply award the full amount billed by the prevailing party's attorneys." *Id.* While the courts do not apply the same "close scrutiny" to contract-based fee awards employed for statutory fee awards, a trial court, in its discretion, may deny or reduce the fees sought by contract if such an award is inequitable or unreasonable. *Id.* at 1549 (citations omitted). When making this determination for a contractual fee award, however, a court need not disregard the familiar factors considered in awarding statutory fees. *Id.* at 1550 (citing *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983)). Instead, a court may examine those factors to help determine whether the requested fee amount is reasonable. *Id.* To the extent the court

---

1228 (10th Cir. 2009). The Court thus refers to both Kansas and federal law above when it recites the governing legal standard.

denies or reduces the requested fee award, the Tenth Circuit instructs that "it remains important for the district court to provide a 'concise but clear explanation' of its reasons" for that adjustment.  *Id.* (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986)).

In Kansas, trial courts are considered experts in the area of attorney's fees and may "'draw on and apply [their] own knowledge and expertise in evaluating their worth.'"  *Link, Inc. v. City of Hays*, 997 P.2d 697, 704 (Kan. 2000) (quoting *City of Wichita v. BG Prods., Inc.*, 845 P.2d 649, 653 (Kan. 1993) (further quotation omitted)).  The Kansas Supreme Court has held that the trial court should consider the eight factors listed in Rule 1.5 of the Kansas Rules of Professional Conduct ("KRPC") when determining the reasonableness of a fee request.  *BG Prods.*, 845 P.2d at 654.  Those eight factors are:

> "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent."

*Id.* (quoting KRPC 1.5(a)).  The party seeking attorney's fees and expenses bears the burden of proving the reasonableness of the amount sought.  *See Westar Energy, Inc. v. Wittig*, 235 P.3d 515, 532 (Kan. Ct. App. 2010); *see also Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1229 (10th Cir. 2009).

**B.    Plaintiff's Arguments Against Defendant's Request for Attorney's Fees and Expenses.**

In his Memorandum in Opposition (Doc. 326), plaintiff asserts several arguments against defendant's request for attorney's fees and expenses.  The Court addresses each argument in turn below.

### 1.  Plaintiff urges the Court to apply a different legal standard.

Plaintiff correctly asserts that the Court must apply Kansas law to defendant's fee request.  But, then, plaintiff incorrectly contends that Kansas law requires the Court to scrutinize defendant's fee request closely under both a lodestar analysis and the factors identified in K.S.A. § 58-2312 and KRPC 1.5(a).  Plaintiff also asserts that Kansas law authorizes defendant to recover fees both by statute and contract.  Doc. 326 at 11.  Plaintiff's assertion is mistaken and contrary to the Court's earlier rulings.  As explained above, the Court already has determined that defendant is entitled to recover attorney's fees and expenses under the parties' written loan agreements, not by statute.  *See* Doc. 297 at 32–36.

Nevertheless, plaintiff asserts that defendant's fees are authorized under K.S.A. § 58-2312, which provides that "any note, mortgage or other credit agreement may provide for the payment of reasonable costs of collection, including, but not limited to, court costs, attorney fees and collection agency fees . . . ."  *Id.*  At summary judgment, plaintiff argued that defendant's recovery of attorney's fees is limited to "reasonable costs of collection," as defined by this statute.  The Court explicitly rejected this argument and cited Kansas law holding that the statute does not limit recovery of attorney's fees under a note to collection actions but instead allows parties to negotiate contract terms governing attorney's fees.  Doc. 297 at 33 (citing *Santa Rosa KM Assocs., Ltd. v. Principal Life Ins. Co.*, 206 P.3d 40, 53 (Kan. Ct. App. 2009)).  The parties did just that here—they contracted for the attorney's fees provisions that they memorialized in

the written loan agreements.  It is those contractual provisions that entitle defendant to recover attorney's fees and expenses here—not the Kansas statute.

The Court has recited the governing legal standard for analyzing defendant's contractual-based request for attorney's fees and expenses.  The Court declines plaintiff's invitation to deviate from that legal standard and rejects his argument that the factors identified in K.S.A. § 58-2312 apply here.

### 2.  Plaintiff objects to defendant's block billing.

Plaintiff asserts that the Court has discretion to disallow defendant's fee request in whole or in part because defendant's counsel failed to keep meticulous, contemporaneous time records because they used block billing.  "'Block billing' is the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted to specific tasks." *Barbosa v. Nat'l Beef Packing Co, LLC*, No. 12-2311–KHV, 2015 WL 4920292, at *9 (D. Kan. Aug. 18, 2015) (citing *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000)).

In *Citizens Utility Ratepayer Board v. Kansas Corporation Commission*, 284 P.3d 348, 362 (Kan. Ct. App. 2012), the Kansas Court of Appeals held Kansas law does not prohibit block billing.  *Id.* at 362.  Reaching that conclusion, the Court of Appeals noted that the Tenth Circuit has no rule "mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block-billing."  *Id.* at 361 (citing *Cadena*, 224 F.3d at 1215).  But, the Tenth Circuit has determined that a discount of the requested hours is warranted if the records submitted do not allow the Court to determine how counsel allotted the time to specific tasks and the reasonableness of that time.  *Cadena*, 224 F.3d at 1215 (affirming district court's refusal to reduce a fee request based on counsel's block billing because the billing records

11

submitted allowed the court to determine the time allotted to specific tasks and the reasonableness of the time).

In *Citizens Utility*, the Kansas Court of Appeals refused to disallow a fee request in its entirety because counsel had used block billing.  But it also affirmed the Kansas Corporation Commission's across-the-board reduction of the fee request to reach what the Commission had concluded was a reasonable fee award.  284 P.3d at 362.  Similarly, our Court[5] has applied a general reduction to the requested fees when a party submits block billing records that prevent the Court from assessing the reasonableness of that time.  *See, e.g., Barbosa*, 2015 WL 4920292, at *9 (applying a general reduction of 50% to block-billed entries); *Seamands v. Sears Holding Corp.*, No. 09-2054-JWL, 2011 WL 2600623, at *3–4 (D. Kan. June 29, 2011) (reducing requested attorney's fees by 30% for block billing entries); *Univ. of Kan. v. Sinks*, No. 06-2341-JAR, 2009 WL 3191707, at *5 (D. Kan. Sept. 28, 2009) (concluding that a general reduction of 12% was warranted for counsel's block billing that failed to show the allocation of certain work); *Wilhelm v. TLC Lawn Care, Inc.*, No. 07–2465–KHV, 2009 WL 57133, at *4 (D. Kan. Jan. 8, 2009) (reducing remaining fee award by 50% because counsel's block billings made it "virtually impossible" to determine the time spent on any one task).

Conversely, our Court also has granted fee requests that relied on block billed time entries when the submissions permitted the Court to determine the overall reasonableness of the fees.  *See Dunn & Fenley, LLC v. Diederich*, No. 10-4038-KHV, 2012 WL 359753, at *5 (D. Kan. Feb. 2, 2012) (refusing to deny or reduce attorney's fees requested based on block billing entries because they involved logically related work and did not "camouflage" the work

---

[5]      The Court has located very little Kansas case law discussing the use of block billing.  Therefore, it looks primarily to federal law for guidance, as did the Kansas Court of Appeals in *Citizens Utility Ratepayer Board v. Kansas Corporation Commission*.  *See Citizens Utility Ratepayer Bd.*, 284 P.3d at 361–62 (citing several federal cases, including *Cadena*, 224 F.3d at 1215).

performed); *see also Ice Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2010 WL 4683981, at *7–8 (D. Kan. Nov. 12, 2010), *aff'd* 432 Fed. App'x 732 (10th Cir. 2011) (declining to reduce, across-the-board, block billed time because the records did not prevent the court from determining the reasonableness of the time devoted to particular tasks).

Here, plaintiff has compiled and submitted 210 separate billing entries where defendant's counsel has block billed multiple tasks in a single time entry of more than three hours.  Doc. 326-1.  Plaintiff argues that these block billings prevent the Court from determining the reasonableness of the fees because it is impossible to determine the amount of time allotted to each specific task.  In support of this argument, plaintiff cites the Northern District of Oklahoma's observation that block billing of three or more hours containing multiple tasks precludes the court from determining whether the hours spent on a particular task are reasonable. *See Okla. Nat. Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246, 1263–65 (N.D. Okla. 2004) (applying a general reduction of 15% to the fee request to compensate for block billing and for other necessary time reductions).  Plaintiff specifically points to two entries that he claims prevent the Court from assessing the reasonableness of the time because multiple tasks are billed in a single entry.  The first entry is from August 12, 2013, when defendant's counsel billed 6.7 hours for:

> Calls with witnesses Stephen Gans and Taj Bayless and draft declarations; correspond with each; review and docket Order and Notice setting settlement conference; correspond with Mr. Rothstein regarding same; review document production for possible exhibits for responding to Ross "facts"; continue drafting fact replies supporting motion for judgment on the pleadings and for summary judgment; draft Mr. Rothstein's second supplement supporting affidavit.

Doc. 317-17 at 2.

The second entry criticized by this argument is from June 30, 2014, when defendant's counsel billed 5.2 hours for:

> Review proposed Pretrial Order, prepare for, and participate in Final Pretrial Conference with Judge James; correspond with Mr. Rothstein concerning same and concerning his affidavit supporting motion for summary judgment; revise affidavit; research regarding lack of basis under UCC for Ross Attorney's fees claim; review research on Rothstein's entitlement to attorney's fees, procedures for claiming same, and draft attorney's fee sections of memorandum supporting motion for summary judgment on wrongful disposition claim, and deficiency and attorney's fee issues.

Doc. 317-27 at 4.

These block billed entries do not prevent the Court from assessing the reasonableness of the time recorded. Almost all of the tasks in the first entry describe work performed to prepare the Reply to the Motion for Partial Judgment on the Pleadings, or Alternatively, for Partial Summary Judgment (Docs. 50, 51). The first entry also references counsel's review of and correspondence with his client about the court-ordered settlement conference. The Court concludes that 6.7 hours is a reasonable amount of time to perform these tasks, especially the time-consuming task of preparing a reply to a dispositive motion. The second time entry describes work performed to prepare the Motion for Summary Judgment (Doc. 252) and participate in the Final Pretrial Conference. These two tasks are also time-consuming and logically related to one another during that stage in the litigation—after discovery has closed and the parties prepare for filing dispositive motions. The Court finds that 5.2 hours is a reasonable amount of time to spend on the tasks described in the second billing entry.

While these are the only billing entries that plaintiff specifically cites as unreasonable block billing entries, the Court also has reviewed the 210 billing entries that plaintiff complains about in his compiled list (Doc. 326-1). The Court finds defendant's counsel's time records descriptive, detailed, and organized. Specifically, in the block billing entries that plaintiff complains about in Exhibit 1 to his opposition (Doc. 326-1), the attorneys have described logically-related work and the quantity of time recorded for that work is reasonable. *See*, *e.g.*,

14

Doc. 317-24 at 3 (recording 3.8 hours on March 18, 2014, for multiple tasks involving preparation of a summary judgment motion); Doc. 317-27 at 3 (recording 5.3 hours on June 20, 2014, for work involving the expert's opinions at summary judgment); Doc. 317-32 at 2 (recording 6.8 hours on January 21, 2015, for tasks involving defendant's response to plaintiff's objections to the Magistrate's Report and Recommendation); Doc. 317-38 at 3 (recording 4.7 hours on August 12, 2015, for work involving the motion for attorney's fees and expenses).

The Court also finds that several of the time entries that plaintiff complains about are not block billed. *See*, *e.g.*, Doc. 317-10 at 2 (showing incremental time entries for the time recorded by attorney SAS on February 6, 2013); Doc. 317-24 at 2 (describing only one task in the 6.5 hours recorded by attorney NLD on March 5, 2014—that is, preparing a motion for sanctions and memorandum in support); Doc. 317-28 at 2 (recording 4.4 hours on July 1, 2014, to the single task of drafting a summary judgment motion); Doc. 317-34 at 2 (describing 4.8 hours of work performed on March 20, 2015, involving the single task of preparing a memorandum in support of a motion to dismiss voluntarily remaining counterclaims); Doc. 317-35 at 2 (recording 6.1 hours on April 30, 2015, to drafting a reply memorandum). And, in some instances, plaintiff complains about time entries that defendant already has struck from the fee request because those time entries involve work on defendant's fraud in the inducement claim that defendant dismissed voluntarily. *See*, *e.g.*, Doc. 317-26 at 3 (striking 3.3 hours billed on May 15, 2014); Doc. 317-27 at 2 (striking 5.8 hours billed on June 12, 2014); Doc. 317-28 at 4 (striking 4.6 hours billed on July 31, 2014).

Based on this review of plaintiff's objections to specific block billed time entries, the Court declines to deny or reduce defendant's fee request based on defendant's counsel's use of block billing.

**3.   Plaintiff asks the Court to deny defendant's fee request for specific tasks that plaintiff contends are inadequately described, not recoverable by law, related to unsuccessful motions, or excessive.**

Plaintiff next objects to defendant's fee request by pointing out specific billing entries that, plaintiff contends, are not recoverable for various reasons.  The Court addresses each one of plaintiff's many attacks on specific time entries below.

*First*, plaintiff asserts that the Court must deny 58.14 hours of recorded time because defendant's counsel has described the tasks performed inadequately.  In support of this argument, plaintiff lists 34 time entries (Doc. 326-2) that he contends fail to provide sufficient detail about their descriptions or include redactions that prevent the Court from determining their reasonableness.  The Court agrees that several of the time entries submitted by Seth P. Markowitz fail to describe the tasks performed in sufficient detail.  These time entries describe phone calls and emails but omit the subject matter of those communications, and, in some instances, fail to identify the recipient.  *See* Docs. 317-6, 317-7, 317-8, & 317-11.  Vague descriptions, like these, warrant a reduction of the time submitted.  *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1252 (10th Cir. 1998) (affirming district court's exclusion of imprecise time records that failed to describe the subject matter of the tasks performed).  Exercising its discretion, the Court denies 12 of the hours recorded by Mr. Markowitz because they lack sufficient detail for the Court to determine their reasonableness.

In contrast, the Court rejects the additional reduction that plaintiff seeks.  The other entries plaintiff challenges contain sufficient detail for the Court to determine their reasonableness.  These entries contain limited redactions for privilege.  As defendant's counsel explains in his affidavit (Doc. 317-4 at ¶ 11), the substance of the redacted information involves consultation, advice, and strategy discussed between defendant and his attorneys—information

protected by the attorney-client privilege.  Even with the redactions, the Court can discern that these protected communications are related reasonably to work on the litigation.  *See Hartford Fire Ins. Co. v. P & H Cattle Co., Inc.*, No. 05-2001-DJW, 2006 WL 3612661, at *4 (D. Kan. Dec. 11, 2006) (refusing to exclude redacted time entries from an attorney's fee award because the court could determine that the time recorded was reasonably related to the litigation).  Thus, the Court determines that these time entries are reasonable and recoverable by defendant.

*Second*, plaintiff asks the Court to cut 23.2 hours of time that, plaintiff contends, is attributable to background research that defendant is not entitled to recover.  Courts properly may exclude an attorney's time for background research if the attorney already should have an understanding of the subject matter.  *See, e.g., Bell v. Turner Recreation Comm'n*, No. 09-2097-JWL, 2010 WL 126189, at *4 (D. Kan. Jan. 8, 2010) (excluding time billed for background research because the nature of the research and time spent did not reflect time well spent by experienced counsel).  But the time entries that plaintiff complains about here do not reflect such background research.  Instead, the billing entries describe research reasonably related to the substantive disputed issues and recorded at a time when the parties were litigating those issues contentiously.  *See* Doc. 317-10 at 3 (recording 2.8 hours on February 27, 2013, to "[r]esearch UCC provisions and law governing security interests in certificated securities and foreclosing same" at the time defendant's counsel was preparing an answer and counterclaims); Doc. 317-12 at 2 (billing 6.5 hours on March 7, 2013, to "[r]esearch concerning preliminary injunction motion, elements, issues, procedures and defenses" while drafting a motion for preliminary injunction); Doc. 317-8 at 2 (recording time for research about the requirements for selling pledged stock in a commercially reasonable manner on September 3, 9, and 13, 2013, when the Clerk of the Court released the stock certificate for the 77,310 shares of Infinity common stock

to defendant); Doc. 317-31 at 2 (billing time on December 29, 2014, to "[r]esearch rule, statute and procedures concerning objections to magistrate reports and recommendations on dispositive motion rulings, and conditional objections for preserving issues for appeal" after the Magistrate Judge issued a Report and Recommendation and before defendant filed Conditional Objections (Doc. 286)). For these reasons, the Court denies plaintiff's request to exclude this time from the fee request.

*Third,* plaintiff argues that the Court should reduce 242 hours recorded by defendant's counsel for work on motions and objections that ultimately failed in the litigation. Plaintiff contends that the Court has discretion to deny attorney's fees on this basis because the Tenth Circuit has found that a "district court was well within bounds to consider lack of success" on a particular issue when applying a general reduction to an attorney's recorded time. *Case*, 157 F.3d at 1252. Defendant argues, in response, that *Case* does not apply here because "the district court [in *Case*] did not reduce the fee simply because the appellants did not prevail on [a standing issue], but rather because the billing records did not show which hours related to standing arguments and because the standing deficiencies, in the district court's judgment, were obvious." *Id.* Defendant also asserts that *Case* is irrelevant because it involved a statutorily-based fee request, unlike the contract-based request here, and, defendant contends, it does not stand for the wholesale proposition that the Court should take on the untenable task of reviewing the history of the case and determining whether each discrete litigation maneuver obtained a successful result.

While the Court is inclined to agree with defendant that it need not review the entire case history to determine if each action completed by defendant's counsel was meritorious, especially when the broad language of the parties' written loan agreements does not limit the recovery of

fees and expenses to individual successes, the Court nevertheless examines the specific entries challenged by plaintiff because one of the factors that a court should consider under Kansas law is the "results obtained."  *See* KRPC 1.5(a)(4).  At the same time, while the Court is mindful that defendant did not prevail on every motion he filed in the case, defendant ultimately prevailed on the lawsuit as a whole.  Thus, the ultimate "results obtained" by defendant's counsel were meritorious.

Plaintiff first objects to 6.6 hours that defendant's counsel spent preparing a sanctions motion in June 2013, and a reply in support of that motion in July 2013.  Defendant's basis for the motion was that plaintiff had failed to comply with certain court orders including that: plaintiff failed to appear personally at the preliminary injunction hearing after submitting a Declaration purporting to support his fact contentions but, by failing to appear, prevented defendant from cross-examining plaintiff about his fact contentions; plaintiff failed to file the 77,310 pledged shares with the Court by the time established in an Agreed Order; plaintiff did not serve defendant with a good faith settlement demand by the court-ordered deadline; and plaintiff failed to serve Rule 26(a) disclosures by the date established in the Scheduling Order. *See* Doc. 23.  Judge Lungstrum denied the motion for sanctions finding that plaintiff's "shortcomings" in the case did not warrant the severe sanctions defendant sought.  Doc. 55-1 at 22.  But Judge Lungstrum noted that the motion for sanctions described "a litany of misconduct and discovery abuses on the part of" plaintiff, and he agreed with defendant that the "case undoubtedly got off to a rocky start in terms of [plaintiff's] participation."  *Id.* at 21–22.  While defendant did not succeed on his motion for sanctions, defendant had a reasonable basis for filing it.  And the Court finds that 6.6 hours spent preparing the motion and a reply is a reasonable amount of time for this task.  The Court declines to cut these hours from the fee request.

Plaintiff next objects to 76.8 hours that defendant's counsel spent on an opposition to plaintiff's Motion to Amend the Complaint (Doc. 61) and an objection to the Magistrate's Order denying defendant's opposition to the Motion to Amend (Doc. 125).  In that opposition, defendant asked the Court to deny plaintiff leave to amend his Complaint to add a claim for wrongful disposition of collateral because, defendant contended, the claim was futile and would prejudice defendant.  Defendant argued that its sale of pledged shares on the Over-the-Counter QB Tier Market ("OTCQB") was commercially reasonable, and thus plaintiff could not assert the proposed claim.  Doc. 61.  Magistrate Judge Waxse granted plaintiff's Motion to Amend concluding that defendant failed to meet his burden to show that plaintiff's proposed claim was futile.  Doc. 114 at 1.  He noted that "[n]either party has been able to find a case that squarely addresses whether an over-the-counter market is a 'recognized market' for purposes of the U.C.C."  *Id.*  Judge Waxse also concluded that "[a]ny prejudice to Defendant can be minimized by extending certain case deadlines."  *Id.*  Defendant asked the district court to review Judge Waxse's decision under Fed. R. Civ. P. 72.  Doc. 125.  Judge Lungstrum denied defendant's motion, finding that Judge Waxse "was correct because there is no case or authority declaring as a matter of law . . . that the OTCQB market is a recognized market" and the parties disputed the facts that the Court must consider when resolving that question.  Doc. 201 at 7.

The Court has reviewed defendant's filings pertaining to this issue and finds that defendant had a good faith basis for making the arguments asserted.  But, the Court, in its discretion, will reduce the hours defendant's counsel spent objecting to Judge Waxse's Order granting the Motion to Amend.  Judge Waxse determined that plaintiff's proposed claim was not futile because no case law squarely addressed the issue.  Denying plaintiff's objection to the ruling, Judge Lungstrum reached the same conclusion and noted that the parties' factual disputes

20

prevented the Court from resolving the question at that stage of the litigation.  Indeed, the parties

disputed this issue contentiously through the summary judgment process.  *See* Docs. 283 at 29–

38 & 297 at 29–32.  Defendant's objection to Judge Waxse's Order was a duplicative effort and

it proved unsuccessful.  Considering the "results obtained" on the objection, the Court, in its

discretion, reduces the fee award by 44.8 hours[6] for this reason.

Plaintiff next asks the Court to cut 11.3 hours that defendant's counsel spent working on

a motion to expedite plaintiff's time to respond to certain discovery (Doc. 88).  Defendant served

discovery on plaintiff to obtain copies of voicemails that allegedly supported plaintiff's

defamation claim after plaintiff identified these voicemails in an affidavit submitted in

opposition to defendant's summary judgment motion.  Plaintiff had not produced the voicemails

with his initial disclosures.  Defendant requested the Court to reduce the time for plaintiff to

respond to the discovery seeking the voicemails so that defendant could receive the responses

before discovery closed.  Judge Waxse found the request moot because plaintiff served the

discovery responses within the time plaintiff requested.  Doc. 101.  Given this result, the Court

does not conclude that defendant's counsel's efforts here were unsuccessful.  The Court denies

plaintiff's request to reduce this time from the fee award.

Plaintiff next objects to time defendant's counsel spent working on a motion to compel[7]

(Doc. 105) and an opposition to plaintiff's motion for a protective order (Doc. 111).  The Court

has reviewed the briefing on these matters, as well as the transcript for the hearing presided over

by Judge James (Doc. 186-1).  The Court concludes that defendant had a valid and reasonable

basis for asserting the arguments in these filings.  Additionally, defendant's Motion to Compel

---

[6]     Each of these 44.8 hours was billed by attorney Neil L. Johnson at a rate of $315 per hour.  Thus, the Court will reduce the fee award by $14,112, on this basis.

[7]     Plaintiff incorrectly refers to this motion as a motion for sanctions.  Docs. 326 at 30 & 326-4 at 2.

was not unsuccessful.  Judge James found the motion to compel moot—to the extent it sought additional discovery of voicemails that purportedly supported plaintiff's defamation claim but then plaintiff could not locate—because plaintiff had stipulated that he would not attempt to introduce into evidence the content or substance of the alleged voicemail messages never produced.  Doc. 172 at 1.  The Court declines to reduce defendant's fee award for the time spent on these matters.

Plaintiff also asks the Court to exclude time that defendant's counsel spent working on a second motion for sanctions[8] about the missing voicemail messages (Doc. 185).  Defendant asked the Court to strike plaintiff's defamation claim in its entirety because, defendant argued, plaintiff knowingly submitted a false declaration stating that he possessed voicemails supporting his defamation claim when, in fact, he knew that he had lost the mobile device containing the voicemails.  Judge Lungstrum denied the motion for sanctions as moot because he already had granted defendant the relief sought—dismissal of the defamation claim—by granting defendant's motion for summary judgment against that claim.  Doc. 201 at 16.  Thus, the motion for sanctions was not wholly unsuccessful.  The Court also recognizes that defendant filed the sanctions motion in response to plaintiff's conduct, specifically his failure to preserve evidence that supposedly supported a defamation claim.  The Court gives little credence to plaintiff's objections to the fees incurred in bringing this motion when his own actions precipitated it.  For these reasons, the Court denies plaintiff's request to reduce the fee request for time spent on this second motion for sanctions.

Next, plaintiff also requests that the Court deny the hours defendant's counsel recorded in selecting, engaging, and defending expert witness opinions which, plaintiff contends, were excluded in limine.  The Court rejects this challenge because the Court did not exclude the expert

---

[8]        Plaintiff incorrectly refers to this motion as a third motion for sanctions.  Doc. 326-4 at 3.

witness's testimony in its entirety.  Although the Court concluded that the expert witness could

not provide certain legal opinions, it allowed the expert to testify about factual issues that would

help the Court when it made certain legal determinations.  *See* Docs. 283 at 18–21 & 297 at 12–

13.  And the Court relied on some of the factual information provided by the expert to reach its

summary judgment conclusions.  *See* Docs. 283 at 34–36 & 297 at 14–16, 22, 31.  The Court

will not reduce the fee award on this basis.

Finally, plaintiff asks the Court to exclude time that defendant's counsel spent working

on conditional objections to the Magistrate's Report and Recommendation (Doc. 286).[9]

Defendant asked the Court to consider his objections only if it rejected Judge James'

recommendations on the summary judgment rulings.  Because the Court adopted Judge James'

Report and Recommendation in its entirety, it did not need to consider defendant's conditional

objections and found them moot.  Doc. 297 at 2 n.1.  Based on this outcome, the conditional

objections were not unsuccessful.  The Court denies plaintiff's request to exclude the hours spent

on this task.

*Fourth*, plaintiff asks the Court to deny hours recorded by defendant's counsel that

plaintiff contends are excessive.  Plaintiff has provided a list of billing entries that he claims is

excessive, given the tasks involved.  Doc. 326-5.  A party seeking fees "must make a good-faith

effort to exclude from a fee request hours that are excessive, redundant, or otherwise

unnecessary."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (citation and

internal quotation marks omitted).  Defendant's counsel represents that, at the end of each billing

cycle, he engaged in his standard practice of reviewing and editing the invoices to defendant,

ensuring their accuracy, efficiency, reasonableness, and value to the client.  Defendant's counsel

---

[9]     Plaintiff does not include this objection in the body of his opposition (Doc. 326) but lists these
time entries in his attached Exhibit 4 (Doc. 326-4).  To the extent plaintiff objects to these time entries,
the Court addresses the objection above.

states that he removed from the monthly invoices an average of more than 20 hours per month consisting, mostly, of his own time.

Despite these reductions, plaintiff claims that defendant's counsel recorded excessive time on various tasks in the litigation. The Court has reviewed the submitted invoices and considers "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 404 F. Supp. 2d 1281, 1284 (D. Kan. 2005). For the most part, the Court agrees with defendant that the time recorded by defendant's counsel is reasonable. The case has been pending for almost three years. It has involved multiple claims asserted by each party against the other. The parties engaged in heavy motion practice originating on both ends of the caption. This included competing summary judgment motions. The case also presented novel legal issues. Given these circumstances, the Court rejects plaintiff's objections to defendant's counsel's work on drafting and responding to various pleadings and motions, as identified in Doc. 326-5, with one exception. The Court will reduce the time recorded by defendant's counsel for work performed researching and drafting the Notice of Removal by 50%. Defendant's counsel recorded more than 15 hours of time to this task, which is excessive considering the amount of work involved for such a task and the level of counsel's experience.[10]

The Court also rejects plaintiff's argument that the time recorded by defendant's counsel is excessive when compared to the amount recovered in the case. It is true that "an attorney fee request might be unreasonable in light of the amount at issue," and in such a case, a court "is free to reduce a demonstrably excessive fee request taking that into account as a factor." *Enter. Bank & Tr.*, 2013 WL 1876293, at *20. Plaintiff argues that no client should pay more than $600,000

---

[10]    Plaintiff objects to 14.6 hours billed by an attorney at a rate of $315 and 0.3 hours billed by an attorney with a rate of $270. Reducing the time in half, the Court will deduct $2,340 from defendant's fee request.

in attorney's fees, as defendant seeks here, for recovery of less than $400,000. But plaintiff's characterization of the case is a simplistic one. Defendant's fees resulted from two principal efforts: (1) to recover the loan amounts plaintiff owed to him; and (2) to defend against the many claims plaintiff chose to assert, i.e., claims for fraudulent misrepresentation, violating the Kansas Consumer Protection Act, defamation, and wrongful disposition of collateral under K.S.A. § 84-9-625. Defendant prevailed against each of plaintiff's claims, and plaintiff chose to enter into a contract that rendered the claims subject to liability for attorney's fees. No one coerced plaintiff to enter into that bargain, and the Court will not reallocate the dynamics of the market that led him to do so. The Court does not conclude that defendant's counsel's fees are excessive under these circumstances.

### 4. Plaintiff argues that defendant could have avoided a portion of the litigation and resulting attorney's fees and expenses if defendant had given notice of his intent to sell the 77,310 Infinity Shares on the OTCQB.

The Court finds no merit in plaintiff's next argument. Plaintiff contends that defendant could have avoided a large portion of the attorney's fees he seeks had he only provided notice to plaintiff of his intent to sell the 77,310 Infinity Shares on the OTCQB. As plaintiff recognizes, the Court already has decided this issue on summary judgment—it held that no notice was required as plaintiff contractually agreed to waive notice and, in any event, defendant sold the collateral on a recognized market. *See* Docs. 283 at 23–38 & 297 at 27–32. The Court will not reduce the fee award because defendant "failed" to do something that he had no obligation to do. Moreover, as defendant points out, plaintiff's argument is speculative and assumes that plaintiff would have acquiesced to the sale if only defendant had provided notice. Even with notice, plaintiff still may have challenged whether the sale was commercially reasonable under Kansas law. Under that scenario, defendant still would have incurred attorney's fees to defend against

the claim, just as he has done under the current facts.  The Court will not reduce the fee award on this basis.[11]

### 5.   Plaintiff asserts that defendant cannot recover fees by arguing that plaintiff conducted the litigation in bad faith.

In his opening brief, defendant argues that plaintiff conducted this litigation in bad faith and engaged in dilatory and vexatious conduct.  Defendant cites to several examples of this purported conduct, and he contends that plaintiff's actions have caused him to incur substantial legal expense in the case, thereby warranting an award of the full amount sought.  Plaintiff denies that he acted in bad faith, and he responds with arguments justifying various actions that he has taken in this litigation.  Thus, plaintiff argues that the Court should not award attorney's fees on this basis.

The Court makes no finding whether plaintiff acted in bad faith or engaged in improper litigation tactics.  The Court recognizes the contentious nature of this lawsuit.  The parties have disputed almost every issue that arose during this two-and-a-half year lawsuit.  While each side claims that his actions were warranted, the Court need not wade into this issue.  The Court does not base its award of attorney's fees on any alleged improper conduct on plaintiff's part.  Instead, the Court awards attorney's fees and expenses because plaintiff chose to enter a contract permitting defendant to recover fees and defendant reasonably incurred the fees that the Court awards during the course of this lawsuit.

### 6.   Plaintiff argues that a jury, not the Court, should determine the amount of the fee award.

Last, plaintiff asserts that a jury, not the Court, must decide the amount of fees to award under the parties' contract because, plaintiff claims, the amount of fees is an element of damages.

---

[11]      By plaintiff's logic, defendant would have incurred no attorney's fees if plaintiff simply had paid the note when it was due.  The Court cannot speculate about the many things that may have happened if the parties had acted otherwise or negotiated a different contract.

This argument contradicts the Tenth Circuit's decision in *Heavy Petroleum Partners, LLC v. Atkins*, 457 F. App'x 735 (10th Cir. 2012). In that case, the Tenth Circuit explained, under Fed. R. Civ. P. 54(d)(2)(A), "'[a] claim for attorney's fees . . . must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.'" *Heavy Petroleum Partners*, 457 F. App'x at 748 (quoting Fed. R. Civ. P. 54(d)(2)(A)). Applying the substantive law of Kansas, the Circuit stated: "Kansas law does not require attorney's fees to be proved as an element of damages. In fact, under Kansas law, 'ordinarily . . . the court, sitting without a jury, makes an allowance of attorney's fees.'" *Id.* (quoting *Thomas v. Kansas City S. Ry. Co.*, 421 P.2d 51, 57 (Kan. 1966)).

This determination is for the court "because 'a claim for attorney's fees is not part of the merits of the action to which the fees pertain.'" *Id.* (quoting *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 789 P.2d 211, 214 (Kan. 1990) (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988))). Following this Kansas authority, our Circuit held that Rule 54(d)(2)(A)'s exception did not apply to the contact at issue there, which authorized attorney's fees for the prevailing party in the same lawsuit. *Id.* Thus, the Circuit concluded that the district court erred by submitting the fee request to the jury, and, on remand, it ordered the prevailing party to submit the fee request by motion under Fed. R. Civ. P. 54(d)(2)(A). *Id.*

The facts are similar here. Defendant has submitted his fee request by motion under Fed. R. Civ. P. 54(d)(2)(A). He seeks an award of attorney's fees and expenses under the written loan agreements (governed by Kansas law) that defendant incurred in this lawsuit. In Kansas, the amount of an attorney's fees claim is not an element of damages that a jury must decide. *Heavy Petroleum Partners*, 457 F. App'x at 748 (citations omitted). Instead, the Court decides the amount of the award. *Id.* The Court proceeds to do so below.

C.     The Reasonableness of the Award

Having considered plaintiff's objections to the requested award, the Court now determines if the requested award is reasonable.  In making this determination, the Court examines the factors a federal court considers when calculating a lodestar figure[12] and those factors listed in KRPC 1.5(a).

1.  Attorney's Fees

a.  Hourly Rates

The Court first determines if the hourly rates charged by the attorneys and staff who worked on this case on behalf of defendant are reasonable.  When determining whether an hourly rate is reasonable, a district court "should base its hourly rate award on what the evidence shows the market commands for . . . analogous litigation."  *Case*, 157 F.3d at 1255 (citing *Beard v. Teska*, 31 F.3d 942, 955–57 (10th Cir. 1994)).  The party seeking fees bears the burden of showing that the requested rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998) (citation and internal quotation marks omitted).  A district court should examine the parties' market evidence, and, if it determines that the evidence before the court is inadequate, the court may use its own knowledge to establish the appropriate rate.  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) (citation omitted).

Although defendant bears the burden of showing that the requested rates are reasonable, he provides no evidence of the prevailing market rates for the Court to consider.  Instead, defendant's counsel states that he is satisfied to leave it to the Court to rely on its own knowledge

---

[12]     The "lodestar" figure is "the reasonable number of hours spent on litigation multiplied by a reasonable hourly rate."  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir. 2000) (citation omitted).

of the prevailing market rates of attorneys with similar experience and skill.  Defendant's counsel has charged the hourly rates listed below.  Plaintiff never challenges the reasonableness of these rates.

| Name | Hourly Rate |
| --- | --- |
| Seth P. Markowitz, Attorney | $550 |
| Craig Sanders, Attorney | $400 |
| Neil Johnson, Partner | $315 |
| Nick DiVita, Partner | $400 |
| Sharon Stallbaumer, Partner | $270 |
| Ken Duval, Associate | $200 |
| Debbie Sullivan, Paralegal | $175 |
| Bradette Groves, Paralegal | $175 |
| Lisa Tucker, Paralegal | $175 |
| Lisa Spencer, Paralegal | $175 |

The first two lawyers in this list practice in New York.  Defendant initially hired Mr. Markowitz to represent him in the loan transactions and agreements that he entered with plaintiff.  Then, defendant engaged Mr. Marokwitz's services to communicate with plaintiff after he defaulted, to draft the Forbearance Agreement and (Superseding) Pledge Agreement, to communicate with plaintiff after he defaulted under those agreements, and to attempt to obtain the pledged interest, consideration, and pledged shares from plaintiff.  After defendant realized that he might have to sue to enforce the loan agreements, he hired Mr. Sanders, a litigation attorney, who drafted two demand letters and sent them to plaintiff on defendant's half. Defendant discontinued Mr. Sanders' services in New York after plaintiff sued him in Kansas. Defendant hired the lawyers at the Berkowitz Oliver firm in Kansas City to represent him in this lawsuit.  The remaining lawyers and staff on the list above are with Berkowitz Oliver.

Defendant's counsel provides by affidavit some facts about the experience and skill level of the attorneys and staff at Berkowitz Oliver.  Defendant's counsel also refers the Court to the attorneys' biographies on that law firm's website.  The Court has reviewed the attorneys'

experience, qualifications, and skills, and concludes that hourly rates of the Berkowitz Oliver attorneys are reasonable.  However, the Court reduces the hourly rate of the paralegals to $100.[13]

These hourly rates for attorneys and staff are consistent with rates that our Court has approved recently in other lawsuits.  *See, e.g., Barbosa v. Nat'l Beef Packing Co.*, LLC, No. 12–2311–KHV, 2015 WL 4920292, at *10 (D. Kan. Aug. 18, 2015) (finding hourly rates of $325 to $425 for experienced attorneys, $180 for attorneys with little to no experience, and $75 for paralegals reasonable in 2015 Kansas City Fair Labor Standards Act case); *Mr. Elec. Corp. v. Khalil*, No. 06–2414–CM, 2013 WL 5651398, at *6 (D. Kan. Oct. 16, 2013) (approving a $305 per hour rate for an intellectual property attorney who was a fifth year associate at the beginning of the case but, during the seven-year history of the litigation, progressed to Counsel); *Seamands v. Sears Holding Corp.*, No. 09–2054–JWL, 2011 WL 884391, at *14–16 (D. Kan. Mar. 11, 2011) (concluding that the following hourly rates were reasonable:  $400 per hour for a lawyer with more than 30 years' experience, $290 per hour for lawyers with more than 20 years' experience, $270 for a partner with 11 years' experience, $175 for associates with "lesser experience," and $90 for paralegals); *see also Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 790 F. Supp. 2d 1307, 1319–20 (D. Kan. 2011) (concluding that the following hourly rates were at the "top end of the hourly rates in Topeka" which has "consistently lagged behind Kansas City" in hourly rates:  $325 per hour for the partners; $200 for the associates; $125 for the law clerks; and $100 for the paralegals and other support staff).

The record lacks any evidence of the experience and skill of the two New York attorneys defendant hired to assist him before plaintiff filed suit in Kansas.  The Court was unable to locate a law firm website for Mr. Markowitz.  The Court found a website for Mr. Sanders' law firm

---

[13]     Defendant seeks to recover fees for 18.6 hours that paralegals at the Berkowitz Oliver firm billed at the $175 per hour rate.  Because the Court reduces the paralegals' billing rate to $100 per hour, the Court subtracts $1,395 from the total fee award.

(http://sanderslawpllc.com/attorneys/), but it provides no information about his experience or

skill level.  The Court therefore reduces these two attorneys' rates to an hourly rate at the low

end of those charged in this market.[14]  The Court finds that $200 is a reasonable hourly rate for

Mr. Markowitz and Mr. Sanders.  The Court reduces defendant's fee request accordingly.[15]

### b.  Hours Billed

The Court next considers whether the amount of hours billed by defendant's counsel is

reasonable.  Defendant's counsel bears the burden of establishing the amount of hours expended

"by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom

fees are sought, all hours for which compensation is requested and how those hours were allotted

to specific tasks."  *Case*, 157 F.3d at 1250 (citation omitted).  A court may reduce the number of

hours recorded if the attorney's time records are "sloppy and imprecise [and] fail to document

adequately" how an attorney utilized large blocks of time.  *Jane L. v. Bangerter*, 61 F.3d 1505,

1510 (10th Cir. 1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  A court also

must determine that the attorney seeking fees has exercised "billing judgment," by reviewing his

---

[14]    The Court applies rates from the local market instead of the New York market because "'[a]bsent . . . unusual circumstances . . . the fee rates of the local area should be applied even when the lawyers seeking fees are from another area.'"  *Reazin v. Blue Cross and Blue Shield of Kan., Inc.*, 899 F.2d 951, 983 n.49 (10th Cir. 1990) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)).

[15]    The Court reduces the total fee award by $19,725, to account for the reductions to Mr. Markowitz's hours and hourly rate.  Mr. Markowitz billed a total of 49.5 hours at a rate of $550 per hour less $2,537.50 in courtesy discounts.  The Court applies the 12 hour time reduction discussed above to the total number of hours billed, reduces the hourly rate charged to $200, and applies the same courtesy discount, resulting in a total amount of $4,962.50, as reasonable fees charged by Mr. Markowitz.  Defendant requests $24,687.50 in fees billed by Mr. Markowitz.  *See* Doc. 317-5 at 1.  The difference between plaintiff's requested amount and the amount the Court finds reasonable is $19,725.

The Court reduces the total fee award by $2,180, to account for the reduction to Mr. Sanders' hourly rate.  Mr. Sanders billed 10.9 hours at an hourly rate of $400 per hour for a total of $4,360 in attorney's fees.  *See* Docs. 317-5 at 1, 317-9.  Defendant requests the total amount charged, but the Court reduces those fees in half by applying a reasonable hourly rate of $200.

or her time records and reducing the hours actually expended to an amount that is reasonable for the tasks described. *Case*, 157 F.3d at 1250 (citations omitted).

After conducting that initial review of the billing records, a court must determine whether the hours expended on each task are reasonable. *Id.* This determination "can depend upon facts such as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side." *Id.* (citation omitted). A court may reduce the award if the number of hours sought by counsel includes time that is "'unnecessary, irrelevant and duplicative.'" *Id.* (quoting *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 (10th Cir. 1994)). But a court has no obligation to "'identify and justify each disallowed hour'" or "'announce what hours are permitted for each legal task.'" *Id.* (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986)). In a case involving "thousands of pages of written work product and . . . well over a hundred pages in billing statements with several entries per page, '[i]t is neither practical nor desirable to expect the trial court judge to have reviewed each paper in th[e] massive case file to decide, for example, whether a particular motion could have been done in 9.6 hours instead of 14.3 hours.'" *Id.* (quoting *Copeland. v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980)). "Instead, '[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use.'" *Id.* (quoting *Mares*, 801 F.2d at 1203).

The Court carefully has reviewed the extensive time records submitted by defendant's counsel. As noted above, defendant's counsel has submitted a detailed and organized itemization for the time expended in this litigation. Defendant's counsel also represents that he exercised billing judgment by reviewing each monthly invoice and applying appropriate

reductions to the time billed.  Nevertheless, when considering plaintiff's objections above, the Court has determined that reductions are warranted for certain time recorded by defendant's counsel that was unnecessary, duplicative, or inadequately described.  But, otherwise, the Court finds the claimed number of hours reasonable.

### c.     MRPC Factors

The Court now turns to consider the factors listed in KRPC 1.5(a).  *See BG City of Wichita v. BG Prods., Inc.*, 845 P.2d 649, 654 (Kan. 1993).  As explained above, KRPC 1.5(a) includes eight factors:  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.  KRPC 1.5(a).

Here, the Court finds that the requested attorney's fees award, after applying the appropriate reductions discussed above, is reasonable under the KRPC factors.  First, defendant's counsel spent significant time over several years litigating this case from the initial pleading stages through discovery and into the weighty dispositive motions practice.  The Berkowitz Oliver firm recorded more than 1,500 hours to this litigation.  That is a large number of hours, but the Court finds the hours reasonable in light of the time and labor required in the case. Plaintiff chose to broaden the scope of the dispute by asserting many claims.  Defendant had to defend those claims to secure the benefit of his bargain with plaintiff.  The case involved

difficult and novel legal issues, as described above.  Defendant's counsel has significant experience and the skill to perform the legal services required in the case.  Defendant's counsel used that skill to obtain summary judgment for their client and to defeat each claim that plaintiff chose to assert.

The second, fifth, sixth, and eighth factors are largely neutral ones that do not factor into the Court's analysis here.  The Court has no information before it about the likelihood that counsel's acceptance of the matter precluded other employment or whether the client imposed certain time limitations on counsel.  The Court also is unaware of the nature of counsel's professional relationship with the client, but recognizes that the relationship has spanned several years through the lengthy procedural history of this case.  And the fee in this case is a fixed one, not a contingent one.  In some circumstances, a contingent fee arrangement may produce an excessive and unreasonable fee award if it disproportionately represents the amount of time and effort required by counsel in the case.  *See, e.g.*, *Bergeson v. Dilworth*, 875 F. Supp. 733, 739–40 (D. Kan. 1995) (reducing award under contingent fee contract to compensate counsel adequately for the time and efforts involved in the case).  That concern is not present here because defendant's counsel's fee is fixed and, with certain adjustments, represents a reasonable amount of time expended for the tasks required in this lawsuit.

The Court has discussed the third factor above.  *See* Part II.C.1.a.  It concludes, for the most part, that the fees charged by defendant's counsel are similar to those customarily charged in the locality for similar services with a few exceptions.  The Court reduces the fee award for those exceptions, as described above, bringing the fees into the realm of those customarily charged in the locality for these types of services.

The Court also considered the fourth factor above. *See* Part II.B.3. The Court rejects plaintiff's argument that defendant's counsel's fees are excessive because defendant seeks more than $600,000 in attorney's fees for recovery of less than $400,000. As explained, defendant's counsel has incurred fees in this case not only for their efforts to recover the loan amounts plaintiff owes to defendant but also in defending against the claims plaintiff asserted against defendant. The Court finds that the fees sought are reasonable considering all of the claims asserted in the lawsuit by each party. The fees also are reasonable in light of the results obtained. Defendant is the prevailing party in this case. He defeated each one of plaintiff's claims asserted against him, and he obtained summary judgment on several of the claims he asserted against plaintiff.

Finally, the Court already has discussed the seventh factor—the experience, reputation, and ability of the lawyers performing the services—when it considered the reasonableness of the hourly rates charged. As described, the Court has reviewed the qualifications, skills, and experience of counsel, and finds that they support the amount of the fee award.

## 2. Expenses

In addition to attorney's fees, defendant requests expenses his attorneys billed during the litigation of this case for items like legal research, travel expenses, and deposition costs. *See* Doc. 317-43 (providing an itemization of expenses incurred by defendant's counsel in the litigation). Defendant also seeks $10,800 for expert witness fees and $1,600.34 in travel expenses. Plaintiff does not dispute defendant's right to recover these expenses.

The (Superseding) Pledge Agreement requires plaintiff to pay "all reasonable out of pocket expenses" incurred by defendant "in connection with any matters contemplated by or arising out of this Pledge Agreement." Doc. 253-9 at ¶ 14. After reviewing the expenses

requested, the Court concludes, in its discretion, that they are reasonable out of pocket expenses that defendant incurred in connection with matters arising out of the Pledge Agreement. The Court therefore includes the requested expenses in the fee award.

### D. Summary

Based on the analysis above, the Court awards defendant the following attorney's fees and expenses that he reasonably incurred in this lawsuit:

| | |
|---|---|
| Attorney's Hourly Fees and Expenses: | $582,387.62 [16] |
| Expert Witness Fees: | $10,800 |
| Travel Expenses: | $1,600.34 |
| Total: | $594,787.96 |

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Recover Attorney's Fees and Expenses (Doc. 308) and Amended Motion to Recover Attorney's Fees and Expenses (Doc. 316) is granted in part. The Court awards defendant attorney's fees and expenses in the amount of $594,787.96.

**IT IS FUTHER ORDERED THAT** defendant's Motion to Dismiss With Prejudice His Counterclaim Counts IV–VII (Doc. 329) is granted. The Court relieves defendant from the previous Orders dismissing Counterclaim Counts IV–VII without prejudice (Docs. 304 & 309) under Fed. R. Civ. P. 60(b)(6), and the Court dismisses Counterclaim Counts IV–VII with prejudice.

**IT IS SO ORDERED.**

---

[16]      As described above, the Court has deducted the following amounts from the $622,139.62 that defendant requested in attorney's fees and expenses: (1) $14,112 for work on the objection to the Magistrate Judge's Order granting plaintiff's Motion to Amend the Complaint (*see supra* Part II.B.3); (2) $2,340 for excessive time spent on the removal papers (*see supra* Part II.B.3); (3) $1,395 for a reduction in the paralegal hourly rate (*see supra* Part II.C.1.a); (4) $19,725 for a reduction in attorney Seth P. Markowitz's hours and hourly rate (*see supra* Part II.C.1.a); and (5) $2,180 for a reduction in attorney Craig B. Sanders' hourly rate (*see supra* Part II.C.1.a).

Dated this 22nd day of January, 2016, at Topeka, Kansas.

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge